

In The United States District Court

For The Western District of Pennsylvania


Bryan H. Erwin                          : case # 05-93 ERiE

                                        :

        vs.                             : Magistrate Judge Susan Baxter

                                        :

Lt. William McConnell                   : District Judge Sean McLaughlin


## Brief in Opposition to the Defendant's
## Motion to Set Aside the Entry of Default Judgement


## Procedural History

Plaintiff filed the above civil action in this court on March 22, 2005. The Defendant in this case was then served with the complaint on April 21, 2005 making the original answer deadline in this case June 20, 2005. On June 26, 2005 plaintiff filed a motion for summary judgement against the defendant to which the defendant failed to respond to. However, the court dismissed the motion as premature because it claimed that the defendant had not yet been served with the complaint despite the fact that the defendant was served with the complaint 5 days prior to plaintiff filing his motion for summary judgement. (Attached Exhibit A).

Plaintiff refiled his motion for summary judgement on June 3, 2005 and again the defendant refused to respond to the motion. However, on June 7, 2005 the court ordered plaintiff to refile the motion within 30 days of that order lest his suit be dismissed for failure to prosecute because he

submitted the motion in a double page format as opposed to a single page format. Plaintiff subsequently complied with the court's order and refiled his motion for summary judgement like the court ordered him to do. Again the defendant refused to respond to the motion.

On June 22, 2005, which was 2 days after the answer deadline, the defendant filed a motion for a 30 day extension of time in which to answer the complaint that the court granted on June 27, 2005 extending the answer date to July 19, 2005. Then on July 18, 2005 the defendant filed for another 30 day extension of time that the court granted on July 20, 2005 extending the answer deadline to August 18, 2005.

Plaintiff then filed a motion requesting a speedy disposition of his motion for summary judgement that the court denied on July 28, 2005. In that order the court also dismissed plaintiff's third motion for summary judgement as premature because the defendant had still not filed an answer to the complaint and the court further warned the defendant that he had until August 18, 2005 to respond to the complaint and that no further extensions of time would be granted without "good cause" shown.

Despite this warning, the defendant failed to respond to the complaint and plaintiff filed for an entry of default that was entered on August 25, 2005. Currently at issue is the defendant's motion to set aside the entry of default judgement.

## Standard of Review

In deciding whether or not to set aside an entry of default the court must consider the following factors: 1) whether lifting the default would prejudice the plaintiff; 2) whether the defendant has a meritorious defense; 3) whether the defendant's conduct is excusable or culpable; and 4) the possibility of effective alternate sanctions. Kaufman vs. Cal Spas, 37 F. Supp. 2d 402, 404 (C.D. Ga. 1999). All of these factors are adressed in the underlying argument where plaintiff responds to each of the defendant's excuses in his motion to set aside the entry of default judgement in a numbered answerlike format.

## Argument

## Excuse #1

Defense counsel's contention that the default in question is his law firm's fault and not the defendant's is completely irrelevant. Clients must be held accountable for the acts and omissions of their ~~attnerd attorneis atto~~ attorneys. Pioneer Inv. Services Co. vs Brunswick Associates Ltd. Partnership, 113 S. Ct. 1489, 1499 (1993). There is no merit to the contention that the results of counsel's unexcused conduct imposes an unjust penalty on the client. Id at 1499.

As for defense counsel's assertion that he lost track of the due date for filing an answer, having somehow inexplicably failed to calender it either electronically

or on paper, this is not an excusable reason that can justify vacating an entry of default. See, Coretta vs National Home Care Ctrs. Inc, 186 F.R.D. 262, 269 (D.R.D. 1999). (court may deny vacation where party claims to have simply "misplaced" the legal papers or to have negligently ignored deadlines.)

One of the factors the court must consider when deciding whether or not to set aside an entry of default is "whether the defendant's conduct is excusable or culpable." Kaufman at 404. Culpable conduct consists of willful, intentional, reckless or bad faith behavior. Id at 405.

