# ATTACHMENT   A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TROY PONTON, | ) | Civil Action No. 02-138J |
| | ) | |
| Plaintiff, | ) | Judge Kim R. Gibson |
| | ) | Magistrate Judge Keith A. Pesto |
| JOAN BAILEY; T. DOUGHERTY; | ) | |
| WHITESAL; JOHN McCULLOUGH, | ) | |
| | ) | |
| Defendants. | ) | Electronically Filed. |

## DECLARATION OF TRACY POLLOCK

I, Tracy Pollock, verify that the foregoing information is true and correct to the best of my personal knowledge or information and belief.

1.     I am presently employed by the Commonwealth of Pennsylvania, Department of Corrections, as an Administrative Officer II in the Grievance Review Office.  As part of my duties, I am responsible for reviewing grievance records of appeals.  The Secretary's Office of Inmate Grievances and Appeals conducts the final review of inmate grievances, in accord with Administrative Directive 804.  This directive is part of the Inmate Handbook, which is provided to each inmate and serves as the rules and regulations of the institution.

2.     A grievance must be appealed through all administrative levels of appeal at an inmate's institution and the Department of Corrections.  DC-ADM 804 outlines the necessary steps.  Once an inmate has complied with all of the procedural requirements and a grievance has received Initial Review, an inmate can file an Appeal from Initial Review to the Superintendent.  Once an inmate has received a disposition of an appeal from Initial Review, an inmate may appeal to the Secretary's Office of Inmate Grievances and Appeals and seek a Final Review.

3.    I have reviewed the grievance appeal records of inmate Ryan Kerwin, inmate number DZ-0246, and found that inmate Kerwin did not file a grievance on July 23, 2003.

4.    Inmate Kerwin did, however, file two grievances on July 21, 2003: grievance number 57372; and grievance number 57378.

5.    However, inmate Kerwin failed to exhaust administrative remedies with regard to either of these grievances.

This statement and verification is made subject to the penalties of 18 Pa.C.S.A. §4904 relating to sworn falsification to authorities, which provides that if I make knowingly false statements, I may be subjected to criminal penalties.

Tracy Pollock

Date: _3-2-06_

2

# ATTACHMENT   B

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY

*57378*

GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR. | RECEIVED FACILITY: | DATE: |
|---|---|---|
| GRiEVANCE COORDiNATOR | JUL 21 2003 ALBiON | 7/18/03 |
| FROM: (INMATE NAME & NUMBER) SUPERINTENDENT'S | SIGNATURE of INMATE: | |
| RYAN KERWiN  DZ0246 ASSISTANT | Ryan Kerwin | |
| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: | |
| UNASSiGNED | JB5 | |

INSTRUCTIONS:
1  Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2.  State your grievance in Block A in a brief and understandable manner.
3.  List in Block B any actions you may have taken to resolve this matter.  Be sure to include the identity of staff
    members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.

I arrived in your institution on 7/14/03. Since that time I have been residing on the top bunk in a cell with a smoker. First off all, I am a very fitfull sleeper and your bunks have no safety bar. I have already fallen off the top bunk twice, once injuring my shoulder and once injuring my tailbone. This type of bunking is extremely dangerous to my future safety and I ask that I be placed on a bottom bunk. Second of all, I am a non-smoker who is currently being forced to inhale the second hand smoke of my cellmate. This type of celling is not constit-utionally valid as ruled by the Supreme Court in Helling vs Mckinney, 113 S.Ct. 2475 (1993). I am making you aware that if I suffer a serious injury from falling off my bunk or/and I am forced to continuously inhale second hand smoke from my cellmates I will file a civil action seeking both injunctive relief and compensatory damages. Be advised, this grievance will serve as notice of claim if in fact I am forced to file suit and in the event I proceed in State Court instead of Federal. I await your response.

B. List actions taken and staff you have contacted, before submitting this grievance.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____
Signature of Facility Grievance Coordinator

_____
Date

WHITE - Facility Grievance Coordinator Copy   CANARY - File Copy   PINK - Action Return Copy   GOLDENROD - Inmate Copy

**DC-ADM 804, Inmate Grievance System**
**DC-804**
**Part 3**

**Attachment C**
**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Albion**

**DATE:**    07/21/03

**SUBJECT:**    **Grievance Rejection Form**

**TO:**    **Ryan Kerwin**
**DZ-0246  J/B 5**

FROM:    _Mr Barr_
        **Mr. Barr**
        **Facility Grievance Coordinator**

| FOR OFFICIAL USE ONLY |
|---|
| **57378** |
| GRIEVANCE NUMBER |

The attached grievance is being returned to you because you have failed to comply with the provision(s) of DC-ADM 804, Inmate Grievance System:

1. _____    Grievances related to the following issues shall be handled according to procedures specified in the policies listed and shall not be reviewed by the Facility Grievance Coordinator.

    a.    DC-ADM 801 – Inmate Disciplinary and Restricted Housing Unit Procedures
    b.    DC-ADM 802 – Administrative Custody Procedures
    c.    Other policies not applicable to DC-ADM 804.

2. __X__    **Block B must be completed, as per the Instruction #3 of the Official Inmate Grievance Form.**

3. _____    The grievance does not indicate that you were personally affected by a Department or facility action or policy.

4. _____    Group grievances are prohibited.

5. _____    The grievance was not signed and/or dated.

6. _____    Grievances must be legible and presented in a courteous manner.

7. _____    The grievance exceeded the two (2) page limit. Description needs to be brief.

8. _____    Grievances based upon different events shall be presented separately.

9. _____    The grievance was not submitted within fifteen (15) working days after the events upon which claims are based.

10. _____    You are currently under grievance restriction. You are limited to one grievance each 10 working days. You filed a grievance on _____.

11. _____    Grievance involves matter(s) that occurred at another facility and should be directed by the inmate to the appropriate facility.

12. _____    The issue(s) presented on the attached grievance has been reviewed and addressed previously.

**Mr. Kerwin, you need to work with your Unit Manager and the Medical Department.**

cc:    Mr. Showers
      Ms. Overton
      DC-15
      File (57378)

DISTRIBUTED
7/22/03 P.m.

# ATTACHMENT  C

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY

*51372*

GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| GRiEVANCE COORDiNATOR | ALBiON | 7/20/03 |

FROM: (INMATE NAME & NUMBER)        SIGNATURE of INMATE:

RYAN KERWiN    DZ0246          Ryan Kerwin

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| UNASSiGNED | JB5 |

RECEiVED
JUL 21 2003
SUPERINTENDENT'S ASSISTANT

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.

