**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RYAN KERWIN,** | ) | |
| | ) | **Civil Action No. 05-0093E** |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Judge Sean J. McLaughlin** |
| | ) | **Mag. Judge Susan Paradise Baxter** |
| **LT. WILLIAM McCONNELL,** | ) | |
| | ) | |
| **Defendant.** | ) | **Electronically Filed.** |

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.  STATEMENT OF THE CASE**

Plaintiff, Ryan Kerwin, inmate number DZ-0246, is a *pro se* prisoner currently in the custody of the Pennsylvania Department of Corrections (DOC) in the State Correctional Institution at Albion (SCI-Albion).  Plaintiff has brought the instant action pursuant to 42 U.S.C. §1983 against an individual employed by the DOC, Lt. William McConnell.

Plaintiff initiated the instant action with a Motion to Proceed *In Forma Pauperis*, filed on March 22, 2005.  (See Docket #1).  Plaintiff was granted permission to so proceed by Order of Court (see Doc. # 2), and contemporaneously filed his Complaint on April 6, 2005 (see Doc. # 3).  The defendant answered the Complaint on August 29, 2005.  (See Doc. #2).  A Case Management Order has been entered, directing that discovery end on March 9, 2006.  (See Doc. # 37).

**A.  Plaintiff's Allegations**

Plaintiff contends that he filed a grievance on July 23, 2003 pertaining to alleged threats he had received from unspecified corrections officers at SCI-Albion.  (See

Complaint, at ¶ 4). Plaintiff states that he was interviewed by defendant McConnell regarding this grievance on August 5, 2003. Id., at ¶¶ 6-7. Plaintiff avers that unspecified individuals at SCI-Albion were notified, on August 25, 2003, that Plaintiff's lawsuit against the State Correctional Institution at Smithfield (SCI-Smithfield) had been filed. Id., at ¶ 8. Plaintiff alleges that the next day, he received a misconduct from defendant McConnell, in retaliation both for his action against SCI-Smithfield and for his having filed the aforementioned grievance. Id., at ¶ 10.

Plaintiff contends that the basis of the misconduct was statements made by a fellow-inmate, Clark, and that at the corresponding misconduct hearing, Plaintiff sought to call Clark as a witness, but was denied permission to do so by the non-defendant hearing examiner. Id., at ¶¶ 11-13.

Plaintiff next contends that, on September 22, 2003, unspecified individuals at SCI-Albion were notified that service of the SCI-Smithfield complaint had been made on the defendants named therein. Id., at ¶ 14. Plaintiff alleges that he received another retaliatory misconduct the following day. Id., at ¶ 15.

Plaintiff contends that these two unlawful misconduct were included in his prison file, and considered by the Pennsylvania Board of Probation and Parole (hereinafter, the Board) in concluding that he was ineligible for parole on his last two parole reviews. Id., at ¶ 17.

Plaintiff lists his sole cause of action as one for First Amendment Retaliation against defendant McConnell. Id., at ¶ 19. Plaintiff requests compensatory, nominal, exemplary, and punitive damages, a jury trial, the expulsion of the two challenged

misconducts from his institutional record, the costs of litigation, and attorneys fees.  Id.,

at ¶¶ 20-23.


**B.  Statement of Undisputed Facts**

At the outset it must be noted that Plaintiff did not file a grievance on July 23,

2003.  (See Attachment A).  Plaintiff filed two grievances on July 21, 2003: grievance

number 57378; and grievance number 57372.  (See Attachment B; and Attachment C).

In grievance number 57378, Plaintiff complains that he is forced to sleep in a top-bunk,

and in grievance number 57372, Plaintiff complains that he was forced to sign a contract

agreeing to pay $5.00 should his door tag be lost or stolen.  Id.  Neither of these

grievances pertains to threats by corrections staff and, incidentally, neither grievance has

been exhausted as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C.

§1997e(a).  Id.; and Attachment A.

