IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYAN KERWIN | : CASE NO. 05-93 ERIE |
| | : |
| VS. | : MAGISTRATE JUDGE SUSAN BAXTER |
| | : |
| LT. WILLIAM MCCONNELL | : DISTRICT JUDGE SEAN MCLAUGHLIN |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
THE DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

**I. STATEMENT OF THE CASE**

On July 23, 2003 plaintiff filed a grievance to Superintendant William Wolfe addressing numerous instances of threatening abuse by various correctional employees at his prison. **(Verif. Cmplt. at 4)** In one of those instances, Rod Showers told plaintiff that "He already heard about the lawsuit plaintiff was preparing to file against S.C.I. Smithfield and that he better reconsider filing it or he would regret it." **(Id. at 5)**

On August 5, 2003 Lt. McConnell (hereinafter refered to as defendant) had plaintiff called down to intake to conduct an interview regarding the grievance plaintiff filed about the abuse. **(Id. at 6)** Plaintiff then explained to defendant the situation in full. **(Id. at 7)**

On August 25, 2003, three weeks after defendant's interview, S.C.I. Albion received a letter from the Huntingdon County Courthouse confirming that plaintiff had in fact filed his lawsuit. **(Id. at 8)** The very next day, on August 26, 2003, plaintiff was issued a misconduct by defendant for filing the grievance he submitted to Superintendant Wolfe. **(Id. at 9)**

Defendant alleged in the misconduct that the facts he relied upon when issuing it was the fact that he interviewed an inmate

1

Clark, which plaintiff submitted as a witness, and that Clark did not support plaintiff's version of events contained in the grievance. **(Id. at 10)** However, this was not the case, inmate Clark did support plaintiff's version of events and he made that clear in the interview he had with the defendant. **(Id. at 11)**

On September 2, 2003 plaintiff had his misconduct hearing and he requested that he be allowed to call inmate Clark as a witness. **(Id. at 12)** However, the hearing examiner Ivory Barnett denied plaintiff this witness, found him guilty of the charges and sentenced him to 30 days cell restriction. **(Id. at 13)**

On September 22, 2003 S.C.I. Albion received another letter from the Huntingdon County Courthouse comfirming that his lawsuit was served upon all of the defendants in his complaint. **(Id. at 14)** Plaintiff then received another misconduct that very same day for asking the block officer if he could use the stapler and to sign his cash slips. (The basis for the misconduct was because plaintiff was on cell restriction for the original misconduct) **(Id. at 15)** Plaintiff was then found guilty at the misconduct hearing and was sentenced to another 30 days cell restriction. **(Id. at 16)**

Both misconducts were put in plaintiff's prison file and were viewed by the parole board during each of his parole hearings. Plaintiff received a parole hit each time up and the board cited misconducts as one of the reasons for his hit on each green sheet. **(Id. at 17)**

Plaintiff's current civil action before the court raises a First Amendment Retaliation Claim against the defendant for issuing plaintiff a misconduct for filing a grievance and for filing a lawsuit. **(Id. at 19)** In relation thereto, plaintiff requests compensatory, nominal, exemplary and punitive damages, a jury trial, the expungement of both retaliatory misconducts from his prison record, attorney fees and the costs incurred from the filing and litigation of his civil action. **(Id. at 20-23)**

## II. STANDARD OF REVIEW

Summary Judgement is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." **Hansberry vs. City of Phila.**, 232 F.Supp.2d 404, 407 (E.D. Pa. 2002)

In determining whether Summary Judgement is proper, the court must view the evidence and all justifiable inferences to be drawn therefrom in the light most favorable to the non-moving party. **Rauser vs. Horn**, 241 F3d 330, 334 (3rd Cir. 2001) Any doubts as to the existence of a genuine issue of material fact will be resolved against the movant. **Hamilton vs. Leavy**, 117 F3d 742, 749 (3rd Cir. 1997)

In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court can not credit the movant's version of events against the opponent. **Id**, at 748-749

### III. ARGUMENT

**A. The defendant is _not_ entitled to Summary Judgement on plaintiff's retaliation claim.**

A prisoner alleging retaliation must show (1) constitutional-ly protected conduct, (2) an adverse action by prison officials "sufficient to deter a person of ordinary firmness from exercising his constitutional rights," and (3) a "casual link between the exercise of his constitutional rights and the adverse action taken against him." **Michell vs. Horn**, 318 F3d 523, 530 (3rd Cir. 2003)

