IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYan KERWIN ) | |
|       **Plaintiff** ) | |
| ) | |
| ) | |
| v. ) | C.A. No. 05-93 Erie |
| ) | |
| ) | **District Judge McLaughlin** |
| LT. WM. MCCONELL, ) | **Magistrate Judge Baxter** |
|       **Defendant.** ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that Defendant's motion for summary judgment [Document # 73] be denied.

It is further recommended that Plaintiff's cross-motion for summary judgment [Document # 78] be denied.

By separate text Order filed this day, the parties are directed to file pre-trial narrative statements.

**II.   REPORT**

   **A.   Procedural History**

On March 22, 2005, Plaintiff, an inmate currently incarcerated within the State Correctional System of Pennsylvania, filed the instant civil rights action. The only named Defendant is William McConnell, a Correctional Officer at SCI-Albion.

In his complaint, Plaintiff alleges that on July 23, 2003, he filed a grievance pertaining to abuse and threatening behavior he suffered at the hands of prison staff at SCI-Albion. Document # 3, Complaint, ¶ 4. Plaintiff claims that on August 5, 2003, he was interviewed by

1

Defendant McConnell about the grievance. Id. at ¶¶ 6,7. Plaintiff claims that unnamed prison staff at SCI-Albion were notified on August 25, 2003 that Plaintiff had filed a lawsuit complaining about SCI-Smithfield (the location of his previous incarceration). Id. at ¶ 8. Plaintiff alleges that the following day (August 26, 2003), Defendant McConnell issued a misconduct in retaliation for both his lawsuit against SCI-Smithfield and his August 5th grievance.[1] Id. at ¶ 9.

Defendants have filed a motion for summary judgment, along with a supporting brief. Documents # 73 and 74. In response to the pending motion, Plaintiff has filed a cross-motion for summary judgment [Document # 78], and incorporates by reference his previous filings in this regard [Documents # 56 and 57].

### B. Standards of Review
#### 1. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.

---

[1] Plaintiff does not raise a due process claim. See Document # 57, Plaintiff's Brief in Opposition, page 7 ("Plaintiff did not raise a due process claim in his complaint.").

1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### 2. Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Correctional Officer., 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'"  Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. Correctional Officer. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir.

3

1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Correctional Officer. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

    C.    The *Prima Facie* Case of Retaliation

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a *prima facie* case of retaliation, a prisoner must demonstrate:

    1) the conduct in which he was engaged was constitutionally protected[2];

---

[2] Access to courts is constitutionally protected conduct. See Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002) (finding that access to courts may arise in the context of the

4

>   2) he suffered "adverse action" at the hands of prison officials[3]; and
>
>   3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Importantly for the purposes of this Court's analysis, Defendant concedes that Plaintiff has met both the first and second prongs of the retaliation test. See Document # 74, pages 6-8.

In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the *prima facia* case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535 citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999). While suggestive temporal proximity may be relevant to this inquiry, it is not dispositive of the issue. See Farrell v. Planters Lifesavers Company, 206 F.3d 271, 280 (3d Cir. 2000). "[I]f timing alone could ever be sufficient to establish a causal link, ... the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) quoting Krouse v. American Sterilizer Company, 126 F.3d 494, 503 (3d cir. 1997). The Third Circuit has found that such a temporal inference

---

Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection Clause). The filing of inmate grievances has also been held to be protected activity. Lentz v. Vaughn, 2006 WL 166527, *3 (E.D. Pa.).

[3] To show the second prong, "adverse action," one must demonstrate that the defendant's actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002) quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

5

could be drawn where two days passed between the protected activity and the alleged retaliation, see Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989), but not where nineteen months had passed, see Krouse, 126 F.3d at 503.

 Defendant's argument for summary judgment rests on the fact that Plaintiff has not been specific as to what lawsuit he filed, when it was filed and how Defendant McConnell became aware of the existence of any lawsuit. Defendant lists all lawsuits filed by Plaintiff and concludes that none of the lawsuits were filed in the proper time period to have provided the causal connection between the exercise of constitutional rights and the adverse action suffered by Plaintiff. Defendant's argument on this point is inapposite.