If a defendant "has recieved actual or constructive notice of the filing of the action and failed to answer" his conduct is culpable. Franchise Holding II L.L.C. vs. Huntingdon Restaurants Group Inc, 375 F3d 922, 926 (9th Cir. 2004). Here the defendant recieved actual notice of the filing of the action and the August 18, 2005 answer deadline. His conduct in failing to file an answer is therefore culpable, not excusable.

What is also of issue here is, how did counsel lose track of the due date for filing an answer when he was aware of the 2 previous deadlines having filed for a 30 day extension of time 2 days after the first and 1 day before the second and after recieving this court's order of 7/28/05 reminding him of the deadline and warning him that there will be no further extensions absent "good cause" 3 weeks prior to the deadline?

He also recieved plaintiff's objections to the Judge's

order dismissing his third motion for summary judgement as premature just 2 weeks prior to the deadline. Is the court to believe that the office of attorney General somehow inexplicably failed to acknowledge all of the forementioned paperwork that would have brought the deadline in question to his attention?

The court may impute culpability from a defendant's "reckless disregard for repeated communications from either the plaintiff or the court," Kaufman at 405 and the defendant in this case missed the first answer deadline, has filed for two 30 day extensions of time before defaulting in this case and has failed to respond to any of the 3 motions for summary judgement that plaintiff filed against him.

All of the forementioned culpability displayed by the defense in this case weighes in favor of upholding the entry of default.


Excuse # 2

Whatever delay that may have occurred with defense counsel recieving the waiver of service is the defendant's fault. It is confirmed that the defendant recieved plaintiff's complaint along with the waiver of service prior to April 26, 2005 which was only 5 days after the start of the running of the 60 day timeframe. (attached Exhibit A).

Furthermore, the defense's contentention that they needed to assemble documents in order to answer plaintiff's complaint is entirely false. Everything needed to

answer the complaint was attached to it except for the defendant's version of the facts.

## Excuse #3

The contention that defense counsel was unable to meet the deadlines in this case because of having to come to grips with the redistributed caseloads of two former colleagues is entirely unpersuasive. If this contention had any truth to it then why wasn't it raised in either of the defenses 2 previous motions requesting an extension of time in which to file their answer?

The defense did not mention it because it had absolutely no bearing on their failure to meet the answer deadlines in this case. How could the absence of two former low level employees, who have no doubt been replaced already, have such an enormous effect on the daily operations of an office with as large and prominant a staff as the office of Attorney General?

Also, what could the C.C.F. system possibly have to do with missing the answer deadlines in this case? The defense has admitted that they missed the answer deadline and they have made no allegations of any failed transmissions to the court.

If the defense is trying to imply that it uses this system to keep track of its records and that use of it resulted in losing track of the deadline then the defense would also be implying that the same thing happened to the courts order of 7/28/05 and plaintiffs objections

dated 8/2/05. What are the chances of that?

### Excuse #4

Entries of default are not legally disfavored in cases where the defense's culpability is as egregious as ~~it~~ it is here and where the defendant lacks a meritorious defense as he does here. (This brief at excuse #'s 1 and 8)

### Excuse #5

How could the public importance of the defendant retaliating against plaintiff warrant the opening of an entry of default against the party guilty of the retaliation?

### Excuse #6

①Pennsylvania state law is completely inapplicable to the default procedures in federal court. Furthermore, waiting a week <sup>after a deadline</sup> to file for an entry of default is entirely proper. Consider that plaintiff's complaint was going to be dismissed in its entirety for failure to prosecute if he was even one day late on a 30 day deadline to re-file his motion for summary judgement despite the fact that the court later dismissed it as premature anyway and which was a motion plaintiff never even had a duty to file in the first place.

Also, consider that this is the second time the defendant has made himself susceptible to an entry of default by missing an answer deadline in this case. He also missed

the deadline on June 20, 2005 by 2 days which is not excusable under the 3-day mailing rule because the answer deadline time period only began to run upon actual reciept of plaintiffs complaint. See, Mosel vs. Hills Dept Store Inc, 789 F2d 251, 252 (3rd Cir. 1986) (3-day mailing rule inapplicable to deadlines where the time period begins to run upon actual reciept of document)

   To open the entry of default in this case would be to impose a completely unjust double standard upon plaintiff and allow the defendant to deliberately manipulate the Federal Rules of Civil procedure. Refusing to open an entry of default after a party misses his third opportunity to answer a complaint is entirely proper.