On 7/20/03 I was forced to sign a contract agreeing to pay $5.00 in the event my photo I.D. door tag is lost or stolen. When stating that I did not wish to sign the contract I was threatened by the block officers who stated that if I did not comply I would be placed in the hole. I am not bound by any legal duty to sign this contract and this institution is not privileged to inflict or threaten to use bodily harm to coerce me into signing the contract. (escorting an inmate to the hole constitutes threat of bodily contact because if the inmate refused to go he would be physically restrained and placed there against his will). The forementioned conduct constitutes an assault § 2.1 under the conditional threat Clause § 30 of the Pennsylvania law of civil torts. It is similarly subject to criminal prosecution. Return to me this contract so that it may be destroyed and sanction this second shift staff for their illegal misconduct.

B. List actions taken and staff you have contacted, before submitting this grievance.

Block Staff

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Facility Grievance Coordinator

Problem with Staff \ Mr. Sharp

07-21-03

Date

**WHITE** - Facility Grievance Coordinator Copy    **CANARY** - File Copy    **PINK** - Action Return Copy    **GOLDENROD** - Inmate Copy
Revised
December 2000

DC-ADM 804, Inmate Grievance System
DC-804
Part 2

**Attachment B**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

**GRIEVANCE NO. ALB-57372**

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| **KERWIN, Ryan DZ-0246** | **SCI-ALBION** | **J/A-05** | **07/21/03** |

The following is a summary of my findings regarding your grievance:

In response to the issues raised on your grievance, I offer the following:

I spoke to you in my office on 7/22/03. I asked you to provide the name of the staff members involved in the alleged incidence stated in your grievance. You stated that you would not provide the names of the staff because you did not want to get them into trouble even though your grievance states that you want the second shift sanctioned for their illegal misconduct. You stated that this was a preemptive action so you would not have to pay for your door card when it is lost at a later date. I then spoke to Officer Hicks who was on duty that night and he stated that he was one of two officers involved in the incident. Officer Hicks stated that you were told by Officer Kersey that if you refused to follow her direction to sign the door card receipt that you may be issued a misconduct, but at no time were you threatened with "the hole". Policy No. 6.5.3 ALB 0004 on Page 3 states All cells will be placarded with cards indicating the inmate names and numbers. The cards will be affixed to the inside of the cell door window on the left side, in conjunction with the bed assignment. The photo cards will be displayed at all times for identification purposes. The only items listed on the cards will be the inmate's name, institutional number, and inmate photograph. This card is to be transferred from cell to cell, or unit to unit by the inmate. Lost or stolen cards will be replaced for a $5.00 fee. I then spoke to Sgt. Wertz, the Property Sgt, who informed me that the price for replacing a door card has been lowered to $2.00, but the policy remains the same. I explained to you on 7/22/03 that the paper that the officers instructed you to sign was receipt for the door card not a contract as you had claimed. It is part of a permanent record and a state document, therefore, it will not be returned to you. Further, you were instructed to sign the receipt. You were never threatened with any physical harm. The officer's actions are supported by both policy and procedure as I have documented here. Therefore, I can see no reason for further action at this time.

CC: Grievance Coordinator
    R.A. Showers, Unit Manager
    Inmate
    DC-15

*Inmate refused to sign - Met with him in My office at 10:15 on 07/24/03. R.A.S.*

RESOLVED: _____ DATE: _____

UNRESOLVED: _____ DATE: _____

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| R.A. Showers, Unit Manager | *R. A. Showers* | 07/24/03 |

# ATTACHMENT   D

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**State Correctional Institution at Albion**
(814) 756-5778
August 27, 2003

**SUBJECT:  ALLEGATIONS OF ABUSE**
**INVESTIGATION:  SCIA-052-03**
**RE:  Inmate Kerwin, DZ-0246**

**CONFIDENTIAL**

**TO:**     William J. Wolfe
           Superintendent

*William McConnell III*
**FROM:**   William McConnell
           Tool Control Officer

On 08/06/03, Captain Weaver directed this writer to conduct an investigation into Inmate
Kerwin's (DZ-0246) Allegations of Abuse (See Attachment #1). In Inmate Kerwin's 4-page
complaint, he writes that he was sexually harassed by one of the Albion Bus Detail Officers
during a strip search at SCI-Smithfield. He adds, "When I would begin to protest these
orders, I was immediately scolded and threatened with a misconduct for *Refusing to obey
an order*.  This officer used repeated profanity toward me and told me to get use to this
type of treatment, because there would be much more of it after I got to Albion". Inmate
Kerwin makes several more claims against the Bus Detail Officers, then goes on to write
"Since arriving at Albion, this type of treatment has progressed considerably", making
reference to two (2) incidents, one allegedly took place outside the Education building and
again on 07/23/03. Kerwin writes, "On 07/23/03, after breakfast, I was pulled over outside
of the chow hall and patted down in an inappropriate manner.  During the pat down I was
verbally harassed by three (3) officers, one of which repeatedly instructed the other officers
to "hook me up with a write-up" and to "just make-up a reason"".  Kerwin goes on to
address several issues concerning Mr. Showers. He claims that during the meeting, "Mr.
Showers told me that he was a former employee of SCI-Smithfield and knows Ms. Hannal
and Ms. Zimmerman, and that he (Mr. Showers) already heard about the lawsuit I was
preparing to file against SCI-Smithfield.  He also stated that I better reconsider filing, or I
would regret it and his officers have no problem dealing with troublemakers".

**"Our mission is to protect the public by confining persons committed to our custody in safe,
secure facilities, and to provide opportunities for inmates to acquire the skills and values
necessary to become productive law-abiding citizens; while respecting the rights of crime
victims"**

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE: Inmate Kerwin, DZ-0246
Page 2

Inmate Kerwin goes on to write about an incident that allegedly occurred at SCI-Smithfield, claiming that staff at SCI-Smithfield intercepted an Affidavit Kerwin signed for Inmate Justin Corliss. In closing his 4-page complaint, Kerwin writes that the second he finished writing this complaint, he was again singled out and punished by the Block Officer, when he was sent out to mow the grass while every other inmate in the jail was allowed to go to yard and block out.

### INVESTIGATIVE ACTIONS:

**Interviews of the following inmates:** Inmate Kerwin (DZ-0246), Inmate Valentine (EJ-0584), and Inmate Clark (DD-5461).

**Review of the following documents:** Inmate Kerwin's DC-14, and Inmate Corliss' (DU-3428) Separations.

**Interviews of the following staff members:** Sergeant Rhoades, Officer Sabol, Officer Spurlock, and Mr. Rod Showers (Unit Manager).

### 08/06/03    Interview of Inmate Kerwin (DZ-0246)

I informed Inmate Kerwin that I was conducting an investigation into his Allegations of Abuse. I advised Kerwin that I expect his answers to my questions be truthful and accurate. The following are the questions asked:

Q - Which officer conducted the strip search at Smithfield?
A - I honestly don't remember. It was one of the staff on the bus.