On August 27, 2003, Plaintiff was indeed interviewed by defendant McConnell,

but not with regard to either of these grievances, but rather with regard to Plaintiff's

claims that he was sexually harassed by unnamed corrections officers on the transfer bus

from SCI-Smithfield.  (See Attachment D).  Defendant McConnell's interview of

Plaintiff was conducted in conjunction with his investigation of Plaintiff's allegations,

which also included interviews of the transfer bus officers, and Plaintiff's purported

inmate-witnesses.  Id.

The corrections officers all denied harassing Plaintiff in any way, and also denied

having any knowledge of Plaintiff's litigation against SCI-Smithfield.  Id.  Plaintiff's

purported inmate-witnesses also denied that Plaintiff was harassed by anyone during the

bus transfer.  Id.  In light of these interviews, defendant McConnell concluded that

Plaintiff's allegations were entirely unsubstantiated, and therefore issued Plaintiff a

misconduct for "Lying to an Employee."  Id.; and Attachment E.

The misconduct, number A495879, was issued by defendant McConnell on

August 26, 2003, and a misconduct hearing was held in relation thereto on September 2,

2003 by non-defendant hearing examiner, Ivory Barnett.  (See Attachment E).  Without

naming the witness, Plaintiff requested that "the witness Lt. McConnell claims did not

support [his] version of any relevant events" be allowed to testify at the misconduct

hearing.  Id.  Hearing Examiner Barnett denied this request stating that the witness was

"not needed to determine the facts of this incident."  Id.  Plaintiff was found guilty of the

misconduct, and sentenced to 30 days of cell restriction, effective September 2, 2003.  Id.

Plaintiff was indeed issued another misconduct on September 22, 2003, but it too

had nothing to do with Plaintiff's litigation against SCI-Smithfield.  (See Attachment F).

Plaintiff was issued misconduct number A436723 by non-defendant Corrections Officer

Rivella after Plaintiff was observed leaving his cell – and thus breaking his still-effective

30 day cell restriction – in order to use a stapler.  Id.  Once again, Hearing Examiner

Barnett presided over Plaintiff's misconduct hearing, found Plaintiff guilty of the

infraction, and sentenced Plaintiff to an additional 30 days cell restriction to run

consecutive to the previously issued period.  Id.

Examination of the parole review sheets attached to Plaintiff's Complaint reveal

that, although the Board did generally consider, among several other factors, Plaintiff's

"institutional behavior, including reported misconducts," the Board made no specific

mention of the misconducts challenged by Plaintiff here.  (See Attachment G).

## II.  STANDARD OF REVIEW

In ruling on a motion for summary judgment, a threshold inquiry is conducted on the need for a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  Federal Rules of Civil Procedure 56(c).  See also, Celotex Corporation v. Catrett, 477 U.S. 317, 325 (1986).

The moving party bears an initial burden of showing the absence of any genuine issues of fact; the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact.  See Anderson, 477 U.S. at 248.  Rule 56(e) does not allow the non-moving party to rely merely upon bare assertions, conclusory allegations or suspicion.  See Fireman's Insurance Company of Newark v. DeFresne, 676 F.2d 965, 969 (3d Cir. 1982).  There is no issue for trial unless evidence in the record would permit a jury to return a verdict for the non-moving party.  See Anderson, 477 U.S. at 248.  In deciding a motion for summary judgment, the court construes all facts and inferences in the light most favorable to the non-moving party.  See Pollack v. AT&T, 794 F.2d 860, 864 (3d Cir. 1986).

To apply the summary judgment test, the elements of a plaintiff's *prima facie* case under the substantive law are considered.  See Anderson, 477 U.S. at 248.  Summary judgment must be granted "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation, 477 U.S. at 322.

### III. ARGUMENT

A.    **The defendant is entitled to summary judgment on Plaintiff's retaliation claim.**

There is no doubt that retaliation is a violation of a prisoner's constitutionally protected rights.  See Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990).  Yet mere allegations of retaliation are insufficient to show a constitutional violation.

A proper retaliation claim must contain a showing of three factors by the plaintiff: (1) that he was engaged in a constitutionally protected activity; (2) that he was subjected to adverse actions; and (3) that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse actions.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  See also Rauser, 241 F.3d at 334; *adopting* Mt. Healthy City Board of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  "Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenging decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Id.