In this argument the defendant concedes that plaintiff has satisfied prong one of a retaliation claim by contending that he was retaliated against for filing a grievance at Albion and a lawsuit against S.C.I. Smithfield. **(Def's. Mtn. for Summ. Jdgmt. at 6-7)** He also concedes that plaintiff has satisfied prong two of a retaliation claim since institutional misconducts are

3

"adverse actions" for retaliation purposes. **(Def's. Mtn. for Summ. Jdgmt. at 7)**

The defendant's entire argument here appears to be premised on the belief that plaintiff has failed to present any causation evidence which is necessary to meet the third retaliation prong. **(Def's. Mtn. for Summ. Jdgmt. at 7)** This contention is meritless.

First of all, plaintiff filed a grievance to Superintendant William Wolfe addressing numerous instances of threatening abuse by various correctional employees employed at Albion. **(Verif. Cmplt. at 4 ; Def's. Answer at 4 ; Exhibit A)** The defendant issued plaintiff a misconduct for filing this grievance. **(Verif. Cmplt. at 9 ; Exhibit B)** The link between the constitutionally protected conduct (the grievance) and the advers action taken against plaintiff (the misconduct) is direct.

Second, there is a clear pattern of conduct that demonstrate-s that the defendant's retaliatory misconduct was also the result of plaintiff's having filed his lawsuit against S.C.I. Smithfield. "Circumstantial evidence of a pattern of antagonism following the protected conduct can give rise to a retaliatory inference. **Farrell vs. Planters Lifesavers Co., 206 F3d 271, 280 (3rd Cir. 2000)** Furthermore, the proffered evidence, looked at as a whole, may suffice to raise the inference. **Id, at 280**

In April of 2003 plaintiff attempted to pass an affidavit to an inmate who had a lawsuit pending against S.C.I. Smithfield. This affidavit contained statements inculpating Smithfield prison officials in both the inmate's suit and in the suit plaintiff was preparing to file against Smithfield. Prison staff intercepted this affidavit and the next day the inmate was transferred out of Smithfield and plaintiff was moved to another cell block. **(Plntff's. Affdvt. at 1)**

Then, on July 10, 2003, Smithfield prison staff siezed affidavits plaintiff had prepared for witnesses who witnessed the incidents that gave rise to the lawsuit he was preparing to file against Smithfield. Each of these affidavits contained court captions at the top of them and 5 days after prison staff obtained these affidavits plaintiff was transferred to S.C.I.

4

Albion. **(Plntff's. Affdvt. at 2)** Thus, there is sufficient evidence to conclude that Smithfield was aware of plaintiff's intentions to sue them prior to his transfer to Albion on July 15, 2003.

During plaintiff's transfer and after his arrival at Albion he was repeatedly harassed by numerous correctional officers. **(Verif. Cmplt. at 4 .; Exhibit A and E)** In one of these instances Rod Showers told plaintiff that "He had already heard about the lawsuit plaintiff was preparing to file against Smithfield and that he better reconsider filing it or he would regret it" and that "My officers have no problem dealing with troublemakers." **(Verif. Cmplt. at 5 ; Exhibit A at 2-3)** Plaintiff grieved this threat to the Albion Superintendant on July 23, 2003 making it a matter of record. **(Verif. Cmplt. at 4 ; Exhibit A at 2-3)**

Despite this threat and the repeated harassment, plaintiff did file his lawsuit against Smithfield in the Court of Common Pleas of Huntingdon County (Kerwin vs. Varner, case #03-1027) and on August 25, 2003 plaintiff received a letter from the Huntingdon County Courthouse confirming that his suit was filed. **(Verif. Cmplt. at 8 ; Exhibit C and D)** The next day, on August 26, 2003, the defendant "dealt with plaintiff" just like Mr. Showers promised and issued plaintiff a misconduct for filing his grievance to Superintendant Wolfe. **(Verif. Cmplt. at 9 ; Exhibit B)**

A few weeks later, on September 22, 2003, Albion received another letter from the Huntingdon County Courthouse confirming that plaintiff's lawsuit was served upon the defendants in his complaint. **(Verif. Cmplt. at 14 ; Exhibit H and I)** Plaintiff then received another misconduct that very same day for asking the block officer if he could use the stapler and to sign his cash slips. (The basis for the misconduct was because plaintiff was on cell restriction for the misconduct issued by the defendant) **(Verif. Cmplt. at 15 ; Exhibit J)**

What is also of note is that on July 23, 2003, the same day plaintiff filed his grievance to Superintendant Wolfe, the J-block officers put 2 negative behavior entries in his cumulative

adjustment record. **(Exhibit O)** This is of note because these entries were made the same day plaintiff filed his grievance and there are no other negative entries documented on any other date while plaintiff was on J-block. Mr. Showers' threat coupled with the timing between plaintiff's constitutionally protected conduct and these adverse actions certainly establish a chronology of events from which a retaliatory animus on the part of the defendant can be inferred.