 In his Opposition Brief, Plaintiff provides a more detailed explanation of the chronology of events:

> In April of 2003 [while Plaintiff was still incarcerated at Smithfield], Plaintiff attempted to pass an affidavit to an inmate who had a lawsuit pending against SCI Smithfield. This affidavit contained statements inculpating Smithfield prison officials in both the inmate's suit and in the suit Plaintiff was preparing to file against Smithfield. Prison staff intercepted this affidavit and the next day the inmate was transferred out of Smithfield and Plaintiff was moved to another cell block. [see affidavit 1]
>
> Then, on July 10, 2003, Smithfield prison staff seized affidavits Plaintiff had prepared for witnesses who witnessed the incidents that gave rise to the lawsuit he was preparing to file against Smithfield. Each of these affidavits contained court captions at the top of them and 5 days after prison staff obtained these affidavits Plaintiff was transferred to SCI Albion. [see affidavit 2] Thus, there is sufficient evidence to conclude that Smithfield was aware of Plaintiff's intentions to sue them prior to this transfer to Albion on July 15, 2003.
>
> During Plaintiff's transfer and after his arrival at Albion he was repeatedly harassed by numerous correctional officers. In one of these instances Rod Showers told Plaintiff that "He had already heard about the lawsuit Plaintiff was preparing to file against Smithfield and that he better reconsider filing it or he would regret it" and that "My officers have no problem dealing with troublemakers." Plaintiff grieved this threat to the Albion Superintendent on July 23, 2003 making it a matter of record.
>
> Despite this threat and the repeated harassment, Plaintiff did file his lawsuit against Smithfield in the Court of Common Pleas of Huntingdon County (Kerwin v.Varner, case 03-1027) and on August 25, 2003 Plaintiff received a letter from the Huntingdon County Courthouse confirming that his suit was filed. The next day, on August 26, 2003, the defendant "dealt with Plaintiff" just like Mr. Showers promised and issued Plaintiff a misconduct for filing his grievance to Superintendent Wolfe.

* * *

> What is also of note is that on July 23, 2003, the same day Plaintiff filed his grievance to Superintendent Wolfe, the J-block officers put 2 negative behavior entries in his cumulative adjustment record. This is of note because these entries were made the same day Plaintiff filed his grievance and there are no other negative entries documented on any other date while Plaintiff was on J-block. Mr. Showers threat coupled with the timing between Plaintiff's constitutionally protected conduct and these adverse actions certainly establish a chronology of events from which a retaliatory animus on the part of Defendant can be inferred.

Document # 57, pages 4-5.

Plaintiff's detailed narrative of the events is supported by Plaintiff's own affidavit that more fully explains how prison officials at Smithfield came to know about Plaintiff's cooperation as an affiant in another inmate's lawsuit naming Smithfield officials and of Plaintiff's intention to file his own lawsuit naming Smithfield officials. See id., at Exhibit 3, Affidavit in Support of Brief in Opposition. Plaintiff has also provided the Declaration of another inmate, William Clark, who was transferred from Smithfield to Albion at the same time as Plaintiff and who testifies that he heard SCI-Albion staff members harass Plaintiff on their first day at the new institution. Id. at Exhibit 2, page 14. All of this evidence (uncontradicted by Defendant) leads this Court to the conclusion that it is possible that Defendant knew about Plaintiff's imminent lawsuit against SCI-Smithfield officers and knew about Plaintiff's cooperation with another inmate's lawsuit against staff at SCI-Smithfield.

Plaintiff has at least demonstrated a possible causal connection between the exercise of his constitutional rights and the adverse action he suffered at the hands of Defendant. However, this evidence is only enough to demonstrate that Defendant McConnell **possibly** knew of the protected conduct; it is not conclusive that Defendant McConnell actually knew of the protected conduct. The evidence provided by Plaintiff is enough to defeat Defendant's motion for summary judgment, but it is not enough for the award of summary judgment in his favor.

Accordingly, both motions for summary judgment should be denied.

### D.     **Burden Shifting**

Following the satisfaction of a *prima facie* case of retaliation by a plaintiff, the burden

then shifts to defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if the plaintiff were not engaging in the constitutionally protected activities.  Carter, 292 F.3d at 158.  "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.

Here, Defendant argues that Defendant issued the August 26, 2003 misconduct[4] based on the "legitimate penological interest" of maintaining "institutional safety and security by insuring inmate compliance with the prison regulations."  Document # 74, page 10.  In Opposition, Plaintiff argues that this misconduct served no legitimate penological interest as it was fabricated by Defendant McConnell and contained facts that McConnell knew to be false.  Again, Plaintiff has provided enough evidence to defeat Defendant's motion for summary judgment.