   See, Spears vs City of Indianapolis, 74 F3d 153, 157 (7th Cir. 1996) (finding no abuse of discretion where the district court refused to grant a 24-hour extension* after having previously granted 2 earlier extensions*). See also, McIntosh vs. Antonino, 71 F3d 29, 37-38 (1st Cir. 1995) (finding no abuse of discretion in court's "exasperated denial" of a third extension of time).

*of time

## Excuse #7

   Another factor a court must consider in deciding whether or not to open an entry of default is "whether lifting the default would prejudice the plaintiff". Kaufman at 404. Prejudice is demonstrated "if vacating the default results in the loss of evidence or the impairment of the plaintiffs

ability to pursue his claims." Id at 404.

Plaintiff does concede that he can not establish that, at this time, that opening the default in this case would result in the loss of evidence or impair his ability to pursue his claims. However, the prejudice factor is disjunctive from the other 3 factors the court must consider when deciding whether or not to open an entry of default and failing to establish all 4 factors in plaintiff's favor is not necessary to preserve his entry of default.

See, Kaufman at 406 ( inexcusable and culpable conduct and absence of alternative sanctions factors outweighed the meritorious defense and lack of prejudice factors resulting in the court denying the defendant's motion to open the default.) See also, Scottsdale Ins Co vs Littlepage, Civ. A. No. 92-2734, 1993 WL 275162 at 5-6 (E.D. Ga. July 16, 1993) ( inexcusable and culpable conduct factor outweighed all 3 of the other factors resulting in the court denying the defendant's motion to open the default.)

In the present case, plaintiff has clearly shown the defendant's conduct to be inexcusable and culpable (This brief at excuse #1), that he lacks any meritorious defense to plaintiff's claims (This brief at excuse #8), and that there are no alternative sanctions to be imposed on the defendant for his actions other than preserving the entry of default. See, Kaufman at 404, 406 ( the court must also evaluate the effectiveness of alternative sanctions.) These 3 factors, much like the factors present in Kaufman and Littlepage, far outweigh any lack of prejudice from

opening plaintiff's entry of default.

Also, plaintiff would not enjoy an unjustified windfall if the entry of default was upheld. The averments in plaintiffs' complaint are so irrefutable that no jury could possibly return a verdict in favor of the defendant and plaintiff's request for relief is entirely appropriate particularly because the misconducts at issue were one of the reasons the parole board used when they issued him both of his 1 year parole hits. See, Atkinson vs Wary, USDC D DE, case no. 99-562 JJF (Jury awarded inmate a $100,000.00 verdict for being retaliated against by a prison guard in response to him filing a civil action in federal court; the verdict was affirmed.)

Regardless of this, if the court feels that plaintiff's demand for relief is excessive then it may choose to submit the damages to a jury so how would upholding the entry of default in this case result in an unjustified windfall upon plaintiff?

Excuse #8

The final factor the court must consider when deciding whether or not to set aside an entry of default is "whether the defendant has a meritorious defense." Kaufman at 404. The showing of a meritorious defense is accomplished when allegations of defendant's answer, if established at trial, would constitute a complete defense to the action. Id at 404-405. However, a general denial is insufficient to overturn a default, instead the defendant must assert

specific facts supporting the existence of a prima facia meritorious defense. Id at 405.

In this paragraph the defendant first argues that plaintiff did not exhaust his administrative remedies as required under the Prison Litigation Reform Act. This is entirely untrue, plaintiff did exhaust his administrative remedies and he attached the exhaustion paperwork to his complaint as Exhibit "packet" N.

As for the defendant's argument that plaintiff procedurally defaulted his claims, the defendant is making reference to the Department of Correction's refusal to entertain the claims contained in plaintiff's exhaustion paperwork due to the fact he did not file it within the D.O.C.'s 15 day time limit. While this may have been a meritorious defense in another case it is not in the case at hand.