Q - Give me a physical description of this officer.
A - Heavy set, dirty blonde hair, and a blondish mustache.

Q - Did this officer have a nametag on his uniform?
A - I believe so. I didn't pay any attention to it at the time.

Q - You allege you were "sexually harassed by this officer", correct?
A - I don't think it was sexual in nature, but it was harassment.

Q - You claim this officer had you lift your penis and testicles six (6) times, explain?
A - He was being sarcastic, he was just harassing me.

**"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"**

**ALLEGATIONS OF ABUSE**
**INVESTIGATION: SCIA-052-03**
**RE: Inmate Kerwin, DZ-0246**
**Page 3**

Q - You also claim that this officer had you spread your buttocks four (4) times, explain?
A - He had me do it over and over, wider. I think I did it good enough the first time. He even looked up my nose. Now tell me that's not harassment.

*NOTE: It was explained to Kerwin that the officer is <u>required</u> to look into the inmate's nostrils while conducting a strip search of inmates.*

Q - You also claim the officer "Scolded and threatened you with a misconduct for *Refusing to obey an order*", explain?
A - I tried to protest his orders. He didn't threaten me with physical harm; he just told me that if I didn't cooperate, I'd get a misconduct.

Q - Did you follow the orders of the officer conducting the strip search?
A - I felt what I did was adequate.

Q - You claim this officer used "repeated profanity" toward you, what did the officer say?
A - I don't know, I can't recall what he said.

Q - You make the allegation that this officer used "repeated profanity" toward you and you tell me that you cannot remember what he said?
A - I just don't remember.

Q - Which officer allegedly told you, "Don't say anything, I already know your number"?
A - I have no idea.

Q - Give me his physical description.
A - I can't describe him to you.

Q - Do you take this comment as a threat?
A - I know what the officers working for the DOC can do. They can make-up misconduct charges, beat you, or have another inmate beat you up; so I don't take any comment lightly.

Q - You also write that when you arrived at SCI-Houtzdale, one of the officers allegedly asked you if you were headed for Albion, and when you said yes, the bus officers began to mumble with one another and laugh, explain?
A - It may have been Mercer where this happened. It was odd that I was singled out.

**"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"**

**ALLEGATIONS OF ABUSE**
**INVESTIGATION: SCIA-052-03**
**RE: Inmate Kerwin, DZ-0246**
**Page 4**

Q - Which officer allegedly made this comment?
A - I didn't see who said it.

Q - Where were the other officers at when this was said?
A - They were all in the front of the bus. I don't know what they said to each other, I couldn't hear them.

Q - You claim that these officers mumbled something and laughed. How do you know they were talking about you?
A - I know they were, I just don't know what they said, I couldn't hear them.

Q - You further allege that on your first full day at SCI-Albion, as you approached the Education building door, two (2) officers stopped you and stated, "They've already heard about me and that I looked like a troublemaker, among other things". Who were these officers?
A - I don't know their names, the inmate who was with me said it was the same officer that did the strip search on me at Smithfield.

Q - Did you recognize this officer?
A - No, not really.

Q - Did you look at the officer's nametags?
A - No.

Q - Who was the inmate with you at this time?
A - I don't want to give his name; I don't want to get him in trouble.

If you have a witness to any of your allegations, I suggest you give me their names. They will not get into any trouble as long as they are truthful.

*NOTE: Kerwin was very hesitant to give the name of his witness.*

Q - Are you going to offer a witness to the alleged comment made to you by two (2) officers outside the Education building?
A - Clark, he came up on the bus with me.

Q - You claim these two (2) officers said you look like a troublemaker "among other things", what else did the officers allegedly say to you?
A - Specifically, I don't remember.

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

**ALLEGATIONS OF ABUSE**
**INVESTIGATION: SCIA-052-03**
**RE: Inmate Kerwin, DZ-0246**
**Page 5**

Q - You go on to write that you were pulled over outside of the chow hall and patted down in an inappropriate manner and verbally harassed by three (3) officers, explain?

A - I was walking out of the chow hall when I was ordered to put my hands on the wall for a pat search.

Q - You write that you were patted down in an inappropriate manner, explain?

A - The officers were rough with me, pushing me and shoving me against the wall, then one officer said to "Hook me up with a misconduct".

Q - Which officer said that?

A - I don't know.

Q - Did you look at the officers nametags?

A - No.

Q - Can you describe the officers?

A - No.

Q - Do you have any witnesses to this incident?

A - No.

Q - Did you receive a misconduct on this day?

A - No, I haven't received any misconducts.

Q - What other harassment are you claiming to have endured at Albion?

A - Just from the Unit Manager, Mr. Showers. I went to his office to discuss my grievances. That's when he told me that he used to work at Smithfield and knew about my lawsuit against them. Then he told me I better reconsider filing, or I would regret it because his officers have no problems dealing with troublemakers.

Q - Did Mr. Showers tell you who told him about your lawsuit?

A - No, he didn't say.

Q - At the conclusion of your 4-page complaint you write, "The second I finished writing this complaint, I was again singled out and punished by the block officers", explain this.

A - I was told to go outside and mow the grass.

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE: Inmate Kerwin, DZ-0246
Page 6

Q -   You're in the general labor pool and will be assigned various jobs like mowing the
      grass, picking up trash, or assisting in cleaning the unit.  All GLP's are subject to
      these details.
A -   It just seems strange to me that I would be picked.

Q -   Do you have anything else to add to this investigation?
A -

**08/06/03    Interview of Inmate Clark, DD-5461**

I informed inmate Clark that I was conducting an investigation into Inmate Kerwin's
Allegation of Abuse by SCI-Albion staff.  I advised inmate Clark that I expect his answers to
my questions be truthful and accurate.  The following are the questions asked:

Q -   Did you arrive at SCI-Albion on the bus on 07/15/03?
A -   Yes.

Q -   Did you witness any of the bus officers harass any of the inmates?
A -   No.

Q -   What were the officers behavior towards the inmates on the bus?
A -   There wasn't any problems.  The officers seemed pretty nice.

Q -   Inmate Kerwin reports that on 07/16/03, you observed two (2) officers verbally
      harass him outside of the Education building, did you?
A -   No, the only thing the officer said to him was that he needed to tuck his shirt in.
      They weren't messing with him.

Q -   Do you have anything else to add at this time?
A -   Kerwin, the white boy, has an attitude.  Nobody was messing with him.

**08/06/03    Interview of Sergeant Rhoades**

I informed Sgt. Rhoades that I was conducting an investigation into inmate Kerwin's, DZ-
0246, Allegations of Abuse by an unidentified member of the Albion Bus Transport Team.
I allowed Sgt. Rhoades to read inmate Kerwin's complaint.  The following are the questions
asked:

Q -   Were you assigned to the transport bus on 07/15/03?
A -   Yes.