In the instant case, Plaintiff contends that the protected activity in which he was engaged, and for which he was retaliated against, was the filing of institutional grievances and a lawsuit against SCI-Smithfield.  (See Complaint, at ¶¶ 10, 15).  Plaintiff appears to have met the requirements of prong one of the retaliation test inasmuch as the

filing of inmate grievances has been found to be a "protected activity" for retaliation purposes (see Lentz v. Vaughn, 2006 WL 166527, *3 (E.D.Pa. Jan. 18, 2006), citing, Hill v. Blum, 916 F.Supp. 470, 473-74 (E.D.Pa. 1996)), and it simply cannot be disputed that the filing of a lawsuit is a "protected activity" for any First Amendment purpose (see Bounds v. Smith, 430 U.S. 817, 828 (1977)).

Plaintiff's apparent compliance with prong two of the retaliation test turns on the definition of "adverse action." The Court has defined "adverse action" for retaliation purposes as any action "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Further clarifying this standard in Mitchell v. Horn, 319 F.3d 523 (3d Cir. 2003), the Court stated that "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the protection of a constitutional right." Mitchell, 318 F.3d at 530. Plaintiff appears to have met the requirements of prong to inasmuch as the issuance of institutional misconducts has been found to be an "adverse action" for retaliation purposes. See Booth v. Pence, 354 F.Supp.2d 553, 561 (E.D.Pa. 2005).

Prong two is where Plaintiff's apparent compliance with the retaliation test ends, because the record is entirely devoid of the causation evidence necessary to meet prong three. Though "at the summary judgment stage, the prisoner need only produce 'evidence from which a reasonably jury could conclude' that the exercise of his right was a substantial or motivating factor in the prison officials' actions," it has been firmly established that the prisoner "must provide more than a 'scintilla of evidence' to survive summary judgment." Jones v. Vaughn, 2005 U.S.Dist.LEXIS 17016, *31 (E.D.Pa.

August 16, 2005), *citing*, <u>Booth v. Pence</u>, 354 F.Supp.2d 553, 560 (E.D.Pa. 2005); <u>Big Apple BMW, Inc. v. BMW of N. Am. Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). "[A] civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." <u>Evancho v. Fisher</u>, 2005 U.S.App.LEXIS 19585, *15 (3d Cir. Sept. 12, 2005), *citing*, <u>Boykins v. Ambridge Area Sch. Dist.</u>, 621 F.2d 75, 80 (3d Cir. 1980).

On the subject of the prong three causation inquiry, the Third circuit has held that temporal proximity can be relevant (<u>see</u> <u>Rauser</u>, 241 F.3d at 334), but *cannot* be dispositive of the issue. <u>See</u> <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 280 (3d Cir. 2000), *citing*, <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 503 (3d Cir. 1997); <u>Robinson c. City of Pittsburgh</u>, 120 F.3d 1286, 1302 (3d Cir. 1997) ("temporal proximity alone will be insufficient to establish the necessary causal connection when temporal relationship is not 'unusually suggestive'") (*emphasis added*).

In the instant case, Plaintiff provides the conclusory allegation that the conduct of the defendant was motivated by *someone* at SCI-Albion learning that Plaintiff's case against SCI-Smithfield had been initiated, and then served. (<u>See</u> Complaint, at ¶¶ 8-10; 15-17). Plaintiff specifies neither the case to which he refers, nor the individual at SCI-Albion who was notified thereof. <u>Id</u>.

A review of Plaintiff's history of litigation reveals that Plaintiff has initiated no state court actions, and a total of six federal court actions, not including this one. Three of these federal court actions were petitions for writs of habeas corpus, and thus not the SCI-Smithfield harassment case to which Plaintiff refers in the instant matter. <u>See</u> <u>Kerwin v. Wolfe, et al.</u>, E.D.Pa. 03-5645; <u>Kerwin v. Varner, et al.</u>, E.D.Pa. 02-6760; <u>Kerwin v. Varner et al.</u>, M.D.Pa. 02-1294. Two of the remaining cases are also clearly