 See, <u>Pate vs. Peel</u>, 256 F.Supp.2d 1326, 1338 (N.D. Fla. 2003) (A prisoner can establish retaliatory motive by alleging a chronology of events from which a retaliatory animus on the part of the defendant could reasonably be inferred.) **See also,** <u>Rauser vs. Horn</u>, 241 F3d 330, 334 (3rd Cir. 2001) ; citing, <u>Farrell</u>, at 280 (Stating that suggestive timing is relevant to causation in retaliation cases.)

 Furthermore, plaintiff did not break any D.O.C. rules to warrant either of the forementioned misconducts and thus, there was absolutely no legitimate penological interests in issuing plaintiff these misconducts. The first retaliatory misconduct was fabricated by the defendant and contained facts he knew to be false. **(Verif. Cmplt. at 10 and 11 ; Exhibit B and E)**

 The second retaliatory misconduct was for acts that do not even constitute inmate misconduct. Plaintiff was issued this misconduct for asking the block officer to sign his cash slips (for postage) and staple his legal work during blockout, while on cell restriction. **(Exhibit J)** However, blockout is the only time an inmate is permitted to have cash slips signed and legal work stapled. **(Exhibit P at 4)** and plaintiff was not issued a misconduct for having cash slips signed during block out, while on cell restriction, on 13 other occasions between September 2, 2003 and November 1, 2003 which was the duration of plaintiff's cell restriction period. **(Exhibit Q)**

 Regardless, what is of ultimate importance here, is that even if plaintiff was guilty of the second misconduct, which he is not, plaintiff would not have been subject to a misconduct for breaking cell restriction in the first place if he was not put on

6

cell restriction as a result of the first misconduct which was issued by the defendant.

A plaintiff bringing a constitutional action against government officials for damages, for which official's improper motive is necessary element, need not adduce clear and convincing evidence of improper motive in order to defeat official's motion for Summary Judgement. **Crawford-El vs. Britton, 118 S.Ct. 1584, 1584 (1998)** Nonetheless, plaintiff has provided more than sufficient evidence to demonstrate that the defendant's actions were retaliatory and not aimed at maintaining institutional safety and security as he suggests.

Accordingly, Summary Judgement can not be entered in favor of the defendant.

**B. Plaintiff has failed to state a cognizable Due Process claim upon which relief can be granted.**

Plaintiff did not raise a Due Process claim in his complaint . Accordingly, he has failed to state a cognizable Due Process claim.

**C. The defendant is not entitled to qualified immunity.**

If a defendant pleads the qualified immunity defense, the court must determine whether, <u>assuming the truth of the plaintiff's allegations</u>, the official's conduct violated clearly established law. **Crawford-El vs. Britton, 118 S.Ct. 1584, 1584 (1998)**

In Milhouse vs. Carlson 652 F2d 371 (3rd Cir. 1981), the Third Circuit clearly established a prisoner's right to access to the courts so that a reasonable prison official would know that he violates this right if he retaliates against a prisoner for filing a lawsuit. (or a grievance) **Atkinson vs. Taylor, 316 F3d 257, 269 (3rd Cir. 2003)**

<u>Assuming the truth of plaintiff's allegations</u>, the defendant fabricated a misconduct against plaintiff in retaliation for

7

filing a grievance and a lawsuit. (**Verif. Cmplt. at 8-11, and 19 ; Exhibit B and E**)

    Milhouse clearly established that such retaliatory actions, if proven, are not legal. Thus, the defendant is not entitled to qualified immunity. *Id*, at 270

### IV. CONCLUSION

    WHEREFORE, it is respectfully requested that the defendant's motion for Summary Judgement be denied.

Respectfully submitted,

3/19/06
Date

Ryan Kerwin
DZ0246
S.C.I. Albion
10745 Route 18
Albion, PA. 16475-0002