In support of his argument, Plaintiff has provided the affidavit of Inmate William Clark, who swears:

> While detained in the holding cells of SCI Smithfield awaiting transfer to SCI Albion, I met an inmate named Brian Kerwin.  During a strip search, prior to transfer, I observed an Albion officer (who was strip searching inmate Kerwin) harass Kerwin for no apparent reason during the search.
>
> This officer seemed to find humor in ordering Kerwin to lift his genitals and spread his buttocks wider numerous times. [...] When Kerwin would try to protest this abuse, the officer would yell at him and threaten him with a misconduct for refusing to obey an order.  The officer even cursed at him and at one point said "get used to this type of treatment because there would be more of it after you get to Albion.'
>
> After the strip search, myself, inmate Kerwin, and several other inmates were placed in another cell to await transfer.  At that time Correctional Officers were calling names of inmates who were ordered to leave the cell and state their prison identification number as they were ere leaving.  When the officer called Kerwin's name, he was told "Don't say anything, I already know your number,' in a very

---

[4] Defendants also argues that a later misconduct, issued September 22, 2003, was motivated by a legitimate penological reason.  However, that misconduct was not issued by the Defendant and so is irrelevant to this Court's analysis on this point.

> sarcastic manner.
>
> * * *
>
> The morning of my first full day at Albion, I was called down to see the psychiatrist at the education building along with Mr. Kerwin. When we approached the building door, Kerwin was stopped by two officers who told him "they heard all about him", and that he "looked like a troublemaker". I also heard them tell him "he would be picking up trash by the end of the week."
>
> **I was subsequently interviewed by Lt. McConnell regarding the aforementioned incidents and I told him exactly what I have testified to in this affidavit.**

Document # 57-2, page 14 (emphasis added).

This affidavit is in direct conflict with Defendant's version of events as he indicates that he "interviewed Kerwin's's witness" and "he does not support Kerwin's version." Document # 74, Attachment E, Misconduct Report. This factual dispute is material to this Court's analysis of "legitimate penological interest" as it bears directly on the issue of whether Defendant issued a false misconduct. If Defendant fabricated evidence in order to support a false misconduct, there can be no legitimate penological interest here. This disputed material issue of fact precludes summary judgment in favor of either Plaintiff or Defendant.

Accordingly, both motions for summary judgment should be denied.

### E.   Qualified Immunity

Finally, and alternatively, Defendant argues that he is entitled to qualified immunity for his actions. The doctrine of qualified immunity insulates government officials from liability for damages insofar as their conduct does not violate clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). An officer performing his discretionary functions is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v.

Pelzer, 530 U.S. 730, 739 (2002).

The Supreme Court has repeatedly emphasized the importance of resolving the immunity questions at the earliest possible stages of a case. Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987); Harlow, 457 U.S. at 818. However, "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." Curley, 298 F.3d at 277.

The analytical framework that district courts should employ in determining whether qualified immunity applies is clearly established:

> The Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier, 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id. In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. This inquiry, the Court noted, must be undertaken in light of the specific context of the case, not as a broad general proposition. Id. If a court concludes that an officer's conduct did violate a clearly established constitutional right, then it must deny him the protection afforded by qualified immunity. See id. at 2156-57.

Curley, 278 F.3d at 277. See also Hope, 530 U.S. 730; Doe v. Delie, 257 F.3d 309 (3d Cir. 2001).

This Court has already addressed the threshold question in this Report and Recommendation, finding that, for the purposes of this motion, Plaintiff has sufficiently alleged that his constitutional rights have been violated by Defendant. The next step in the analysis is to determine whether the constitutional rights were clearly established at the time of the violation. Hope, 530 U.S. at 739. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). Recently, the Supreme Court observed:

> for a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by

>qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the length of pre-existing law the unlawfulness must be apparent.

Hope, 530 U.S. at 739.

In this case, the legal precedent regarding retaliation was clearly established at the time of the alleged occurrence in August of 2003. Harris v. Terhune, 45 Fed.Appx. 95, 97 (3d Cir. 2002) ("The government may not retaliate against an individual for exercising his constitutionally protected right to file grievances."); Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir.2000)("government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right."); Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002) (holding access to courts is constitutionally protected conduct).

Accordingly, Defendant is not entitled to qualified immunity and the motion to dismiss or for summary judgment should be denied in this regard.

**III.   CONCLUSION**

It is respectfully recommended that Defendant's motion for summary judgment [Document # 73] be denied.

It is further recommended that Plaintiff's cross-motion for summary judgment [Document # 78] be denied.

By separate text Order filed this day, the parties are directed to file pre-trial narrative statements.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a

11

waiver of appellate rights. See Nara v. Frank, ___ F.3d ___, 2007 WL 1321929 (3d Cir. May 08, 2007).

                                                S/ Susan Paradise Baxter
                                                SUSAN PARADISE BAXTER
                                                Chief United States Magistrate Judge

Dated: August 16, 2007