The P.L.R.A.'s exhaustion requirement is not jurisdict- -ional and may be subject to certain defenses such as waiver, estoppel, or equitable tolling. Ziemba vs Wegner, 366 F3d 161, 163 (2nd Cir. 2004); Wright vs Hollingsworth, 260 F3d 357, 358 (5th Cir. 2001)

The Third Circuit has held that equitable tolling is primarily appropriate in situations in which the defendant has actively misled the plaintiff respecting plaintiff's cause of action. Oshiver vs Levin, Fishbein, Sedran & Berman, 38 F3d 1380, 1387 (3rd Cir. 1994). A plaintiff "can also escape the rigors" of the limitations period by invoking equitable estoppel, if the defendant has committed fraud or concealment that " causes the plaintiff to relax his

vigilance or deviate from his right of inquiry" so that complaint is not timely filed. Howard vs Mendez, 304 F. Supp. 2d 632, 635 (M.D. Ga. 2004). See, Brown vs Croak, 312 F3d 109, 112 (3rd Cir. 2002) (inmates failure to exhaust administrative remedies under the PLRA was excused because prison officials misled plaintiff by telling him he could not yet file a grievance because their investigation was not yet completed.)

In the misconduct plaintiff was appealing and grieving the defendant alleged that the facts he relied upon when issuing plaintiff the lying to staff misconduct was the fact that he interviewed an inmate Clark, who plaintiff submitted as a witness to the retaliatory abuse he had endured, and that Clark did not support plaintiff's version of events contained in a grievance he filed regarding the abuse. (Complaint at 10; Exhibit B). However, the defendant's allegations here were false. Inmate Clark did support plaintiff's version of events during his interview with the defendant. (Complaint at 11; Exhibit E).

Because plaintiff was denied his request to have inmate Clark as a witness at his misconduct hearing (Complaint at 12 and 13; Exhibit F and G) and because he was located on the opposite side of the prison as Clark (it is segregated into 2 halves) and could not find out what he told the defendant (Complaint Exhibit "packet" N; misconduct appeals to Superintendant and office of Inmate Grievances and appeals) plaintiff had no choice but to rely on the defendant's false statement. After all,

it was quite possible that Clark was afraid to tell the defendant the truth because he did not want to suffer the same type of retaliatory abuse that plaintiff was forced to endure.

If it had not been for the defendant's false statement plaintiff would have appealed the misconduct within the 15 day time frame. Also, if plaintiff had known inmate Clark never told the defendant plaintiff's abuse allegations were untrue and had he obtained the affidavit to prove it within those 15 days he would most certainly have appealed. Consider that plaintiff immediately began the administrative exhaustion process after learning of the true contents of inmate Clark's conversation with the defendant and obtaining the affidavit to prove that the defendant had lied. (Complaint at 11; Exhibit E and Exhibit "packet" N).

Furthermore, in some circumstances threats by prison guards may render administrative remedies "unavailable" for purposes of section § 1997 e (a). Ortiz vs McBride, 380 F3d 649, 654 (2nd Cir. 2004). See, Ziemba, at 162 ( prison officials estopped from asserting exhaustion defense because they threatened and beat plaintiff, denied him grievance forms and writing implements, and transferred him to another prison.) See also, Hemphill vs New York, 2004 WL 1842658, 2nd Cir. at pg 6 ( prison officials were estopped from raising exhaustion defense due to threats which deterred plaintiff from filing grievance.)

In the case at hand, plaintiff was directly threatened about what would happen if he filed his lawsuit against

S.C.I. Smithfield (Complaint at 4 and 5 ; Exhibit A and B) and the prison officials at S.C.I. Albion kept true to that threat when plaintiff was issued 2 misconducts on and the day after plaintiff recieved confirmation of the filing and service of his suit against Smithfield. (Complaint at 8, 9, 14, 15 and 19 ; Exhibits B, C, D, H, I and J). This threat and the accompanying retaliatory action detered plaintiff from beginning the administrative exhaustion process within the 15 days he was required to do so. (Complaint Exhibit "packet" N ; misconduct appeal to Superintendant and office of Inmate Grievances and appeals).