"Our mission is to protect the public by confining persons committed to our custody in safe,
secure facilities, and to provide opportunities for inmates to acquire the skills and values
necessary to become productive law-abiding citizens; while respecting the rights of crime
victims"

ALLEGATIONS OF ABUSE
INVESTIGATION:  SCIA-052-03
RE:  Inmate Kerwin, DZ-0246
Page 7

Q -    Do you recall Inmate Kerwin, DZ-0246?
A -    No.

Q -    Did you conduct any strip searches at Smithfield on 07/15/03?
A -    No, the officers conduct the strip searches and I put the cuffs and shackles on the
       inmates after they're searched.

Q -    Did you witness the strip search of inmate Kerwin?
A -    No.

Q -    Who were the officers assigned with you on 07/15/03?
A -    It would have been Officer Sabol and Officer Spurlock, the regular bus officers.

Q -    Which officer would have completed the strip searches at Smithfield on 07/15/03?
A -    Both Sabol and Spurlock, which is normal procedures.

Q -    While at Smithfield, did you hear Officer Spurlock tell Kerwin or any other inmate,
       "Don't say anything, I already know your number"?
A -    No, I process all the inmates prior to them getting on the bus.  I call out the
       institution they're going to, and as the inmate exits the room, I check the photo ID,
       name, and DC# of each inmate.  Even if it's an inmate I know, I still go through the
       same procedures.  I'll never tell an inmate, "I know your number", I always verify it.

Q -    Did you, Officer Spurlock, or Officer Sabol make any comment to inmate Kerwin
       while on the bus?
A -    No.

Q -    Since 07/15/03, have you had any contact with inmate Kerwin inside the institution?
A -    Like I said, I don't recall him and even after looking at his picture, I don't recall
       dealing with him.

Q -    Do you have anything else to add to this investigation?
A -    No.

**08/07/03    Interview of Officer Sabol**

I informed Officer Sabol that I was conducting an investigation into inmate Kerwin's, DZ-
0246, Allegations of Abuse by an unidentified member of the Albion Bus Transport Team.
I allowed Officer Sabol to read inmate Kerwin's complaint.  The following are the questions
asked:

**"Our mission is to protect the public by confining persons committed to our custody in safe,
secure facilities, and to provide opportunities for inmates to acquire the skills and values
necessary to become productive law-abiding citizens; while respecting the rights of crime
victims"**

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE: Inmate Kerwin, DZ-0246
Page 8

Q - You were assigned to the Bus Transport Team on 07/15/03, correct?
A - Yes.

Q - Did you conduct the strip search on Kerwin at Smithfield?
A - Lieutenant, there's a 50/50 chance I did, but I don't recall. Officer Spurlock and I do the strip searches. He's in one room, and I'm in another.

Q - Did you say or hear Officer Spurlock or Sgt. Rhoades make any comment directed to Kerwin on the bus?
A - No.

Q - Since 07/15/03, have you had any contact with Inmate Kerwin inside the institution?
A - I don't believe so.

Q - Do you have anything else to add to this investigation?
A - No.

**08/13/03    Interview of Mr. Rod Showers, Unit Manager**

I informed Mr. Showers that I was conducting an investigation into inmate Kerwin's, DZ-0246, Allegations of Abuse. I allowed Mr. Showers to read the complaint written by inmate Kerwin. The following are the questions asked:

Q - Did you call Inmate Kerwin to your office on 07/22/03?
A - Yes, I called him down to review his grievances.

Q - Did you tell Kerwin that you had worked at SCI-Smithfield?
A - No, I was explaining to inmate Kerwin that he needed to follow procedures before filing grievances. He needed to try to resolve the issues with staff (i.e. talking with the Unit Manager or his Counselor). Kerwin said that his Unit Manager (Ms. Hannal) and Counselor (Ms. Zimmerman) at SCI-Smithfield didn't want to be bothered with grievances. I told him that I knew both of the individuals and found it hard to believe they would say anything like that.

Q - Did you tell Kerwin that you heard about his lawsuit against Smithfield?
A - No, that's a lie. I don't know anything about a lawsuit.

Q - Did you tell Kerwin "He better reconsider filing the lawsuit or he would regret it" and "My officers have no problem dealing with troublemakers".
A - No, that too is a lie.

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

**ALLEGATIONS OF ABUSE**
**INVESTIGATION: SCIA-052-03**
**RE: Inmate Kerwin, DZ-0246**
**Page 9**

Q -    Do you have anything else to add at this time?
A -    No.

In reviewing Inmate Kerwin's complaint, he makes reference to an Inmate Justin Corliss, for whom Kerwin claims to have signed an Affidavit for. In reviewing inmate Corliss' Separation History, Kerwin appears to be following Corliss' behavior (See Attachment #2).

I elected to interview one of the other inmates who were on the bus the day Inmate Kerwin (DZ-0246) was, 07/15/03. On 08/07/03, I interviewed Inmate Valentine, EJ-0584.

**08/07/03    Interview of Inmate Valentine, EJ-0584**

I informed Inmate Valentine that I was conducting an investigation into allegations of staff harassment of an inmate during the bus transport on 07/15/03. I advised Valentine that I expect his answers to my questions be truthful and accurate.

Q -    You arrived at Albion on the bus on 07/15/03, correct?
A -    Yes.

Q -    During the processing at SCI-Smithfield did you witness any inmate being harassed by staff?
A -    No sir.

Q -    During the bus trip to Albion did you witness any staff harass any of the inmates on the bus?
A -    No, they were alright dudes.

Q -    Do you have anything else to add to this investigation?
A -    No, like I said, the officers didn't give anyone problems.

**08/25/03    Interview of Officer Spurlock**

I advised Officer Spurlock that I was conducting an investigation into Inmate Kerwin's, DZ-0246, Allegations of Abuse by an unidentified member of the Albion Bus Transport Team. The following are the questions asked:

Q -    Do you recall conducting a strip search of Inmate Kerwin, DZ-0246, on 07/15/03, at SCI-Smithfield?
A -    Yes, I do. Captain Weaver asked me about that several weeks ago, before I went on vacation.

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

**ALLEGATIONS OF ABUSE**
**INVESTIGATION: SCIA-052-03**
**RE: Inmate Kerwin, DZ-0246**
**Page 10**

Q - Inmate Kerwin reports that you ordered him to lift his penis and testicles six (6) successive times, and then ordered him to spread his buttocks four (4) times. Is this correct?

A - No, I was conducting the strip search on him and when I told him to lift his penis, he did it real quick, same with his testicles. It was obvious that he was trying to set the tempo of the search. I told him that he is to follow my orders. I only had him lift his penis and testicles two (2) times. The first time was at his speed, and the second time he followed my orders.