not the enigmatic SCI-Smithfield case to which Plaintiff refers here.  The case of <u>Kerwin v. SCI-Smithfield, et al.</u>, M.D.Pa. 00-1986, was dismissed for failure to state a claim on July 12, 2001 - well before the July and September, 2003 dates to which Plaintiff refers in the instant Complaint.  <u>See</u> M.D.Pa. 00-1986, at Doc. # 18.  Similarly impossible, the case of <u>Kerwin v. Varner</u>, W.D.Pa. 05-003, was not initiated until November 2, 2005, some two years after the dates to which Plaintiff presently refers.  <u>See</u> W.D.Pa. 05-003, at Doc. # 1.

Thus, narrowing the field down to the one and only case to which Plaintiff can be referring in this instance; the case of <u>Kerwin v. Varner, et al.</u>, M.D.Pa. 03-2253.  Here too, however, lies an insurmountable obstacle for Plaintiff's retaliations allegations. Again, Plaintiff contends that the initiation of his SCI-Smithfield case in July, 2003 and service of the complaint in September, 2003 led defendant McConnell and others at SCI-Albion to retaliate against him.  (<u>See</u> Complaint, at ¶¶ 8-10, 15-17).  Once again the docket belies Plaintiff's allegations.  <u>Kerwin v. Varner</u> was not even initiated until December 10, 2003 (<u>see</u> Doc. # 1), and service was not made upon the defendants until February 2, 2004 (<u>see</u> Doc. # 11).  As such, these events could not have motivated defendant McConnell's conduct towards Plaintiff, and Plaintiff has thereby failed to establish the prong-three causation requirement of the retaliation test.

Even if Plaintiff is somehow seen has establishing a prima facie retaliation claim, defendant McConnell is nonetheless entitled to summary judgment thereon because he possessed a legitimate penological interest in issuing Plaintiff the challenged misconducts.  In deciding the penological interest issue in retaliation cases, "courts should afford deference to decisions made by prison officials who possess the necessary

expertise."  <u>See</u> <u>Rauser</u>, 241 F.3d at 334.  As a matter of law, "maintaining order and security within the prison system" is a "legitimate penological interest."  <u>Fraise v. Terhune,</u> 283 F.3d 506, 516 (3d Cir. 2002), *citing*, <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 350-351 (1987); <u>Turner v. Safley</u>, 482 U.S. 78, 91-92 (1987).  With specific regard thereto, "[t]he Third Circuit has directed lower courts to defer to prison administrators when the penological interest involves security."  <u>Allah v. Al-Hafeez</u>, 208 F.Supp. 520 (E.D.Pa. 2002), *citing*, <u>Fraise v. Terhune</u>, 283 F.3d 506, 516 (3d Cir. 2002).

As demonstrated by the record, Plaintiff was issued two misconducts for violating DOC regulations.  (<u>See</u> Attachment E; <u>and</u> Attachment F).  Only one of those misconducts was issued by defendant McConnell, and it was deemed necessary only after a thorough investigation of Plaintiff's claims.  (<u>See</u> Attachment D; <u>and</u> Attachment E). The other misconduct was issued when a non-defendant corrections officer personally witnessed Plaintiff violating institutional regulations.  (<u>See</u> Attachment F).  As such, it is evident from the record that defendant McConnell's actions were motivated, not by a retaliatory animus, but by the need to maintain institutional safety and security by insuring inmate compliance with the prison regulations.

Summary judgment should be entered in favor of the defendant accordingly.

**B.  Plaintiff has failed to state a cognizable due process claim upon which relief can be granted.**

As stated above, Plaintiff's lists First Amendment Retaliation as his sole claim in the instant action.  (<u>See</u> Complaint, at ¶19).  However, a careful reading of Plaintiff's Complaint reveals that Plaintiff may also be impliedly asserting due process claims.  To wit, Plaintiff challenges the denial by Hearing Examiner Barnett of his misconduct

hearing witness (see Complaint at ¶¶ 11-13) and the Board's alleged use of the two challenged misconducts as grounds for denying him parole (id., at ¶ 17). Plaintiff has failed in both of these regards to state a cognizable claim upon which relief can be granted.