To have appealed the misconduct without inmate Clark's affidavit proving that the defendant lied in the misconduct plaintiff would have subjected himself to more retaliatory misconducts and punishment because S.C.I. Albion staff would have said that the facts contained in the appeals were lies just like they did in the misconduct at issue especially if inmate Clark did not support plaintiff's abuse allegations as the defendant said.

Also, inmate Clark's affidavit is exculpatory evidence that was not available within the 15 day timeframe and plaintiff had only recieved it on 2/6/05. This affidavit proves that plaintiff is innocent of his misconduct and there was absolutely no way for plaintiff to provide it along with one of his administrative appeals prior to that date. Even if plaintiff did file his appeal within the 15 day time limit and allowed prison officials to issue him more lying to staff misconducts as a result he

would still have had to file an appeal after 2/6/05 with the newly discovered evidence in order to obtain relief on the appeals.

A federal court may consider claims raised in a (Habeas Corpus) that were defaulted if the petitioner can demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice Coleman vs Thompson, 501 U.S. 722, 750 (1991); and, a fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schlup vs Delo, 513 U.S. 298, 327 (1995).

This procedural default exception is present in plaintiff's case. The defendant's retaliatory actions were a constitutional violation and inmate Clark's affidavit proves that plaintiff was innocent of his misconduct. This court should consider applying this rule to D.L.Q a misconduct exhaustion the same way it is applied in the Habeas Corpus context. After all, an inmate is entitled to file a Habeas Corpus challenging the fact or length of disciplinary confinement resulting from a misconduct. See, Torres vs Fauver, 292 F3d 141, 145 (3rd Cir. 2002)

Whether by equitable estoppel, equitable tolling or manifest injustice the procedural default resulting from plaintiff's failure to file an appeal to his misconduct within to 15 day time period should be excused as the late filing of the appeal was the defendant's fault and not petitioner's. See, Mitchell vs Horn, 318 F3d 523, 529

(3rd Cir. 2003)(a remedy that a prison official prevents a prisoner from utilizing is not an available remedy under §1997 e (a).)

The defendant's second alleged meritorious defense is supposed to derive from the fact that plaintiff did not suffer a "physical injury" as a result of the forementioned retaliation. The defendant is apparently making reference to the "mental or emotional injury" provision contained in 42 U.S.C. §1997 e (e) of the PLRA which states:

> No federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury

However, First Amendment retaliation claims are not for "mental or emotional injury" so the fact that plaintiff did not suffer a physical injury as a result of the retaliation at issue is irrelevant. See, McGrath vs. Johnson, 67 F. Supp. 2d 499, 508-509 (E.D. Pa. 1999)(a plaintiff need not allege a physical injury pursuant to §1997 e (e) in a 1st amendment retaliation claim because retaliation claims are not for mental or emotional injury.)

The defendant's allegations that he has a meritorious defense to plaintiff's complaint are meritless and these defenses would have failed even if he had not waived them by defaulting in this case. As such, the defendant's lack of a meritorious defense weighes in favor of upholding plaintiff's entry of default.

Excuse #9

Plaintiff reminds the court that the defendant has procedurally conceded to all of the facts alleged in plaintiff's complaint. A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability. In Re, The Home Restaurants Inc., 285 F3d 111, 114 (1st Cir. 2002)

Furthermore, this is not the first time the defendant has procedurally conceded to all of the facts alleged in plaint-iff's complaint. He never filed a response to any of plaint-iff's 3 statements of undisputed facts that accompanied his 3 motions for summary judgement and Local Rule of Court 56.1 states that the material facts set forth in the statement are deemed admitted unless controverted by the opposing party.

Regardless of all this, the defendant's mere denials of plaintiff's claims could not possibly contradict the overwhelming evidence against him anyway.