Q - Did you use any profanity toward Inmate Kerwin?
A - No, I did not.

Q - Did you tell Kerwin to get use to this type of treatment, because there would be much more of it after he got to Albion?
A - No.

Q - Did you or any of the other officers on the bus direct any comments to Kerwin during the bus trip?
A - No.

Q - Since 07/15/03, have you had any contact with Inmate Kerwin inside the institution?
A - To my knowledge, no.

Q - Do you have anything else to add to this investigation?
A - No.

*NOTE: The delay in interviewing Officer Spurlock is due to him being on two (2) weeks leave, and myself being on one (1) week leave.*

**SUMMARY:**

Inmate Kerwin, DZ-0246, writes a 4-page complaint addressing numerous Allegations of Abuse by SCI-Albion staff. He reports that on 07/15/03, he was Sexually Harassed during a strip search at SCI-Smithfield by one of the officers assigned to the Albion Bus Detail. Kerwin could not offer the name of the officer. However, he did give a physical description. Kerwin reports that the officer was heavy set with dirty blonde hair, and a mustache. This description does not match any of the officers assigned to Albion's Bus Detail. Kerwin writes that the officer ordered him to lift his penis and testicles six (6) successive times, and spread his buttocks four (4) times.

**"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"**

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE: Inmate Kerwin, DZ-0246
Page 11

This investigation found that the strip search was conducted by Officer Spurlock, who reports that during the first attempt to strip search Kerwin, he (Kerwin) tried to set the tempo of the search by quickly lifting his penis and testicles. Officer Spurlock then advised Kerwin to follow his orders and the strip search was completed on the second attempt. Inmate Kerwin writes that this officer also used "repeated profanities" toward him. However, during my interview with Kerwin, he reports that he "cannot remember" what profanities the officer used. Officer Spurlock denies using any profanity toward Kerwin. Kerwin goes on to write that on his first full day at Albion, he was approached by two (2) officers outside of the Education building, and told "They've already heard about me, and that I looked like a troublemaker". Again, inmate Kerwin could not identify the officers by name.

Kerwin reluctantly offered Inmate Clark, DD-5461, as a witness to this incident. When interviewed, Inmate Clark did not support inmate Kerwin's version. Inmate Kerwin goes on to allege that he was patted down in an inappropriate manner after leaving the chow hall after breakfast. Again, Kerwin could not identify the officers, and offered no witnesses.

Inmate Kerwin continues by claiming that Mr. Showers called him to his office on 07/22/03, to discuss his grievances. Kerwin reports that, "Mr. Showers told him that he already heard about his lawsuit. He (Kerwin) was preparing to file against SCI-Smithfield and stated that he better reconsider filing, or he would regret it, and my Officers have no problem dealing with troublemakers". Mr. Showers denies making this comment to Kerwin. Inmate Kerwin ends his complaint by writing that the second he finished writing this complaint, he was again singled out and punished by staff because he was sent outside to mow the grass.

This writer also interviewed Inmate Valentine, EJ-0584, who was on the bus trip with Kersin on 07/15/03. Valentine reports that he did not witness any officer harass any inmate on the bus.

Sergeant Rhoades, Officer Sabol, and Officer Spurlock deny harassing Inmate Kerwin at any time.

*NOTE: In his complaint, Inmate Kerwin makes reference to an Inmate Justin Corliss, DU-3428. In reviewing Corliss' separations, it appears that Inmate Kerwin is following in his footsteps.*

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

**ALLEGATIONS OF ABUSE**
**INVESTIGATION: SCIA-052-03**
**RE: Inmate Kerwin, DZ-0246**
**Page 12**

**FINDINGS:**

Inmate Kerwin provided no evidence or witnesses to support his Allegations of Abuse by Staff. This investigation found that it is more likely than not that Inmate Kerwin fabricated the allegations for personal reasons. This writer issued Kerwin a misconduct for "Lying to an employee".

Attached is a copy of Inmate Kerwin's DC-14, that indicates his poor attitude toward staff.

WM:tmf

Attachments:     #1 – Inmate Kerwin's Complaint.
                 #2 – Inmate Corliss' (DU-3428) Separation Sheet.
                 #3 – Inmate Kerwin's DC-14.

cc:     File

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

# ATTACHMENT  E

FORM DC-141    PART 1
Rev 3/00

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

**A 495879**

☒ MISCONDUCT REPORT    ☐ OTHER    ☐ DC-ADM 801  INFORMAL RESOLUTION

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| DZ 0246 | Kerwin, Ryan | SCI-Albion | 1800 | 8/05/03 | 8/26/03 |

| Quarters | Place of Incident |
|---|---|
| DA 162 | Visit Strip Interview Room |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION**

B Class I Charges #42 - Lying To An Employee

**STAFF MEMBER'S VERSION** On the above time and date this writer conducted an interview with Inmate Kerwin DZ 0246 regarding his allegations of abuse by SCI-Albion staff. In his complaint Kerwin writes that he was sexually harassed by a member of the Albion Bus Transport Team. During his strip search at SCI-Smithfield. Kerwin also writes that Mr. Showers made the comment to him that he (Showers) "already heard about the lawsuit I was preparing to file against Smithfield. He also stated that I better reconsider filing or I would regret it and my officers have no problem dealing with troublemakers!" This writer interviewed Kerwin's witness. He does not support Kerwin's version. I also interviewed the officers assigned to the Bus Transport Team on 7/15/03. Ofcr Spurlock, Ofcr Sabol, and Sgt Rhoades. These officers deny harassing Kerwin in any manner. I interviewed Mr. Showers. He denies making the alleged comment to Kerwin. The Investigation (SCI-A-052-03) concludes that it is more likely than not that Inmate Kerwin fabricated the allegations. (Continued)

**IMMEDIATE ACTION TAKEN AND REASON**

Formal hearing due to seriousness

input RE0

| PRE-HEARING CONFINEMENT | | |
|---|---|---|
| **IF YES** | | |
| | TIME | DATE |
| ☐ YES | | |
| ☐ NO | | |

**FORMS GIVEN TO INMATE**
☒ REQUEST FOR WITNESSES AND REPRESENTATION    ☒ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY / SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| Lt Wm McConnell    McConnell | KCM, Lt | DATE 8-26-03    TIME 24 HOUR BASE 1330 |

**YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER**

| DATE | TIME |
|---|---|
| 8-28-03 | 0800 |

| MISCONDUCT CATEGORY |
|---|
| ☒ CLASS 1    ☐ CLASS 2 |

**Signature of Person Serving Notice**

**NOTICE TO INMATE**
You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15    YELLOW — Inmate    PINK — Reporting Staff Member    GOLDENROD — Deputy Superintendent Facility Management

**DC-ADM 801 Inmate Discipline Policy, Attachment B**

Continued from DC-141 A 495879

FORM DC-141   PART 1
Rev 3/00

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

A 495898 unc

☒ MISCONDUCT REPORT   ☐ OTHER   ☐ DC-ADM 801 INFORMAL RESOLUTION

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| DZ 0246 | KERWIN, RYAN | SCI-ALBION | 1800 | 8/5/03 | 8/26/03 |

| Quarters | Place of Incident |
|---|---|
| D/A 62 | Visit Strip Interview Room |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION**

R Class I Charges - #42 - Lying To An Employee

**STAFF MEMBER'S VERSION**   of Harassment And Abuse By SCI-Albion Staff.

The delay in this report is due to conflicting leave schedules of the involved staff.