The safeguards of the Due Process Clause are triggered only when a Fourteenth Amendment protected liberty interest is at stake. See Meachum v. Fano, 424 U.S. 215, 223-24 (1976). "Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). "The Due Process Clause itself confers only a very limited range of protected liberty on inmates lawfully convicted and confined in prison. Its substantive protection extends only to punishment and conditions of confinement not contemplated by the original sentence." Berrier v. Allen, 951 F.2d 622, 624 (4th Cir. 1991), citing Vitek v. Jones, 455 U.S. 480, 493 (1980). With specific regard to inmates such as Plaintiff, the United States Supreme Court has held that only instances of "atypical and significant hardship... in relation to the ordinary incidents of prison life" can trigger the protection of the Due Process Clause. Sandin v. Conner, 515 U.S. 472, 484 (1995).

The United States Supreme Court has stated that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolfe v. McDonnell, 418 U.S. 539, 556 (1974). With specific regard to an inmate's right to call witnesses at such a hearing, the Court has held that "[t]he right to call witnesses is a limited one constrained by reasonable institutional concerns including, but not limited to, safety, order, and retaliation. Officials must,

however explain, at some point, why they refused the request to call witnesses." <u>Harvin</u>, 1997 WL at *6, <u>citing</u> <u>Ponte v. Real</u>, 471 U.S. 491, 497 (1974).  Furthermore, "due process requires only that there 'be some evidence' supporting a disciplinary decision... and it is the hearing examiner's providence, and not this court's, to gauge the credibility of evidence and witnesses at a misconduct hearing." <u>Rauso v. Vaughn</u>, 2000 WL 873284, *8 (E.D.Pa. 2000), <u>citing</u>, <u>Massachusetts Correctional Inst. v. Hill</u>, 472 U.S. 445, 455-56 (1985).

In the instant case, Hearing Examiner Barnett did explain that the witness Plaintiff sought would not be permitted because that individual was "not needed to determine the facts of [the] incident." (<u>See</u> Attachment E).  In ultimately reaching the conclusion that defendant was guilty of the misconduct charged, Barnett relied upon defendant McConnell's and Plaintiff's own testimony at the misconduct hearing.  <u>Id</u>.  Inasmuch as it is within the purview of the hearing examiner to determine the credibility of evidence at a misconduct hearing (<u>see</u> <u>Rauso</u>, *supra*.), this testimony was more than ample to support Barnett's conclusion that Plaintiff was guilty of the charge.  Hence, no due process violation occurred with regard to Plaintiff's misconduct hearing.

Plaintiff's claim that the two challenged misconducts were relied upon by the Board in denying two of his previous applications for parole is equally without merit.  It has long been held that, in the Commonwealth of Pennsylvania, "parole is not a matter of right." <u>Bachman v. Jeffes</u>, 488 F.Supp. 107, 109 (M.D.Pa. 1980), *citing* <u>Commonwealth v. Brittingham</u>, 442 Pa. 241, 246 (1971); <u>Commonwealth ex rel Hendrickson v. State Boar of Parole</u>, 409 Pa. 204, 207 (1962).  Rather, parole is discretionary, within the paroling authority of the Board.  <u>See</u> <u>Weaver v. PA Board of</u>

Probation and Parole, 688 A.2d 766, 770 (Pa.Cmwlth. 1997). Hence, under Pennsylvania law, completion of an inmate's minimum sentence only establishes eligibility, and not entitlement to parole. See 61 P.S. § 331.21 and, 42 Pa.C.S. § 9756(c). See also Evans v. PA Bd. of Probation & Parole, 820 A.2d 904 (Pa.Cmwlth. 2003). Plaintiff's maximum sentence does not expire until January 12, 2009. (See Attachment H). Hence, no due process violation occurred even if the Board considered the two challenged misconducts in denying Plaintiff parole.

Therefore, summary judgment must also be entered with regard to any due process claim inferred by Plaintiff's Complaint.