Excuse #10

Plaintiff does not admit to the conclusion that having legal work stapled and cash slips signed constitutes inmate misconduct or that he pled guilty to the charges at his misconduct hearing. Plaintiff was instructed by the block officers to come to the desk at blockout move times to use the stapler and have cash slips signed while on cell restriction as opposed to doing it during chow line and cell restriction yard. Plaintiff was merely following orders here.

Furthermore, even if these acts were inmate misconduct

it would not change the fact that the second misconduct could not have been issued against plaintiff if he were not on cell restriction for the first misconduct that the defendant fabric--ated or that such a petty misconduct was issued the same day that plaintiff recieved confirmation that his lawsuit was served upon the defendants at S.C.I. Smithfield.

## Excuse #11

The Sandin test is inapplicable here, this is a retaliation claim not a due process claim. Government actions which standing alone do not violate the constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right. Mitchell at 530.

See, Hart vs Harston, 343 F3d 762, 762 (5th Cir. 2003) (state prison inmate's punishment of 27 days of commissary and cell restriction after he was convicted in disciplinary proceeding for allegedly knowingly making false statements constituted an "adverse act" for purposes of inmates retaliation claim under §1983.)

## Excuse #12

The answer the defendant filed should not even be adressed. The defendant has procedurally admitted to all of the allegations in plaintiff's complaint and he has waived all of his affirmative defenses as a result of him defaulting in this case.

Wherefore, plaintiff respectfully requests that this honorable court deny the defendant's motion to set aside the entry of default and enter judgement against him for the relief requested in plaintiff's complaint.

9/4/05                                    _Ryan Kerwin_

In The United States District Court

For The Western District of Pennsylvania

Bryan Kerwin                          : case # 05-93 ERiE
                                      :
          vs.                         : Magistrate Judge Susan Baxter
                                      :
Lt. William McConnell                 : District Judge Sean McLaughlin

### Certificate of Service

I hereby declare that I mailed a true and correct copy of Plaintiffs Brief in Opposition to the Defendant's Motion to Set Aside the Entry of Default Judgement to the defendant's counsel at the following adress:

Kemal Alexander Mericli
Office of Attorney General
564 Forbes Ave.
Manor Complex
Pittsburg, P.A. 15219

9/4/05                                Bryan Kerwin

In The United States District Court

For The Western District of Pennsylvania

Bryan Kerwin                    : case # 05-93 ERIE

                                :

        vs.                     : Magistrate Judge Susan Baxter

                                :

Lt. William McConnell           : District Judge Sean McLaughlin


## Order

And Now, this ____ day of _____, 2005, upon consideration of the attached Brief in opposition to the Defendant's Motion to Set aside the Entry of Default Judgement, it is hereby,

Ordered and Directed, that the Defendant's request to set aside the entry of default is denied and judgement is hereby entered in favor of plaintiff for the full amount *of relief requested in his complaint.

_____

                                    J.

*attached exhibit A*

| | |
|---|---|
| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |

| | |
|---|---|
| 1. To: (Name and Title of Officer)<br>MR. BROMAGIN | 2. Date:<br>5/4/05 |
| 3. By: (Print Inmate Name and Number)<br>RYAN KERWIN  DZ0346<br><br>*Ryan Kerwin*<br>Inmate Signature | 4. Counselor's Name<br>MR. BROMAGIN |
| | 5. Unit Manager's Name |
| 6. Work Assignment<br>GLP | 7. Housing Assignment<br>B-A1 |

8. Subject: State your request completely but briefly. Give details.

Last Tuesday on 4/26/05 I had you call Lt. McConnell to inform him that I had paperwork I needed to hand deliver to him and have him sign for regarding a civil action I filed against him. Did you or did you not tell me that Lt. McConnell told you that he did not wish to sign for the paperwork and that he had already been served with my suit?

9. Response: (This Section for Staff Response Only)

Mr. Kerwin,

I did inform you that he didn't wish to sign Anything And that he Already had paperwork.

| | |
|---|---|
| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |

Staff Member Name _____ / _____ Date 5/4/05
                                Print              Sign

Revised July 2000