**IMMEDIATE ACTION TAKEN AND REASON**

| PRE-HEARING CONFINEMENT | | |
|---|---|---|
| | IF YES | |
| | TIME | DATE |
| ☐ YES | | |
| ☐ NO | | |

FORMS GIVEN TO INMATE
☒ REQUEST FOR WITNESSES AND REPRESENTATION   ☒ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY   SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| Lt Wm McConnell  McConnell | Cm Lt | DATE 5-26-03   TIME 24 HOUR BASE 1530 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | MISCONDUCT CATEGORY | Signature of Person Serving Notice |
|---|---|---|---|
| DATE 5-26-03 | TIME 0500 | ☒ CLASS 1   ☐ CLASS 2 | |

**NOTICE TO INMATE**

You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15      YELLOW — Inmate      PINK — Reporting Staff Member      GOLDENROD — Deputy Superintendent Facility Management

DC-141 Part 2B
Rev. 6-84

**COMMONWEALTH OF PENNSYLVANIA**

DISCIPLINARY HEARING REPORT

**DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part 1 |
|---|---|---|---|---|---|
| DZ0246 | KERWIN | SCIA | 2 Sept 03 | 1210 | A495879 |

| INMATE PLEA | | | Verdict | |
|---|---|---|---|---|
| ☐ Guilty | ☐ No Plea | | ☑ Guilty | |
| ☑ Not Guilty | ☐ Other | | ☐ Not Guilty | |

HEARING ACTION

CHARGES #42

FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED

INMATE PLEADS NOT GUILTY
INMATE STATES HE DID SUBMIT A COMPLAINT TO THE SUPERINTENDENT.
HE DID WRITE IN THE COMPLAINT HE WAS SEXUALLY HARASSED BY A MEMBER OF THE ALBION TRANSPORT BUS TEAM. HE STATES HE DID WRITE THAT MR SHOWERS MADE THE COMMENT TO HIM THAT MR. SHOWERS ALREADY HEARD ABOUT THE LAWSUIT HE WAS PREPARING TO FILE AGAINST SMITHFIELD AND THAT HE BETTER RECONSIDER FILING OR HE WOULD REGRET IT AND HIS OFFICERS HAVE NO PROBLEM DEALING WITH TROUBLEMAKERS. HE DID SUBMIT A WITNESS "CLARK".

LT. McCONNELL STATES INMATE KERWIN'S WITNESS NAME WAS CLARK. INMATE KERWIN SUBMITTED THIS WITNESS. HE STATES THE WITNESS STATED NOBODY HARASSED KERWIN ON THE BUS.

EXAMINER BELIEVES LT. McCONNELL'S REPORT OVER INMATE KERWIN'S DENIAL THAT INMATE KERWIN DID SUBMIT A COMPLAINT TO THE SUPERINTENDENT AND HE DID STATE IN THE COMPLAINT THAT THE ALBION TRANSPORT BUS TEAM SEXUALLY HARASSED HIM. HE ALSO SUBMITTED A WITNESS TO PROVE HE WAS HARASSED BY THE OFFICERS AND AFTER THE LT. INVESTIGATED THE INCIDENT HIS WITNESS TOLD THE LT. NOBODY HARASSED KERWIN ON THE BUS. EXAMINER NOTES THE LT. INTERVIEWED ALL (3) MEMBERS OF THE BUS TRANSPORT TEAM FOR THAT DAY AND ALL (3) DENIED HARASSING KERWIN IN ANY MANNER. EXAMINER BELIEVES THERE IS SOME EVIDENCE THAT INMATE KERWIN DID NOT TELL THE TRUTH IN HIS COMPLAINT TO THE SUPERINTENDENT
GUILTY #42 SANCTION 30 DAYS CELL RESTRICTION
EFF. 2 Sept. 03

| | | | |
|---|---|---|---|
| ☑ YES | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. | WITNESS FORM |
| ☑ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. | |
| ☑ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. | SEE APPENDICES ☒ |
| ☑ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. | |

NAME(S) OF HEARING EXAMINER/COMMITTEE (TYPED OR PRINTED)

IVORY BARRETT

Hearing Report and all appended information must be signed. Signature indicates finished report with appendices.

[signature]

SIGNATURE OF HEARING EXAMINER/COORDINATOR

DC-141     PART 2A
Rev. 6-84
INMATE REQUEST FOR
REPRESENTATION AND WITNESSES

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Date | Number as on Part I |
|---|---|---|---|---|
| DZ 0246 | KERWIN, RYAN | SCI-ALBION | 8/26/03 | A-495879 |

You have been charged with a misconduct. You may request assistance and/or witnesses to appear at your hearing by completing the section(s) below.

In order to have assistance or witnesses at your hearing, you must complete this form and present all copies to one of your housing officers no later than 9:00 a.m. the first working day after you receive notice of the misconduct.

Assistance: ☐ I do not request assistance
☐ I request assistance by _____
(The person requested must be willing to assist you)

Witnesses: You may request witnesses in accord with DC-ADM 801. State the relevance and importance of the testimony the witness will give

---

1. Name of Witness:     If Inmate     No.     Quarters

Why is this person's testimony relevant and important?
THE WITNESS LT MCCONNELL CLAIMS DID NOT SUPPORT MY VERSION OF ANY RELEVANT EVENTS

**NO**

DO NOT WRITE IN THIS SECTION
For Use by Hearing Examiner

Witness permitted?     If not, why not?

SEE BELOW

---

2. Name of Witness:     If Inmate     No.     Quarters

Why is this person's testimony relevant and important?
THE NAMES AND PRISON #'S OF ALL OF THE INMATES TRANSFERRED TO S.C.I. MERCER, HOUTZDALE, AND ALBION ON 7/15/03. (THEY WERE ON THE TRANSPORT BUS TO ALBION)

**NO**

Witness permitted?     If not, why not?

NOT NEEDED TO DETERMINE THE FACTS OF THIS INCIDENT

---

3. Name of Witness:     If Inmate     No.     Quarters

Why is this person's testimony relevant and important?
AN OFFICIAL STATEMENT CONFIRMING OR DENYING WHETHER OR NOT MR. SHOWERS WAS A FORMER EMPLOYEE OF S.C.I. SMITHFIELD

**NO**

Witness permitted?     If not, why not?