**C.    In the alternative, the defendant is entitled to qualified immunity.**

The doctrine of qualified immunity protects government officials performing discretionary functions from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).[1] This standard was very recently clarified by the Third Circuit in Gilles v. Davis, in which they held that "qualified immunity encompasses mistaken judgments that are not plainly incompetent." See Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005), *citing*, Hunter v. Bryant, 502 U.S. 224, 229 (1991).

Moreover, in Anderson v. Creighton, 483 U.S. 635 (1987), the Court held that whether a government official could be held personally liable for conduct that allegedly

---

[1] An order rejecting a request for summary judgment based on qualified immunity is deemed a final judgment and subject to immediate appeal. See Behrens v. Pelletier, 516 U.S. 299, 307 (1996); Donahue v. Gavin, 280 F.3d 371, 381 n. 17 (3d Cir. 2002).

violated a constitutional or statutory right depended on the objective legal reasonableness of the action. Id. at 639. Under this standard, government officials are shielded from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Id. In Brown v. Grabowski, 922 F.3d 1097 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991), the Third Circuit interpreted Anderson to require analysis not only for the clear establishment of the right that an official is alleged to have violated, but also of the specific official actions alleged to have violated the right.

In determining the applicability of qualified immunity to prisoner civil rights actions in the Third Circuit has held:

> Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. §1983. This section does not create any new substantive rights, but it provides a remedy for the violation of a federal constitutional or statutory right conferred elsewhere. Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)
>
> "When the defendant in a §1983 action claims qualified immunity, a court must first determine if the plaintiff's allegations are sufficient to establish the violation of a federal constitutional or statutory right." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed. 818 (1999), *citing* Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). If the plaintiff's allegations meet this threshold, a court must next determine whether the right that the defendant's conduct allegedly violated was a clearly established one, about which a reasonable person would have known. Id. If the plaintiff's allegations fail to satisfy either inquiry, then a defendant is entitled to qualified immunity and dismissal of the case. Deciding "this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming

> preparation to defend the suit on its merits." <u>Siegert v. Gilley</u>, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

<u>Doe v. Delie</u>, 257 F.3d 309, 214-215 (3d Cir. 2001). <u>See</u> <u>also</u> <u>Gruenke v. Seip</u>, 225 F.3d 290, 299 (3d Cir. 2000) (until the question of qualified immunity is addressed, a court cannot reach the underlying merits of the case).

In the instant case, Plaintiff has failed to establish that the defendant McConnell's actions amounted to a violation of clearly established law, and has likewise failed to address whether defendant McConnell could reasonably have believed that his motivations where proper and lawful. <u>See</u> <u>Carsen v. Senate of Com. of Pa.</u>, 154 F.3d 82 (3d Cir. 1998). As discussed in sections A and B above, defendant McConnell's conduct was aimed at insuring institutional safety and security by requiring that Plaintiff, like all other inmates, comport to the prison regulations. As such, in the alternative to granting summary judgment on the bases set forth in sections A and B above, defendant McConnell is entitled to summary judgment on the basis of qualified immunity.

## IV.  CONCLUSION

WHEREFORE, it is respectfully requested that summary judgment be granted in favor of the defendant.

Respectfully submitted,

**Thomas W. Corbett, Jr.**
Attorney General

BY:      /s/ Kemal Alexander Mericli
KEMAL ALEXANDER MERICLI
Senior Deputy Attorney General
PA I.D. No. 27703

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

(412) 565-7680

Date:  March 3, 2006

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RYAN KERWIN,** | ) | |
| | ) | **Civil Action No. 05-0093E** |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Judge Sean J. McLaughlin** |
| | ) | **Mag. Judge Susan Paradise Baxter** |
| **LT. WILLIAM McCONNELL,** | ) | |
| | ) | |
| **Defendant.** | ) | **Electronically Filed.** |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the within **Brief in Support of**

**Defendant's Motion for Summary Judgment** was electronically filed and served upon

the following via first-class mail:

RYAN KERWIN
DZ-0246
SCI-Albion
10745 Route 18
Albion, PA  16475-0004


  /s/ Kemal Alexander Mericli
KEMAL ALEXANDER MERICLI
Senior Deputy Attorney General



OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

(412) 565-7680

Date:  March 3, 2006