SEE ABOVE

---

_Ryan Kerwin_
Inmate's Signature

This section to be completed by Housing Officer only

Received completed form _1810_ hours _8-26-03_
Time     Date

_Call_
Housing Officer's Signature

_[signature]_
Hearing Examiner's Signature

---

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**State Correctional Institution at Albion**
(814) 756-5778
February 17, 2005

SUBJECT:   **RETURN OF APPEAL**
             **MISCONDUCT # 495879**

TO:      Ryan Kerwin
        DZ-0246
        D/A

**FROM:**   Marilyn S. Brooks
        Superintendent

I am returning your misconduct appeal without action. While I am lenient with time limits, your appeal is for a misconduct from August 2004 and well beyond appropriate time limits.

/dls

cc:    Ms. Farver
       DC-15
       File

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
1451 N. MARKET STREET
ELIZABETHTOWN, PA 17022

OFFICE OF THE
CHIEF HEARING EXAMINER

March 1, 2005

Ryan Kerwin, DZ-0246
SCI Albion

                    Re:    DC-ADM 801 - Final Review
                               Misconduct No. A495879

Dear Mr. Kerwin:

       This is in response to your appeal to final review of the above numbered misconduct.

       In accordance with DC-ADM 801, VI, L, 3, I have reviewed the entire record of this misconduct; including the misconduct report, the hearing report and related documents, your appeal to the Program Review Committee and their response, your appeal to the Superintendent and his response. Under date of February 17, 2005, Superintendent Brooks dismissed your appeal of the PRC decision as untimely. Consequently, you have failed to complete appeal to the Superintendent as required pursuant to DC-ADM 801. Accordingly, your appeal to final review cannot be accepted and must be dismissed. Review of the records you enclosed reveals that this misconduct occurred eighteen (18) months ago, in August 2003. In addition, the misconduct report also included interviews of four (4) Correctional Officers.

                        Sincerely,

                        Robert S. Bitner
                        Chief Hearing Examiner

RSB:kll

pc:    Superintendent Brooks

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."

# ATTACHMENT   F

FORM DC-141    PART 1
Rev 3/00

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

**A** 436723

☒ MISCONDUCT REPORT    ☐ OTHER    ☐ DC-ADM 801 INFRMAL RESOLUTION

| DC Number DZ 0246 | Name KERWIN | Institution SCIA | Incident Time 24 Hr. Base 1452 | Incident Date 9-22-03 | Date of Report 9-22-03 |
|---|---|---|---|---|---|

| Quarters BA 62 | Place of Incident B/A DAYROOM OFFICERS DESK |
|---|---|

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** CLASS 1 CHARGE #35 REFUSING TO OBEY AN ORDER CLASS 1 CHARGE #3C BREAKING RESTRICTION QUARANTINE OR INFORMAL RESOLUTION SANCTION CLASS 1 CHARGE #43 PRESENCE IN AN UNAUTHORIZED AREA

**STAFF MEMBER'S VERSION**

ON THE ABOVE DATE AND TIME THIS REPORTING OFFICER OPENED CELL 62 TO LET INMATE BICKEL FA 8347 IN HIS CELL (62) AT THIS TIME INMATE KERWIN DZ 0246 CAME OUT OF HIS CELL (62) TO THE OFFICERS DESK TO USE THE STAPLER. INMATE KERWIN IS CURRENTLY ON CELL RESTRICTION. THIS OFFICER ASKED INMATE KERWIN DZ 0246 IF HE WAS GIVEN CELL RESTRICTION RULES. HIS REPLY WAS YES I WAS, AND THEN WENT BACK TO HIS CELL. BY COMING OUT HIS CELL TO USE THE STAPLER KERWIN REFUSED TO OBEY THE ORDER OF 30 DAYS CELL RESTRICTION, BROKE CELL RESTRICTION AND AT THE SAME TIME PLACED HIMSELF IN AN UNAUTHORIZED AREA.

**IMMEDIATE ACTION TAKEN AND REASON**  Refer to formal resolution due to the serious nature of the misconduct

| **PRE-HEARING CONFINEMENT** | | |
|---|---|---|
| | **IF YES** | |
| | TIME | DATE |
| ☐ YES | | |
| ☒ NO | | |

**FORMS GIVEN TO INMATE**
☒ REQUEST FOR WITNESSES AND REPRESENTATION    ☐ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE  Kmla COI | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY  SIGNATURE AND TITLE  NCU | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| | | DATE 9-22-03 | TIME 24 HOUR BASE 2038 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | MISCONDUCT CATEGORY | Signature of Person Serving Notice Morales |
|---|---|---|---|
| DATE 9-23-03 | TIME 2038 | ☒ CLASS 1   ☐ CLASS 2 | Morales COI |

**NOTICE TO INMATE**
You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15    YELLOW — Inmate    PINK — Reporting Staff Member    GOLDENROD — Deputy Superintendent Facility Management

*DC-ADM 801 Inmate Discipline Policy, Attachment B*

| DC-141 | Part 2B | | COMMONWEALTH OF PENNSYLVANIA | | | |
|---|---|---|---|---|---|---|
| Rev. 6-84 | | | DEPARTMENT OF CORRECTIONS | | | |
| DISCIPLINARY HEARING REPORT | | | | | | |
| DC Number | Name | | Facility | Hearing Date | Hearing Time | No. from Part 1 |
| DZ 0246 | Kerwin | | SCIA | 25 Sept. 03 | 1100 | A436723 |

| INMATE PLEA | ☑ Guilty | ☐ No Plea | | Verdict | ☑ Guilty | |
|---|---|---|---|---|---|---|
| | ☐ Not Guilty | ☐ Other | | | ☐ Not Guilty | |

HEARING ACTION

CHARGES  #35  #43
#30

FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED

Inmate Pleads "No Contest to all Charges" (Guilty)

Examiner Accepts Guilty Plea

Guilty #35, #30, #43

Sanction 30 Days cell Restrict

ST Consecutive

Remove from Job

| ☑ YES | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. | |
|---|---|---|---|
| ☑ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. | |
| ☑ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. | SEE APPENDICES ☐ |
| ☑ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. | |

| NAME(S) OF HEARING EXAMINER/COMMITTEE (TYPED OR PRINTED) | Hearing Report and all appended information must be signed. Signature indicates finished report with appendices. |
|---|---|
| Ivory Bartlett | SIGNATURE OF HEARING EXAMINER/COORDINATOR |

# ATTACHMENT G



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

NOTICE OF BOARD DECISION

NAME: RYAN KERWIN
INSTITUTION:  SCI - ALBION

PAROLE NO:   494CE
INSTITUTION NO:   DZ0246

AS RECORDED ON NOVEMBER 05, 2003 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT OF 1941, AS AMENDED, 61 P.S. § 331.1 ET SEQ., THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

-YOUR VERSION OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
-YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.
-THE RECOMMENDATION MADE BY THE PROSECUTING ATTORNEY.
-THE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.
-REPORTS, EVALUATIONS AND ASSESSMENTS CONCERNING YOUR PHYSICAL, MENTAL AND BEHAVIOR CONDITION AND HISTORY.
-YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS OR CCC FAILURE.
-YOUR INTERVIEW WITH THE HEARING EXAMINER AND/OR BOARD MEMBER.

YOU WILL BE REVIEWED IN OR AFTER OCTOBER, 2004.

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE

(CONTINUE ON PAGE 2)

INSTITUTION

PAROLE NO:  494CE

(CONTINUED FROM PAGE 1)
DEPARTMENT OF CORRECTIONS.

WHETHER YOU HAVE RECEIVED A CLEAR CONDUCT RECORD AND COMPLETED THE DEPARTMENT
OF CORRECTIONS' PRESCRIPTIVE PROGRAM(S).

YOUR EFFORTS TO SECURE AN APPROVED HOME PLAN WILL BE SUBMITTED TO THE BOARD AT
THE TIME OF REVIEW.

~LAH 11/5/03~

INSTITUTION

Charles Myers
Acting Board Secretary

Notice of Board Decision
PBPP 15(08/02) 2 of 2

D/A



# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

NAME:  RYAN KERWIN

INSTITUTION:  SCI - ALBION

PAROLE NO:   494CE

INSTITUTION NO:   DZ0246

AS RECORDED ON OCTOBER 29, 2004 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT OF 1941, AS AMENDED, 61 P.S. § 331.1 ET SEQ., THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

-YOUR VERSION OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
-REPORTS, EVALUATIONS AND ASSESSMENTS CONCERNING YOUR PHYSICAL, MENTAL AND BEHAVIOR CONDITION AND HISTORY.
-YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS.
-YOUR INTERVIEW WITH THE HEARING EXAMINER AND/OR BOARD MEMBER.

YOU WILL BE REVIEWED IN OR AFTER OCTOBER, 2005.

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

WHETHER YOU HAVE SUCCESSFULLY COMPLETED A TREATMENT PROGRAM FOR: PRESCRIPTIVE PROGRAM PLAN.

WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE

(CONTINUE ON PAGE 2)

NOV 0 5 2004

INSTITUTION

PAROLE NO:  494CE

(CONTINUED FROM PAGE 1)
DEPARTMENT OF CORRECTIONS.

WHETHER YOU HAVE MAINTAINED A CLEAR CONDUCT RECORD AND COMPLETED THE
DEPARTMENT OF CORRECTIONS' PRESCRIPTIVE PROGRAM(S).

LAH  10/29/2004

INSTITUTION

*Lawrence F. Murray*

Lawrence F. Murray
Board Secretary

Notice of Board Decision
PBPP 15(08/02) 2 of 2

# ATTACHMENT    H

| DC-16E | SENTENCE STATUS SUMMARY | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS |
|---|---|---|

## 1. REFERENCES AND IDENTIFICATION

| DOC Number | Commitment Name | | PBPP No | SID No | FBI Number | Phila Photo # |
|---|---|---|---|---|---|---|
| DZ0246 | RYAN  KERWIN | | | 28206210 | | |
| Date of Birth | Place of Birth | | | | Race | Sex |
| 12/30/1977 | CROYDEN  PA  USA | | | | W | M |

## 2. SENTENCE SUMMARY

| Sent Date | County | Indictments | | Sent Type | Minimum | | | Maximum | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Y | M | D | Y | M | D |
| 06/11/1999 | BUCKS | CP#0743/1999 | | | 4 | 6 | | 9 | | |
| **Plea:** | Found Guilty | **OTN:** F3225213 | **Judge:** BIESER, EDWARD G. | | | | | | | |
| **Offense:** | AGGRAVATED ASSAULT (GENERAL) | | | | | | | | | |
| 06/11/1999 | BUCKS | CP#1130/1999 | | CS | | 6 | | 1 | | |
| **Plea:** | Found Guilty | **OTN:** F2957032 | **Judge:** BIESTER, EDWARD G. | | | | | | | |
| **Offense:** | RECKLESS ENDANGERMENT | | | | | | | | | |

| Controlling Minimum Date | 01/12/2004 | | Reentered from Previous DOC#: | |
|---|---|---|---|---|
| Controlling Maximum Date | 01/12/2009 | | New Maximum - PV | |

**Non-Incarcerated Offenses**
Comments:

**Summary or Remarks on Sentence**
16E CONVERSION DUE TO ANNUAL REVIEW

## 3. SENTENCE STRUCTURE

**Commitment Credit**
CP#0743; 99 FROM 1-12-1999 TO 6-11-1999
CP#1130;99 FROM 1-20-99 TO 6-11-1999

| Item | Computation 1 | Computation 2 | — | — |
|---|---|---|---|---|
| Indictments Included | CP#0743/1999 CP#1130/1999 | | | |
| Effective Date | 01/12/1999 | | | |
| Expiration of Minimum | 01/12/2004 | | | |
| Expiration of Maximum | 01/12/2009 | | | |
| Custody for Return – PV | | | | |
| Delinquent Time | | | | |
| Backtime Credit | | | | |
| Backtime Owed | | | | |
| New Maximum – PV | | | | |
| Sentence Computation Date | 07/11/2002 | | | |
| Basis for Computation | Initial Aggregation | | | |
| Total Sentence | 5-10 YEARS | | | |
| Status | Active | | | |

TEL:                                      Mar 02'06  13:52 No.004 P.04

## 4. DETAINERS

| Number | Date | From | Indict-Warrant Nos. | OTN | Type |
|--------|------|------|---------------------|-----|------|
| None | | | | | |

| Detainer Remarks | | |
|------------------|---|---|
| Detainer # | Date Deleted | Remarks  (for those deleted since last DC16) |
| None | | |

## 5. PRIOR DOC NUMBERS

| None | | | | | | | | |
|------|---|---|---|---|---|---|---|---|

## 6. FINES, COSTS AND RESTITUTION AT TIME OF RECEPTION

| Date | County | Indictment | Fines | Costs | Restitution |
|------|--------|------------|-------|-------|-------------|
| 08/11/1999 | BUCKS | CP#0743/1999 | | $462 | |

## 7. ACTIONS: BOARD OF PARDONS

| Decision Date | File Number | Action | Comments |
|---------------|-------------|--------|----------|
| | | | |

Last Modified by:  logershok