**P-1**

Capt Weaver,

Please investigate these allegations
Thanks
Nyel.

On July 15, 2003 I was placed in the holding cells of S.C.I. Smithfield awaiting transfer to S.C.I. Albion. After the bus to Albion arrived I was stripped by one of the officers employed there. During that search I was sexually harassed by the officer conducting the search. The officer ordered me to lift my penis and testicles seperately six successive times. He also ordered me to spread my buttocks wider four seperate times and to allow him to look into my nose.

When I would begin to protest these orders I was immediately scolded and threatened with a misconduct for refusing to obey an order. This officer used repeated profanity toward me and told me to "get used to this type of treatment because there would be much more of it after I got to Albion."

Shortly after this incident I was handcuffed and placed in another cell with the rest of the inmates awaiting transfer. At that time the correctional officers were calling the names of inmates who were ordered to leave the cell and state their prison identification number as they were leaving. When the officer called my name I was told "don't say anything, I already know your number."

I was then placed on the bus with the rest of the inmates and subsequently arrived at S.C.I. Houtzdale. After the inmates who were to be housed at Houtzdale exited the bus I was asked by an officer "Kerwin, your headed for Albion right?" When I stated "yes" the bus officers began to mumble with

P-1

each other and then laugh out loud.

Since arriving at Albion this type of treatment has progressed considerably. The morning of my first full day in this institution I was called down to see the psychiatrist in the education building. When I approached the education building door I was stopped by two officers who stated that "they've already heard about me" and that "I looked like a troublemaker" among other things. They also stated that "I would be picking up trash by the end of the week." Not coincidentally I was forced to pick up trash today on 7/23/03.

Also today, after breakfast, I was pulled over outside of the chow hall and patted down in an ~~very~~ inappropriate manner. During that pat down I was verbally harassed by three officers one of which repeatedly instructed the other officers to "hook me up with a write-up" and to "just make up a reason". This is only some of the harassment I have been forced to endure during ~~in~~ only a 7 day period of time.

On 7/22/03 I was called into Mr. Showers office because of a grievance I had filed about being threatened into signing a cell card contract and another for being celled with an inmate who smokes and for falling off the top bunk twice due to the absence of safety bars. During that meeting I was told by Mr. Showers that he was a former employee of S.C.I. Smithfield who knows Ms. Hannah and Ms. Zimmerman and that he already heard about the lawsuit I was preparing to file against

Smithfield. He also stated that I better reconsider filing or "I would regret it" and "my officers have no problem dealing with troublemakers".

Just so you know, Smithfield intercepted an affidavit I signed for inmate Justin Corliss, an inmate who has a pending lawsuit against Smithfield, regarding the officer elicited assaults that took place there. The next morning Mr. Corliss was transferred out of the prison and I was moved off of the block. Also, on July 10, 2003 several witness affidavits regarding my suit were illegally seized from the inmate who was collecting them for me.



Obviously, Smithfield intends to do everything in its power to see to it that my lawsuit against the prison is never filed. My transfer to this prison is apparently part of Smith-fields plan to prevent me from obtaining affidavits from my witnesses. It seems that officers in your prison have been given instructions to abuse and harass me in retaliation for attempting to file my suit. Mr. Showers comment certainly confirms this.

It is your duty to protect me from these officers. If this retaliation does not stop immediately I will file a civil action against this prison under section § 1983, 1985, and 1986 for cruel and unusual punishment and conspiracy to violate constitutional rights. I suggest that you take this seriously because I am very serious.

This type of claim qualifies me for immediate injunctive

P-1

relief so I will not have to exhaust your pathetically unjust institutional remedy procedures before filing suit. Act now or I will sue. If your institution begins fabricating miscon-ducts now then it will only further my cause so I suggest that you dont do it. I have retained a copy of this notice and I await your response.

note: The second I finished writing this complaint I was again singled out and punished by the block officers. I was sent outside to mow the grass while every other inmate in the jail was allowed to go to yard and blockout. I'm not even about to get into the specifics surrounding the situation because I've already provided enough facts to prove what is going on. I just figured it would be a good idea to raise the incident for the record.

FORM **DC-141    PART 1**
Rev 3/00

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS

**A 495879**

☑ MISCONDUCT REPORT    ☐ OTHER    ☐ DC-ADM 801  INFORMAL RESOLUTION

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| DZ 0246 | KERWIN, RYAN | SCI-Albion | 1800 | 8/05/02 | 8/26/02 |

| Quarters | Place of Incident |
|---|---|
| DA 162 | Visit Strip Interview Room |

### OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### MISCONDUCT CHARGE OR OTHER ACTION

P. Class I Charges #42- Lying To An Employee

### STAFF MEMBER'S VERSION

On the above time and date this writer conducted an interview with Inmate Kerwin DZ 0246 Regarding his allegations of abuse by SCI-Albion staff. In his complaint Kerwin writes that he was sexually harassed by a member of the IT to his complaint Kerwin writes that he was sexually harassed at SCI Smithfield. Kerwin also writes Albion bus transport team. During his strip search at SCI Smithfield. Kerwin also writes that he was "about the comment to him that he (Showers)" already heard about that Mr Showers made the comment to him that he (Showers)" already heard about the lawsuit I was preparing to file against Smithfield. He also stated that I better reconsider filing or I would regret it and my officers have no problem dealing with troublemakers" This writer interviewed Kerwin's witness. He does not support Kerwin's version. I also interviewed the officers assigned to the bus transport team on this/sic. Ofcr Spurlock, Ofcr Sobel, and Sgt Rhodes. These officers deny harassing Kerwin in any manner. I interviewed Mr Showers. He denies making the illeged comment to Kerwin. The investigation (SCI-A-052-02) concludes that it is more likely than not that Inmate Kerwin fabricated the allegations. (Continue)

### IMMEDIATE ACTION TAKEN AND REASON

Formal hearing due to seriousness

### PRE-HEARING CONFINEMENT

| | IF YES | |
|---|---|---|
| | TIME | DATE |
| ☐ YES | | |
| ☑ NO | | |

**FORMS GIVEN TO INMATE**
☑ REQUEST FOR WITNESSES AND REPRESENTATION    ☑ INMATE'S VERSION

**ACTION REVIEWED AND APPROVED BY**
RANKING C.O. ON DUTY    SIGNATURE AND TITLE

| DATE AND TIME INMATE GIVEN COPY | |
|---|---|
| DATE | TIME 24 HOUR BASE |
| 8-26-02 | 1830 |

### REPORTING STAFF MEMBER
### SIGNATURE AND TITLE

Lt Hummer/McConnell    McConnell

**Signature of Person Serving Notice**

### YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER

| DATE | TIME |
|---|---|

### MISCONDUCT CATEGORY

☑ CLASS 1    ☐ CLASS 2

### NOTICE TO INMATE

You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15    YELLOW — Inmate    PINK — Reporting Staff Member    GOLDENROD — Deputy Superintendent Facility Management

*DC-ADM 801 Inmate Discipline Policy, Attachment B*

P-2

Continued from DC-141 A 495873

FORM DC-141   PART 1
Rev 3/00

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS

A 495898

☑ MISCONDUCT REPORT    ☐ OTHER    ☐ DC-ADM 801   INFORMAL RESOLUTION

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| DZ 6246 | KEVIN RYAN | SCI-ALBION | 1500 | 8/5/03 | 8/26/03 |

| Quarters | Place of Incident |
|---|---|
| NA 62 | Visit Staff Interview Room |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION**

P CLASS I Charges - #42 - Lying to an Employee

**STAFF MEMBER'S VERSION**   of Harassment and Abuse P, Sci-Albion staff

THE DELAY IN THIS REPORT IS DUE TO CONFLICTING LEAVE SCHEDULES OF THE
INVOLVED STAFF

**IMMEDIATE ACTION TAKEN AND REASON**

| PRE-HEARING CONFINEMENT | | |
|---|---|---|
| | IF YES | |
| | TIME | DATE |
| ☐ YES | | |
| ☐ NO | | |

**FORMS GIVEN TO INMATE**
☑ REQUEST FOR WITNESSES AND REPRESENTATION    ☑ INMATE'S VERSION

| ACTION REVIEWED AND APPROVED BY | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|
| RANKING C.O. ON DUTY   SIGNATURE AND TITLE | DATE | TIME 24 HOUR BASE |
| | 8-26-07 | 1530 |

REPORTING STAFF MEMBER
SIGNATURE AND TITLE
Lt. Wm McConnell   McConnell

Signature of Person Serving Notice
Long

YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER

| DATE | TIME |
|---|---|
| 8-28-03 | 0800 |

| MISCONDUCT CATEGORY | |
|---|---|
| ☑ CLASS 1 | ☐ CLASS 2 |

Long   CO II

**NOTICE TO INMATE**

You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15       YELLOW — Inmate       PINK — Reporting Staff Member       GOLDENROD — Deputy Superintendent Facility Manager

Discipline Policy, Attachment B

P-3



JUDGE'S CHAMBERS
COURTHOUSE
HUNTINGDON PA 16652



U.S. POSTAGE
0.37

62

Ryan Kerwin, DZ-0246
S. C. I-Albion
1o745, Route 18
Albion, Pennsylvania    16475-0002

MAIL ROOM

AUG 2 5 2003

RECEIVED

16475=0002

**P-4B**

IN THE COURT OF COMMON PLEAS OF HUNTINGDON COUNTY,
PENNSYLVANIA

CIVIL DIVISION

RYAN KERWIN,        Plaintiff  :
                         :
                         :  NO. 03-1027
         vs.            :
                         :
BEN VARNER, et al.,  Defendants:

## O R D E R

AND NOW, this 22nd day of August, A.D., 2003, It is the Order of this Court that the request of Ryan Kerwin, DZ-0246, to proceed in forma pauperis is granted. It is the further Order of this Court that Plaintiff shall furnish to the Prothonotary ten (10) copies of the complaint in order for service to be effectuated by the Sheriff.

BY THE COURT,

_(signature)_
J.

Ryan Kerwin

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO Pa.R.C.P. NO. 236
NOTIFICATION - THIS DOCUMENT HAS
BEEN FILED IN THIS CASE
PROTHONOTARY HUNTINGDON CO.
DATE:

AUG 2 2 2003

**P-5**

DECLARATION OF _William Clark_

While detained in the holding cells of S.C.I. Smithfield awaiting transfer to S.C.I. Albion, I met an inmate named Brian Kerwin. During a strip search, prior to transfer, I observed an Albion officer (who was strip searching inmate Kerwin) harass Kerwin for no apparent reason during the search.

This officer seemed to find humor in ordering Kerwin to lift his genitals and spread his buttocks "wider" numerous times. The officer even ordered Kerwin to allow him to look into his nose.

When Kerwin would try to protest this abuse, the officer would yell at him and threaten him with a misconduct for refusing to obey an order. The officer even cursed at him and at one point said "Get used to this type of treatment because there would be more of it after you get to Albion".

After the strip search, myself, inmate Kerwin, and several other inmates were placed in another cell to await transfer. At that time correctional officers were calling the names of inmates who were ordered to leave the cell and state their prison identification number as they were leaving. When the officer called Kerwin's name, he was told "Don't say anything, I already know your number", in a very sarcastic manner.

I was subsequently placed on a bus with Kerwin and several other inmates and later arrived at S.C.I. Houtzdale. After the inmates who were to be housed there exited the bus, I heard a bus officer ask Kerwin if he was headed for Albion. When he stated yes, the bus officers began to mumble with each other and then laugh out loud.

The morning of my first full day at Albion, I was called down to see the psychiatrist at the education building along with Mr. Kerwin. When we approached the building door, Kerwin was stopped by two officers who told him "they heard all about him", and that he "looked like a trouble maker". I also heard them tell him "he would be picking up trash by the end of the week".

I was subsequently interviewed by Lt. McConnell regarding the forementioned incidents and I told hime exactly what I have testified to in this affidavit.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_William Clark_

_2-5-05_

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS

| DC-141    PART 2A | | | | |
|---|---|---|---|---|
| Rev 6-84<br>INMATE REQUEST FOR<br>REPRESENTATION AND WITNESSES | Name | Institution | Date | Number as on Part I |
| DC Number | KERWIN RYAN | SCI-ALBION | 8/26/03 | A- 495879 |
| DZ 0246 | | | | |

You have been charged with a misconduct. You may request assistance and/or witnesses to appear at your hearing by completing the section(s) below.

In order to have assistance or witnesses at your hearing, you must complete this form and present all copies to one of your housing officers no later than 9:00 a.m. the first working day after you receive notice of the misconduct.

Assistance: ☐ I do not request assistance
☐ I request assistance by_____
(The person requested must be willing to assist you)

Witnesses: You may request witnesses in accord with DC-ADM 801. State the relevance and importance of the testimony the witness will give

| | DO NOT WRITE IN THIS SECTION<br>For Use by Hearing Examiner |
|---|---|
| If Inmate<br>1. Name of Witness:    No.    Quarters<br><br>Why is this person's testimony relevant and important?<br>THE WITNESS LT. MCCONNELL CLAIMS DID NOT SUPPORT MY VERSION OF ANY RELEVANT EVENTS | NO<br>Witness permitted?    If not, why not?<br><br>SEE BELOW |
| If Inmate<br>2. Name of Witness:    No.    Quarters<br><br>Why is this person's testimony relevant and important?<br>THE NAMES AND PRISON #'S OF ALL OF THE INMATES TRANSFERRED TO S.C.I. MERCER, HOUTZDALE, AND ALBION ON 7/15/03. (THEY WERE ON THE TRANSPORT BUS TO ALBION) | NO<br>Witness permitted?    If not, why not?<br><br>NOT NEEDED TO DETERMINE THE FACTS OF THIS INCIDENT |
| If Inmate<br>3. Name of Witness:    No.    Quarters<br><br>Why is this person's testimony relevant and important?<br>AN OFFICIAL STATEMENT CONFIRMING OR DENYING WHETHER OR NOT MR. SHOWERS WAS A FORMER EMPLOYEE OF S.C.I SMITHFIELD | NO<br>Witness permitted?    If not, why not?<br><br>SEE ABOVE |

_Bryan W Kerwin_
Inmate's Signature

_[Hearing Examiner's signature]_
Hearing Examiner's Signature

This section to be completed by Housing Officer only
Received completed form ____ hours ____
            Time        Date

_____
Housing Officer's Signature

**DC-141** Rev. 8-84 **Part 2B**

**COMMONWEALTH OF PENNSYLVANIA**

DISCIPLINARY HEARING REPORT

**DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part 1 |
|---|---|---|---|---|---|
| DZ0246 | KERWIN | SCIA | 2 Sept 03 | 1210 | A495879 |

| INMATE PLEA | ☐ Guilty  ☒ Not Guilty | ☐ No Plea  ☐ Other | Verdict | ☒ Guilty  ☐ Not Guilty |
|---|---|---|---|---|

**HEARING ACTION**

**CHARGES**   #42

**FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

INMATE PLEAS NOT GUILTY.
INMATE STATES HE DID SUBMIT A COMPLAINT TO THE SUPERINTENDENT.
HE DID WRITE IN THE COMPLAINT HE WAS SEXUALLY HARASSED BY A MEMBER
OF THE ALBION TRANSPORT BUS TEAM. HE STATES HE DID WRITE THAT MR SHOWERS
MADE THE COMMENT TO HIM THAT MR SHOWERS ALREADY HEARD ABOUT THE LAWSUIT
HE WAS PREPARED TO FILE AGAINST SMITHFIELD AND THAT HE BETTER RECONSIDER
FILING OR HE WOULD REGRET IT AND HIS OFFICERS HAVE NO PROBLEM DEALING WITH
TROUBLEMAKERS. HE DID SUBMIT A WITNESS "CLARK".
    LT. MCCONNELL STATES INMATE KERWINS WITNESS NAME WAS CLARK. INMATE
KERWIN SUBMITTED THIS WITNESS. HE STATES THE WITNESS STATED NOBODY HARASSED
KERWIN ON THE BUS.
    EXAMINER BELIEVES LT. MCCONNELLS REPORT OVER INMATE KERWINS DENIAL THAT INMATE
KERWIN DID SUBMIT A COMPLAINT TO THE SUPERINTENDENT AND HE DID STATE IN THE
COMPLAINT THAT THE ALBION TRANSPORT BUS TEAM SEXUALLY HARASSED HIM. HE ALSO SUBMITTED
A WITNESS TO PROVE HE WAS HARASSED BY THE OFFICERS AND AFTER THE LT. INVESTIGATED
THE INCIDENT HIS WITNESS TOLD THE LT. NOBODY HARASSED KERWIN ON THE BUS. EXAM ALSO NOTES
THE LT. INTERVIEWED ALL (3) MEMBERS OF THE BUS TRANSPORT TEAM FOR THAT DAY AND ALL (3)
DENIED HARASSING KERWIN IN ANY MANNER. EXAMINER BELIEVES THERE IS SOME EVIDENCE
THAT INMATE KERWIN DID NOT TELL THE TRUTH IN HIS COMPLAINT TO THE SUPERINTENDENT
                        Guilty #42    SANCTN 30 Days cell restric
                            JE. 2 Sept 03

| | | | WITNESS FORM |
|---|---|---|---|
| ☒ YES | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. | |
| ☒ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. | SEE APPENDICES |
| ☒ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. | ☐ |
| ☒ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. | |

| NAME(S) OF HEARING EXAMINER/COMMITTEE (TYPED OR PRINTED) | Hearing Report and all appended information must be signed. Signature indicates finished report with appendices. |
|---|---|
| IVORY BARNETT | _____ SIGNATURE OF HEARING EXAMINER/COORDINATOR |

P-8





Ryan Kerwin, DZ-0246
SCI-Albion
10745 Route 18
Albion, PA 16475



P-9



# SHERIFF'S OFFICE
## HUNTINGDON COUNTY, PENNSYLVANIA

241 Mifflin Street
Huntingdon, PA 16652
Telephone: 814-643-0880
William G. Walters, Sheriff

Ryan Kerwin                                    NO. 1027          TERM 2003

VS:

Ben Varner, Sue Hannah, and George Weaver

NOW, September 11 , 2003 , AT 0845 A.M./P.M. I SERVED THE WITHIN _____ UPON

Notice to Defend and Complaint                                              AT

Ben Varner, Sue Hannah, and George Weaver

SCI-Smithfield, 1120 Pike Street, Huntingdon, PA 16652

BY HANDING TO Lisa Hollibaugh, Superintendant's Assistant

one TRUE AND CORRECT COPY/COPIES OF THE WITHIN Notice to Defend and Complaint

_____ AND MADE KNOWN TO Lisa

_____ THE CONTENTS THEREOF.

SWORN AND SUBSCRIBED TO                    SO ANSWERS,
BEFORE ME THIS _____
DAY OF _____                          *William G Walters*
20___ , A.D.                               WILLIAM G. WALTERS, SHERIFF

PROTHONOTARY/NOTARY PUBLIC                 Deputy Daniel B. McCartney
                                           CHIEF DEPUTY/DEPUTY

COSTS:

| | | |
|---|---|---|
| REC & DOC . . . . | | Hunt Co. Costs |
| SERVICE . . . . . | | $203.00 |
| MILEAGE/POSTAGE . | | Cumb. Co Costs |
| SURCHARGE . . . . | | N/A |
| AFFIDAVIT . . . . | | --- |
| MISCELLANEOUS . . | | Total Co. Costs |

TOTAL COSTS          $203.00  Indigent

P-9



# SHERIFF'S OFFICE
## HUNTINGDON COUNTY, PENNSYLVANIA

241 Mifflin Street
Huntingdon, PA 16652
Telephone: 814-643-0880
William G. Walters, Sheriff

Ryan Kerwin

NO. 1027 _____ TERM 2003 _____

VS:

Sharon Burks

NOW, September 11 _____, 2003 _____ , I AM UNABLE TO LOCATE THE WITHIN

NAMED DEFENDANT, Sharon Burks _____ , WITHIN MY BAILIWICK, I

RETURN THIS Notice to Defend and Complaint _____

"NOT FOUND". REASON UNABLE TO SERVE: Ms. Burks has been transferred to _____

Central Office _____ .

SWORN AND SUBSCRIBED TO
BEFORE ME THIS
DAY OF
20 __ , A.D.

PROTHONOTARY/NOTARY PUBLIC

SO ANSWERS,

*William G Walters*

WILLIAM G. WALTERS, SHERIFF

Deputy Daniel B. McCartney
CHIEF DEPUTY/DEPUTY

COSTS:
REC & DOC . . . . _____ See
RETURN NOT FOUND. _____ ---
MILEAGE/POSTAGE . _____ First
SURCHARGE . . . . _____ ---
AFFIDAVIT . . . . _____ Entry
MISC . . . . . . . _____ ---

TOTAL COSTS         See First Entry

P-9



# SHERIFF'S OFFICE
## HUNTINGDON COUNTY, PENNSYLVANIA

241 Mifflin Street
Huntingdon, PA 16652
Telephone: 814-643-0880
William G. Walters, Sheriff

Ryan Kerwin

NO. 1027           TERM 2003

VS:

Dr. McGarvie

NOW, September 11 , 2003 , I AM UNABLE TO LOCATE THE WITHIN

NAMED DEFENDANT, Dr. McGarvie , WITHIN MY BAILIWICK, I

RETURN THIS Notice to Defend and Complaint

"NOT FOUND". REASON UNABLE TO SERVE: No such Doctor works there with the name

of Dr. McGarvie

SWORN AND SUBSCRIBED TO
BEFORE ME THIS
DAY OF
20___ , A.D.

SO ANSWERS,

*William G. Walters*

WILLIAM G. WALTERS, SHERIFF

PROTHONOTARY/NOTARY PUBLIC

Deputy Daniel B. McCartney
CHIEF DEPUTY/DEPUTY

COSTS:
REC & DOC  . . . . _____  See
RETURN NOT FOUND. _____  ---
MILEAGE/POSTAGE . _____  First
SURCHARGE  . . . . _____  ---
AFFIDAVIT  . . . . _____  Entry
MISC . . . . . . . _____  ---

TOTAL COSTS        See First Entry

P-9



# SHERIFF'S OFFICE
## HUNTINGDON COUNTY, PENNSYLVANIA

241 Mifflin Street
Huntingdon, PA 16652
Telephone: 814-643-0880
William G. Walters, Sheriff

Ryan Kerwin

NO. 1027 _____ TERM 2003 _____

VS:
Jeffrey Beard, John McCullough, Thomas
James, Tshanna Kyler, and Kristen Kersin

NOW, September 15 _____, 2003 _____, I AM UNABLE TO LOCATE THE WITHIN

NAMED DEFENDANT, Jeffrey Beard, John McCullough, Thomas James, Tshanna Kyler, and Kristen Kersin , WITHIN MY BAILIWICK, I

RETURN THIS Notice to Defend and Complaint

"NOT FOUND". REASON UNABLE TO SERVE: Cumberland County Sheriff's Office

recieved document's too late for service

SWORN AND SUBSCRIBED TO
BEFORE ME THIS
DAY OF
20 ___ , A.D.

SO ANSWERS,

William G Walters

WILLIAM G. WALTERS, SHERIFF

PROTHONOTARY/NOTARY PUBLIC

Secretary Nicole L. Erwin
CHIEF DEPUTY/DEPUTY

COSTS:
REC & DOC . . . . _____ See
RETURN NOT FOUND. _____ ---
MILEAGE/POSTAGE . _____ First
SURCHARGE . . . . _____ ---
AFFIDAVIT . . . . _____ Entry
MISC . . . . . . . _____ ---
TOTAL COSTS _____ See First Entry

P-10

FORM DC-141    PART 1
Rev 3/00

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

A 436723

☑ MISCONDUCT REPORT   ☐ OTHER   ☐ DC-ADM 801  INFORMAL RESOLUTION

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| DZ 0246 | KERWIN | SCIA | 1452 | 9-22-03 | 9-22-03 |

| Quarters | Place of Incident |
|---|---|
| DA 62 | D/A DAYROOM  OFFICERS DESK |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** CLASS I CHARGE #35 REFUSING TO OBEY AN ORDER
CLASS I CHARGE #30 BREAKING RESTRICTION QUARANTINE OR INFORMAL RESOLUTION
SANCTION  CLASS I CHARGE #43 PRESENCE IN AN UNAUTHORIZED AREA

**STAFF MEMBER'S VERSION**

ON THE ABOVE DATE AND TIME THIS REPORTING OFFICER
OPENED CELL 62 TO LET INMATE BICKEL FA 8942 IN HIS CELL (62)
AT THIS TIME INMATE KERWIN DZ 0246 CAME OUT OF HIS CELL (62)
TO THE OFFICERS DESK TO USE THE STAPLER. INMATE KERWIN
IS CURRENTLY ON CELL RESTRICTION. THIS OFFICER ASKED INMATE
KERWIN DZ 0246 IF HE WAS GIVEN CELL RESTRICTION RULES, HIS
REPLY WAS YES I WAS, AND THEN WENT BACK TO HIS CELL.
BY COMING OUT HIS CELL TO USE THE STAPLER KERWIN REFUSED
TO OBEY THE ORDER OF 30 DAYS CELL RESTRICTION, BROKE CELL RESTRICTION
AND AT THE SAME TIME PLACED HIMSELF IN AN UNAUTHORIZED AREA.

**IMMEDIATE ACTION TAKEN AND REASON**

| PRE-HEARING CONFINEMENT | | |
|---|---|---|
| | IF YES | |
| | TIME | DATE |
| ☐ YES | | |
| ☑ NO | | |

**FORMS GIVEN TO INMATE**
☑ REQUEST FOR WITNESSES AND REPRESENTATION   ☐ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY  SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| R | | DATE | TIME 24 HOUR BASE |
| | | 9-22-03 | 2038 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | MISCONDUCT CATEGORY | Signature of Person Serving Notice |
|---|---|---|---|
| DATE | TIME | ☑ CLASS 1  ☐ CLASS 2 | More, Co. |
| 9-23-03 | 2038 | | |

**NOTICE TO INMATE**

You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15     YELLOW — Inmate     PINK — Reporting Staff Member     GOLDENROD — Deputy Superintendent Facility Management

*DC-ADM 801 Inmate Discipline Policy, Attachment B*

**P-11**

| | Commonwealth of Pennsylvania |
|---|---|
| Form DC-135A | Department of Corrections |

**INMATE'S REQUEST TO STAFF MEMBER**

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
   _Mr. Woznicki_

2. Date: _3-17-06_

3. By: (Print Inmate Name and Number)
   _Anthony Vick CL0425_

   _Anthony Vick_
   Inmate Signature

4. Counselor's Name
   _Mrs. Webb_

5. Unit Manager's Name
   _Mr. Kendall_

6. Work Assignment
   _Unit Clerk_

7. Housing Assignment
   _D/A # 12_

8. Subject: State your request completely but briefly. Give details.

   _Since I Am on cell restriction, when I need to use the stapler + have cash slips signed, do I come out on the move time to the officer's desk to accomplish this (As I believe the rules state)?_

   _Thank you_

9. Response: (This Section for Staff Response Only)

   _Yes - E. Woznicki_

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ / _____ Date _____
Print                           Sign

Revised July 2000

P-12

## CELL RESTRICTION RULES

No haircuts

May go to meals/may have visits

One (1) shower in morning (        )

One (1) commissary/week

One (1) yard exercise period/day (0900 - 1000 hrs)

May go to medication line

May go to law library

NO work, school, programs, and phone calls

One (1) religious service/week

**You are on restriction until** ___/___/___

P-13

# B Unit Rules

## It is your responsibility to read and follow the unit rules.

**I.     MOVE TIMES**

1. Block out hours are as follows:
   **10:00 AM to 10:30 AM** Yard returnees only, you must turn your I.D. into the unit officer. If you go in your cell, you are not permitted back out.
   **1:15 PM to 3:30 PM** (Block out begins when yard is called.)
   **6:00 PM to 9:00 PM** (Block out begins when chow hall is secured.) You must be in your cell with your door **SHUT** by 9:00 PM
2. Move times announced by Control are five minutes in length. Block moves are called and terminated by unit officers. Moved to Dining hall and yard are called by Unit Officer and are to be made quickly and quietly.
3. **All movement (worker, call-outs, activities) must be made within five minutes of the announcement. If you do not move within the five-minute time frame, you will not be permitted to move.**
4. Request for toilet paper and hot water are to be made during move times only. Requests for paperwork are to be made during block out.
5. Yard, work lines and scheduled activities will be announced by Control.
6. Read call-out daily. When you are on a call-out, you do not need a pass.
7. You are to walk on the right side of the walkway for every move. No running in the unit or walkway.

**II.     COUNT TIME**

1. All counts (except for counts between 2200 and 0600 hours.) are standing counts. Ensure that your light is on and that you are standing and visible for count. Dormitory residents must stand by your assigned bed. Failure to do so will result in a misconduct.

**III.     PHONES**

1. Sign up for phone time (during evening block out but before 8:00 pm). One time slot at 15 minute maximum. You must hang up when 15 minute time slot ends. Incomplete calls are at the unit officer's discretion.
2. You must legibly sign your name, number and cell number only.
3. No phone sharing (time exchanges or more than one man on the phone).
4. Custody level 2 inmates must sign one slot the night before and may request two additional time slots on the day of the call. At unit officer's discretion – **NO CONSECUTIVE SIGN-UPS.**
5. Custody level 3Y must have prior written approval to receive custody level 2 telephone privileges.
6. Telephone Add/Delete forms are to be submitted to the Unit Manager for signature the first five working days of the month only. Telephone forms must have your name, number, housing unit and signature in order to be processed. Failure to submit to the Unit Manager for signature or to complete the form correctly will result in a delay until the next month. One telephone form per month only.

P-1

DC-141    Part 2B
Rev. 6-84

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

DISCIPLINARY HEARING REPORT

| DC Number | Name | Facility | Hearing Date | Hearing Time | No. from Part |
|-----------|------|----------|--------------|--------------|---------------|
| DZ 0246 | Kerwin | SCI-A | 25 Sept 03 | 1100 | 4436723 |

| INMATE PLEA | ☑ Guilty    ☐ Not Guilty    ☐ No Plea    ☐ Other | Verdict | ☑ Guilty    ☐ Not Guilty |
|-------------|---------|---------|---------|

CHARGES   #35   #43   #30          HEARING ACTION

FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED

Inmate Pleads "No Contest to All Charges" (Guilty)

Examiner Accepts Guilty Plea

Guilty #35, #30, #43

Sanction 30 Days ccu Restriction

to be Consecutive

Remove from Job

| | | |
|---|---|---|
| ☑ YES | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. |
| ☑ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. |
| ☑ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. |
| ☑ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. |

SEE APPENDICES
☐

NAME(S) OF HEARING EXAMINER/COMMITTEE
(TYPED OR PRINTED)

Ivory Barnett

Hearing Report and all appended information must be signed. Signature indicates finished report with appendices.

SIGNATURE OF HEARING EXAMINER/COORDINATOR

P-15

**DC-14**

## CUMULATIVE ADJUSTMENT RECORD

SCIA
<u>Facility</u>

**COMMONWEALTH OF PENNSYLVANIA**
DEPARTMENT OF CORRECTIONS

| FACILITY NUMBER | PBP NUMBER | NAME Kerwin |
|---|---|---|
| DZO246 | | |

| DATE | OBSERVATION |
|---|---|
| 7-15-03 | Read on J this date Kersey AROUND THE DINING HALL. WAS |
| 7-23-03 | D/O NOT TO GET UP AND ROAM AROUND THE DINING HALL. WAS DISRESPECTFUL AND MOUTHY WHEN GIVEN D/O OFR GRIEBNER |
| 7-23-03 | I/M HAS A POOR Attictude and has Problems with Following orders is VERY SMUG and disrespectful toward staff - WERNICKI |
| 7-29-03 | received DIA, recv'd copy unit notes. CO, Gould |

(OVER)

P-16

10-13-2003
953 ALB

PAGE    1
D-A-2062

INMATE ACCOUNTS SYSTEM
MONTHLY ACCOUNT STATEMENT

|  |  |  |  |  |
|---|---|---|---|---|
| INMATE | NAME |  |  | OLD BALANCE |
| NUMBER | LAST | FIRST | MI | 248.51 |
| DZ0246 | KERWIN | RYAN |  |  |

| BATCH # | DATE MO DY YEAR | | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | BALANCE AFTER TRANSACTION |
|---|---|---|---|---|---|
| 8253 | 09-10-2003 | 32 | ALB COMMISSARY FOR  9/10/2003 | -13.92 | 234.59 |
| 8261 | 09-18-2003 | 32 | ALB COMMISSARY FOR  9/18/2003 | -18.14 | 216.45 |
| 638 | 09-19-2003 | 37 | POSTAGE | -.60 | 215.85 |
| 665 | 09-23-2003 | 10 | MAINTENANCE PAYROLL 8/17-9/20/03        PAY GROUP-3 | 7.20 | 223.05 |
| 665 | 09-23-2003 | 50 | ACT 84 TRANSACTION *         09/23/03 1130/1999 | -1.44 | 221.61 |
| 8267 | 09-24-2003 | 32 | ALB COMMISSARY FOR  9/24/2003 | -22.67 | 198.94 |
| 8268 | 09-25-2003 | 34 | ALB CABLE  TV FOR  9/25/2003 | -11.25 | 187.69 |
| 731 | 09-26-2003 | 37 | POSTAGE | -1.98 | 185.71 |
| 780 | 10-01-2003 | 31 | OUTSIDE PURCHASES NASCO ARTS & CRAFTS | -26.63 | 159.08 |
| 8274 | 10-01-2003 | 32 | ALB COMMISSARY FOR 10/01/2003 | -25.33 | 133.75 |
| 805 | 10-02-2003 | 37 | POSTAGE | -4.05 | 129.70 |
| 872 | 10-08-2003 | 39 | LEGAL FEES US DISTRICT COURT | -5.00 | 124.70 |
| 878 | 10-08-2003 | 37 | POSTAGE | -.60 | 124.10 |
| 8282 | 10-09-2003 | 32 | ALB COMMISSARY FOR 10/09/2003 | -17.36 | 106.74 |

NEW BALANCE AS OF THIS STATEMENT ------------------->        106.74

P-16

```
                                                                11-07-2003
                        INMATE  ACCOUNTS  SYSTEM                    946 ALB
PAGE    1              MONTHLY  ACCOUNT  STATEMENT
D-A-2062

    INMATE    NAME                     FIRST       MI            OLD BALANCE
    NUMBER    LAST                      RYAN                        106.74
    DZ0246    KERWIN


BATCH      DATE                                         TRANSACTION BALANCE AFTER
  #      MO DY YEAR     TRANSACTION DESCRIPTION            AMOUNT    TRANSACTION
```

| BATCH # | DATE MO DY YEAR | | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | BALANCE AFTER TRANSACTION |
|---|---|---|---|---|---|
| 932 | 10-15-2003 | 37 | POSTAGE | -.60 | 106.14 |
| 8289 | 10-16-2003 | 32 | ALB COMMISSARY FOR 10/16/2003 | -35.16 | 70.98 |
| 966 | 10-17-2003 | 38 | INSIDE PURCHASES UPS | -3.22 | 67.76 |
| 985 | 10-20-2003 | 13 | PERSONAL GIFT FROM MARCHIONE, CHRISTINE   G435595 | 300.00 | 367.76 |
| 985 | 10-20-2003 | 50 | ACT 84 TRANSACTION * 1130/1999   10/20/03 | -60.00 | 307.76 |
| 999 | 10-20-2003 | 37 | POSTAGE | -2.90 | 304.86 |
| 999 | 10-20-2003 | 37 | POSTAGE | -.60 | 304.26 |
| 1006 | 10-21-2003 | 10 | MAINTENANCE PAYROLL 9/21-10/18/03    PAY GROUP-3 | 7.92 | 312.18 |
| 1006 | 10-21-2003 | 50 | ACT 84 TRANSACTION * 1130/1999   10/21/03 | -1.58 | 310.60 |
| 8295 | 10-22-2003 | 32 | ALB COMMISSARY FOR 10/22/2003 | -21.73 | 288.87 |
| 1057 | 10-24-2003 | 37 | POSTAGE | -1.06 | 287.81 |
| 1090 | 10-28-2003 | 37 | POSTAGE | -.60 | 287.21 |
| 8303 | 10-30-2003 | 32 | ALB COMMISSARY FOR 10/30/2003 | -24.37 | 262.84 |
| 8303 | 10-30-2003 | 34 | ALB CABLE  TV FOR 10/30/2003 | -11.25 | 251.59 |
| 8309 | 11-05-2003 | 32 | ALB COMMISSARY FOR 11/05/2003 | -30.39 | 221.20 |
| 1219 | 11-06-2003 | 37 | POSTAGE | -.60 | 220.60 |

```
               NEW BALANCE AS OF THIS STATEMENT -------------------->    220.60
```

P-16

```
                                                              12-08-2003
                    INMATE ACCOUNTS SYSTEM                     943 ALB
PAGE    1           MONTHLY ACCOUNT STATEMENT
D-A-2062
                                                              OLD BALANCE
    INMATE    NAME                    FIRST        MI          220.60
    NUMBER    LAST                     RYAN
    DZ0246    KERWIN

                                              TRANSACTION BALANCE AFTER
BATCH     DATE                                    AMOUNT     TRANSACTION
  #     MO DY YEAR    TRANSACTION DESCRIPTION
```

| BATCH # | DATE MO DY YEAR | | TRANSACTION DESCRIPTION | | TRANSACTION AMOUNT | BALANCE AFTER TRANSACTION |
|---|---|---|---|---|---|---|
| 1266 | 11-12-2003 | 37 | POSTAGE | | -1.98 | 218.62 |
| 8316 | 11-12-2003 | 32 | ALB COMMISSARY FOR 11/12/2003 | | -35.86 | 182.76 |
| 1339 | 11-18-2003 | 10 | MAINTENANCE PAYROLL 10/19-11/15/2003 | PAY GROUP 3 | 13.68 | 196.44 |
| 1339 | 11-18-2003 | 50 | ACT 84 TRANSACTION * 1130/1999 | 11/18/03 | -2.74 | 193.70 |
| 1360 | 11-19-2003 | 38 | INSIDE PURCHASES VENDA CARD | | -5.00 | 188.70 |
| 1373 | 11-19-2003 | 13 | PERSONAL GIFT FROM CONERY, ANGELA | G452697 | 20.00 | 208.70 |
| 1373 | 11-19-2003 | 50 | ACT 84 TRANSACTION * 1130/1999 | 11/19/03 | -4.00 | 204.70 |
| 8323 | 11-19-2003 | 32 | ALB COMMISSARY FOR 11/19/2003 | | -31.61 | 173.09 |
| 1391 | 11-20-2003 | 37 | POSTAGE | | -.83 | 172.26 |
| 8330 | 11-26-2003 | 32 | ALB COMMISSARY FOR 11/26/2003 | | -33.42 | 138.84 |
| 8330 | 11-26-2003 | 34 | ALB CABLE  TV FOR 11/26/2003 | | -11.25 | 127.59 |
| 8336 | 12-02-2003 | 32 | ALB COMMISSARY FOR 12/02/2003 | | -30.73 | 96.86 |
| 1537 | 12-04-2003 | 13 | PERSONAL GIFT FROM KELLER, BERTHA | G608001 | 25.00 | 121.86 |
| 1537 | 12-04-2003 | 50 | ACT 84 TRANSACTION * 1130/1999 | 12/04/03 | -2.18 | 119.68 |
| 1537 | 12-04-2003 | 13 | PERSONAL GIFT FROM GUCKIN, DENISE | G608003 | 45.00 | 164.68 |
| 1542 | 12-04-2003 | 37 | POSTAGE | | -1.29 | 163.39 |
| 1563 | 12-08-2003 | 38 | INSIDE PURCHASES PHOTOCOPIES | | -2.20 | 161.19 |

```
                NEW BALANCE AS OF THIS STATEMENT ------------------->        161.19
```

**P-17**



## COMMONWEALTH OF PENNSYLVANIA
## BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

PAROLE NO:   494CE
INSTITUTION NO:   DZ0246

NAME: RYAN KERWIN
INSTITUTION:   SCI - ALBION

AS RECORDED ON NOVEMBER 05, 2003 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT OF 1941, AS AMENDED, 61 P.S. § 331.1 ET SEQ., THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

-YOUR VERSION OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
-YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.
-THE RECOMMENDATION MADE BY THE PROSECUTING ATTORNEY.
-THE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.
-REPORTS, EVALUATIONS AND ASSESSMENTS CONCERNING YOUR PHYSICAL, MENTAL AND BEHAVIOR CONDITION AND HISTORY.
-YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS OR CCC FAILURE.
-YOUR INTERVIEW WITH THE HEARING EXAMINER AND/OR BOARD MEMBER.

YOU WILL BE REVIEWED IN OR AFTER OCTOBER, 2004.

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE

(CONTINUE ON PAGE 2)

CLIENT COPY
RYAN KERWIN     DZ0246
10745 ROUTE 18
ALBION, PA  16401

16401

Notice of Board Decision
PBPP 15(08/02) 1 of 2

P-18



## COMMONWEALTH OF PENNSYLVANIA
## BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

NOTICE OF BOARD DECISION

PAROLE NO:   494CE
INSTITUTION NO:   DZ0246

NAME:  RYAN KERWIN
INSTITUTION:   SCI - ALBION

AS RECORDED ON OCTOBER 29, 2004 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT OF 1941, AS AMENDED, 61 P.S. § 331.1 ET SEQ., THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

-YOUR VERSION OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
-REPORTS, EVALUATIONS AND ASSESSMENTS CONCERNING YOUR PHYSICAL, MENTAL AND BEHAVIOR CONDITION AND HISTORY.
-YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS.
-YOUR INTERVIEW WITH THE HEARING EXAMINER AND/OR BOARD MEMBER.

YOU WILL BE REVIEWED IN OR AFTER OCTOBER, 2005.

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

WHETHER YOU HAVE SUCCESSFULLY COMPLETED A TREATMENT PROGRAM FOR: PRESCRIPTIVE PROGRAM PLAN.

WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE

(CONTINUE ON PAGE 2)

CLIENT COPY
RYAN KERWIN      DZ0246
10745 ROUTE 18
ALBION, PA  16401

16401

Notice of Board Decision
PBPP 15(08/02) 1 of 2

P-19



## COMMONWEALTH OF PENNSYLVANIA
## BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

PAROLE NO: 494CE
INSTITUTION NO: DZ0246

NAME: RYAN KERWIN
INSTITUTION: SCI - ALBION

AS RECORDED ON OCTOBER 26, 2005 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT, THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

-YOUR REFUSAL TO ACCEPT RESPONSIBILITY FOR THE OFFENSE(S) COMMITTED.
-YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.
-THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.
-YOUR NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.
-YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS OR COMMUNITY CORRECTIONS RESIDENCY FAILURE.
-YOUR INTERVIEW WITH THE HEARING EXAMINER AND/OR BOARD MEMBER.

YOU WILL BE REVIEWED IN OR AFTER OCTOBER, 2007.

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

WHETHER YOU HAVE SUCCESSFULLY COMPLETED A TREATMENT PROGRAM FOR: PRESCRIPTIVE PROGRAM PLAN.

(CONTINUE ON PAGE 2)

CLIENT COPY
RYAN KERWIN     DZ0246
10745 ROUTE 18
ALBION, PA  16401

16401

Notice of Board Decision
PBPP 15(08/02) 1 of 2

PAROLE NO: 494CE

(CONTINUED FROM PAGE 1)
WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE
DEPARTMENT OF CORRECTIONS.

WHETHER YOU HAVE RECEIVED A CLEAR CONDUCT RECORD AND COMPLETED THE DEPARTMENT
OF CORRECTIONS' PRESCRIPTIVE PROGRAM(S).

LAH  10/26/2005

*Lawrence F. Murray*

CLIENT COPY
RYAN KERWIN        DZ0246
10745 ROUTE 18
ALBION, PA  16401

16401

Lawrence F. Murray
Board Secretary

Notice of Board Decision
PBPP 15(08/02) 2 of 2

P-20



# COMMONWEALTH OF PENNSYLVANIA
## BOARD OF PROBATION AND PAROLE
1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

PAROLE NO:   494CE
INSTITUTION NO:   DZ0246

NAME: RYAN KERWIN
INSTITUTION:   SCI - GRATERFORD
KINTOCK ERIE

AS RECORDED ON JULY 25, 2007 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT, THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

YOUR MINIMIZATION/DENIAL OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.

YOUR REFUSAL TO ACCEPT RESPONSIBILITY FOR THE OFFENSE(S) COMMITTED.

YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.

THE NEGATIVE RECOMMENDATION MADE BY THE PROSECUTING ATTORNEY.

YOUR NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.

YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS OR COMMUNITY CORRECTIONS RESIDENCY FAILURE.

YOUR INTERVIEW WITH THE HEARING EXAMINER AND/OR BOARD MEMBER.

(CONTINUE ON PAGE 2)

CLIENT COPY
RYAN KERWIN      DZ0246
P. O. BOX 244
GRATERFORD, PA

19426

Notice of Board Decision
PBPP 15(08/02) 1 of 2

P-20

PAROLE NO: 494CE

(CONTINUED FROM PAGE 1)

YOU WILL BE REVIEWED IN OR AFTER OCTOBER, 2007.

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

WHETHER YOU HAVE PARTICIPATED IN/SUCCESSFULLY COMPLETED A TREATMENT PROGRAM FOR: VIOLENCE PREVENTION.

WHETHER YOU HAVE MAINTAINED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE DEPARTMENT OF CORRECTIONS.

WHETHER YOU HAVE RECEIVED A CLEAR CONDUCT RECORD AND COMPLETED THE DEPARTMENT OF CORRECTIONS' PRESCRIPTIVE PROGRAM(S).

DETAILED WRITTEN ACCOUNT OF CRIME TO BE AVAILABLE AT TIME OF REVIEW.

YOU MAY FILE AN APPLICATION FOR PAROLE/REPAROLE NO SOONER THAN 1 YEAR AFTER THE DATE THE LAST DECISION DENYING PAROLE/REPAROLE WAS RECORDED.

DJK 07/25/2007

CLIENT COPY
RYAN KERWIN    DZ0246
P. O. BOX 244
GRATERFORD, PA

19426

Cynthia L. Daub
Board Secretary

Notice of Board Decision
PBPP 15(08/02) 2 of 2



5. In your previous answer you stated you had several conversations with plaintiff as the Unit Manager of J Unit---are you stating that it is routine for you to have conversations with new inmates on your unit?

ANSWER:


6. Does anything stick out in regards to conversations you had with plaintiff? What exactly?

ANSWER:


7. What is your normal topic of conversation with new inmates? And would your conversations be in the same manner as those other inmates?

ANSWER:

8. Were you ever employed at SCI Smithfield; if so, when and what position?

ANSWER:




Date: _____        _____
                                     Rod Showers, Unit Manager



Served by US Mail
6/9/06 by plaintiff.
              (office)
Remailed  6/12/06

P-22

8.  Yes, as a Drug and Alcohol Treatment Specialist 2 from June of 1994 until June of

1996.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General

Mary L. Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Ave.
Pittsburgh, PA 15219
Phone: (412) 565-3520
Fax:    (412) 565-3019

Susan J. Forney
Chief Deputy Attorney General

Date: July 5, 2006

2

P-23

# IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY DeFRANCO,             )
      Plaintiff,             )
                      )
                      )
      V.             )
                      )
WILLIAM WOLFE, SUPERINTENDENT,   ) No. CA 04-230-ERIE
Sued in his individual and offical capacity;   )
                      )
STEVE REILLY, PSYCHOLOGIST,   )
Sued in his individual and official capacity;   )
                      )
DENESE BUNNER, PSYCHOLOGIST,   )
Sued in her individual and official capacity;   ) Honorable Susan Paradise Baxter
                      )
ROD SHOWERS, UNIT MANAGER,   )
Sued in his individual and offical capacity;   )
                      )
JUDY JACKSON, COUNSELOR,   )
Sued in her individual and official capacity;   ) Honorable Maurice Cohill, Jr.
                      )
JEFFREY BEARD, SECRETARY OF   )
DEPARTMENT OF CORRECTIONS,   )
Sued in his individual and official capacity;   )
                      )
WILLIAM BARR, ASSISTANT SUPER.   )
Sued in his individual and offical capacity;   )
                      )
MARILAND BROOKS, CURRENT   )
SUPERINTENDENT,   )
Sued in her individual and offical capacity;   )
                      )
JOHN and JANE DOE(S), sued in their   )
Individual and official capacity,   )
              Defendants.   )



and 8th Amendment for knowing about Dr. Lindemuth's report and doing nothing.

### CIVIL RIGHTS CONSPIRACY *Denied*

After the October 22, 2004 temporary restraining order hearing, this Federal Court granted Plaintiff relief.  On November 8, 2004, Mr. Barr and another un-named femaled summoned Doctor Lindemuth into a room and admonished her for writing reports on inmates, telling her that it was unacceptable, that what she did was set a dangerous precedent for other inmates to follow and that it was not to happen again.  Mr. Barr had no authority to summon Doctor Lindemuth into a room and dictate to her how to treat a patient.  He is not a doctor and he is not a supervisor over her.  Dr. Lindemuth works for a private company that is employed by SCI-Albion.  What Mr. Barr did was tamper with a material witness and had her sign an affidavit that he wrote himself!  (See Dr. Lindemuth testimony).  Furthermore, Mr. Barr actually supplied the Doctor information to testify to for the December 17, 2004 hearing regarding bed space availability.

52. During plaintiffs Original filing of his Complaint, he omitted certain documents in support of his claims.  For example, he omitted defendant Beards name from the cover page of the Complaint.  Additonally, while he named defendant Showers in his Complaint and stated that Showers retaliated against him, he inadvertantly omitted the conversation between himself and Showers where Showers

*Denied*



threatened plaintiff for stating that he was going to sue
over his missing property.  In fact, plaintiff avers that
he received at least one (1) retaliatory misconduct over
defendant Showers and plaintiffs assertion of suing and
subsequent filing of a grievance about missing property. *Denied*

53. To support this claim, in addition to
plaintiffs previous assertion that defendant Showers had
threatened him, plaintiff is submitting a request where he
actually notified Major Gates of the situation, supporting
the allegation.  Moreover, attached is plaintiffs grievance
and response, which took place immediately after Showers
threatened plaintiff, stating, "you will see what happens
to inmates who sue." *Denied*

54. Immediately preceding this threat by Showers,
plaintiff wrote Major Gates and asked to speak with him
concerning statements made by Showers (See, Amend. Ex. "B",
attached).  Defendant Showers is in violation of plaintiffs
1st and 8th Amendments of the U.S. Constitution.  For making
threats if plaintiff filed grievances or lawsuits and for
being deliberately indifferent to his known medically
needed z-code. *Denied*

55. Plaintiff did file a grievance immediately
following Showers threat that ended with plaintiff winning
(see Amended Ex. "C"), grievance response and money credit
to his account. *Denied As Stated*

P-24



| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

| | |
|---|---|
| 1. To: (Name and Title of Officer) *Major Gates* | 2. Date: 5-7-02 |
| 3. By: (Print Inmate Name and Number) *Anthony Defranco C2-3518* | 4. Counselor's Name |
| *Anthony Defranco* Inmate Signature | 5. Unit Manager's Name *M. Showers* |
| 6. Work Assignment | 7. Housing Assignment *J/A 58* |

8. Subject: State your request completely but briefly. Give details.

Major Gates, I would like to speak with you privately regarding a couple of important matters. Would you please see me as soon as you are able? I'm having trouble w/ Mr. Showers + things he said. Thank-you, Major Gates.

9. Response: (This Section for Staff Response Only)

If you can list your issues on an inmate request I will address them or see that they are addressed.

*Major Gates*
*5/13/02*

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Date _____

Staff Member Name _____ / _____
                        Print            Sign

Revised July 2000



on the complaint for tampering with the postal system; but to date the Court has not given an answer.

17. As Plaintiff did not receive a copy of the R & R (Doc.#85), he was not able to file timely objections to the same.

18. On August 2, 2005, the Plaintiff was returned to SCI Albion pursuant to his grievance victory.

19. On August 2, 2005, during the transfer process, the regular transfer team, specifically Sgt. Rhoades, made repeated comments to Plaintiff that he would be continually transferred in retaliation for the instant civil action.

20. The Plaintiff immediately filed for a temporary restraining order to prevent another occurrence of retaliatory transfer.

21. On September 2, 2005, a hearing was conducted by Judge Baxter.

22. During the hearing, even after the Plaintiff submitted overwhelming evidence of both the prior transfer, and the threats of the same by the processing transfer team, Judge Baxter concluded that "officers say things like that all the time to keep inmates in line." (See transcript, 9/2/05 hearing). Astoundingly, the Plaintiff has not received any misconducts in several years, and his behavior did not warrant any officer to state threats that would 'keep him in line." These were, however, the same type of threats that resulted in the first retaliatory transfer.

23. This matter now comes before the Court on Objections.

conversations with Barr back in the summer of 2002 where Barr specifically told her that if he had it his way plaintiff would be moved to the center of the state right now (Declaration of M. Flavell, Doc.#26)—attached hereto.  The superintendent then addresses the issue of plaintiff's grievances about the retaliatory transfer and allows his return to Albion "in resolution of the grievance." Attached hereto. This admits the allegations made by plaintiff inside his grievance (attached hereto) that the transfer was retaliatory.

11. During the September 2, 2005, hearing, the Magistrate Judge asked plaintiff if he had a "transfer order" to produce as proof that he was being transferred.  See 9/2/05 Transcript pages 4, 7-8 and on page 9, where the Judge states:

> "…so if you get a transfer order, you can renew the TRO." Further, "That's not enough. What I need from you is some sort of transfer order. And if you don't have a transfer order, then anything you say is going to happen is speculation, we just don't know." Page 10, id.

12. Plaintiff is asking the Court to issue a preliminary injunction barring any future retaliatory transfers---and if the defendants plan to transfer him that they provide him with information of the planned transfer, giving him at least thirty (30) days notice so he may file for a TRO.  The past transfer was "due to litigation" and completely violated plaintiff's Constitutional rights; a clearly established constitutional right.

13. Attached is a request slip signed by a unit officer saying that he does not know why there is no 'inmate block file' for plaintiff when there is a file for every other inmate.  This is a clear indicator of the defendants plan on plaintiff not being kept at SCI Albion long.

14. Plaintiff has received continued comments alluding to future transfers.  The last of these comments came from the head of transport, Sgt. Rhoades, on February 21, 2006, while he ran the unit made a statement to the effect that plaintiff should not get "too comfortable here (at SCI-Albion)".

P-27 B

In The United States District Court

For The Western District of Pennsylvania

Bryan Kerwin                                    : case # 05-93 ERiE

                                                :

                                                :

vs.                                             : Magistrate Judge Susan Baxter

                                                :

                                                :

Lt. William McConnell                           : District Judge Sean McLaughlin

DEFENDANT'S RESPONSE TO
Plaintiff's First Set of Interrogatories

In accordance with Rule 33 of the Federal Rules of Civil Procedure, plaintiff requests that the defendant answer the following interrogatories seperately and fully in writing under oath, and that the answers be signed by the defendant and served on plaintiff within 30 days of service hereof.

In responding to these interrogatories, furnish all information which is available to you, including information in the possession of your attornies or investigators for your attornies and not merely information known of your own personal knowledge.

These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materializes.

P-27 B

1. Did you interview any other prisoners in regards to plaintiff's harassment claims that were on the transfer bus from Smithfield to Albion on July 15, 2003 besides William Clark?

    A) If so, what were these inmates' names and what did each of them tell you?

    SEE ATTACHED SHEET FOR RESPONSES.

2. What were the names of each and every prisoner who was on the transfer bus from Smithfield to Albion, including those dropped off at other prisons on the way from Smithfield to Albion, on July 15, 2003?

    (specify which inmates were transferred to Albion and which ones were dropped off at the other prisons. In doing so cite the name of the other prisons for each individual prisoner.)

12/10/05

_____
Bryan Kerwin

P-28

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RYAN KERWIN,                          )
                                      )
         Plaintiff,                   )
                                      )
             v.                       )     C.A. No. 05-93 E
                                      )
LT. WILLIAM MCCONNELL,                )
                                      )
         Defendant.                   )


## DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET
## OF INTERROGATORIES


1. Yes, Inmate ███████████ ███████ reports that he was on the bus that arrived

at Albion on July 15, 2003.  When asked if he witnessed any inmate being harassed by staff

while being processed at SCI Smithfield, inmate ████████ reported "No".  When asked if he

witnessed any inmate being harassed by a staff member while on the bus during the trip to

Albion, Valentine reported "no, they were alright dudes".  When asked if he had anything else to

add to the investigation, inmate ██████ reported "No, like I said, the Officers didn't give

anyone problems".  This ended the interview of inmate ██████

Name redacted

P-29

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
State Correctional Institution at Albion
(814) 756-5778
August 27, 2003

SUBJECT:    ALLEGATIONS OF ABUSE
            INVESTIGATION: SCIA-052-03
            RE: Inmate Kerwin, DZ-0246                    **CONFIDENTIAL**

TO:         William J. Wolfe
            Superintendent

FROM:       William McConnell
            Tool Control Officer

On 08/06/03, Captain Weaver directed this writer to conduct an investigation into Inmate Kerwin's (DZ-0246) Allegations of Abuse (See Attachment #1). In Inmate Kerwin's 4-page complaint, he writes that he was sexually harassed by one of the Albion Bus Detail Officers during a strip search at SCI-Smithfield. He adds, "When I would begin to protest these orders, I was immediately scolded and threatened with a misconduct for *Refusing to obey an order*. This officer used repeated profanity toward me and told me to get use to this type of treatment, because there would be much more of it after I got to Albion". Inmate Kerwin makes several more claims against the Bus Detail Officers, then goes on to write "Since arriving at Albion, this type of treatment has progressed considerably", making reference to two (2) incidents, one allegedly took place outside the Education building and again on 07/23/03. Kerwin writes, "On 07/23/03, after breakfast, I was pulled over outside of the chow hall and patted down in an inappropriate manner. During the pat down I was verbally harassed by three (3) officers, one of which repeatedly instructed the other officers to "hook me up with a write-up" and to "just make-up a reason"". Kerwin goes on to address several issues concerning Mr. Showers. He claims that during the meeting, "Mr. Showers told me that he was a former employee of SCI-Smithfield and knows Ms. Hannal and Ms. Zimmerman, and that he (Mr. Showers) already heard about the lawsuit I was preparing to file against SCI-Smithfield. He also stated that I better reconsider filing, or I would regret it and his officers have no problem dealing with troublemakers".

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

P-29

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE: Inmate Kerwin, DZ-0246
Page 2

Inmate Kerwin goes on to write about an incident that allegedly occurred at SCI-Smithfield, claiming that staff at SCI-Smithfield intercepted an Affidavit Kerwin signed for Inmate Justin Corliss. In closing his 4-page complaint, Kerwin writes that the second he finished writing this complaint, he was again singled out and punished by the Block Officer, when he was sent out to mow the grass while every other inmate in the jail was allowed to go to yard and block out.

INVESTIGATIVE ACTIONS:

Interviews of the following inmates: Inmate Kerwin (DZ-0246), Inmate ████████ ████ and Inmate ████████████

Review of the following documents: Inmate Kerwin's DC-14, and Inmate Corliss' (DU-3428) Separations.

Interviews of the following staff members: Sergeant Rhoades, Officer Sabol, Officer Spurlock, and Mr. Rod Showers (Unit Manager).

08/06/03    Interview of Inmate Kerwin (DZ-0246)

I informed Inmate Kerwin that I was conducting an investigation into his Allegations of Abuse. I advised Kerwin that I expect his answers to my questions be truthful and accurate. The following are the questions asked:

Q -    Which officer conducted the strip search at Smithfield?
A -    I honestly don't remember. It was one of the staff on the bus.

Q -    Give me a physical description of this officer.
A -    Heavy set, dirty blonde hair, and a blondish mustache.

Q -    Did this officer have a nametag on his uniform?
A -    I believe so. I didn't pay any attention to it at the time.

Q -    You allege you were "sexually harassed by this officer", correct?
A -    I don't think it was sexual in nature, but it was harassment.

Q -    You claim this officer had you lift your penis and testicles six (6) times, explain?
A -    He was being sarcastic, he was just harassing me.

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE: Inmate Kerwin, DZ-0246
Page 3

Q - You also claim that this officer had you spread your buttocks four (4) times, explain?
A - He had me do it over and over, wider. I think I did it good enough the first time. He even looked up my nose. Now tell me that's not harassment.

NOTE: It was explained to Kerwin that the officer is _required_ to look into the inmate's nostrils while conducting a strip search of inmates.

Q - You also claim the officer "Scolded and threatened you with a misconduct for Refusing to obey an order", explain?
A - I tried to protest his orders. He didn't threaten me with physical harm; he just told me that if I didn't cooperate, I'd get a misconduct.

Q - Did you follow the orders of the officer conducting the strip search?
A - I felt what I did was adequate.

Q - You claim this officer used "repeated profanity" toward you, what did the officer say?
A - I don't know, I can't recall what he said.

Q - You make the allegation that this officer used "repeated profanity" toward you and you tell me that you cannot remember what he said?
A - I just don't remember.

Q - Which officer allegedly told you, "Don't say anything, I already know your number"?
A - I have no idea.

Q - Give me his physical description.
A - I can't describe him to you.

Q - Do you take this comment as a threat?
A - I know what the officers working for the DOC can do. They can make-up misconduct charges, beat you, or have another inmate beat you up; so I don't take any comment lightly.

Q - You also write that when you arrived at SCI-Houtzdale, one of the officers allegedly asked you if you were headed for Albion, and when you said yes, the bus officers began to mumble with one another and laugh, explain?
A - It may have been Mercer where this happened. It was odd that I was singled out.

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

P-29

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE: Inmate Kerwin, DZ-0246
Page 4

Q -    Which officer allegedly made this comment?
A -    I didn't see who said it.

Q -    Where were the other officers at when this was said?
A -    They were all in the front of the bus.  I don't know what they said to each other, I couldn't hear them.

Q -    You claim that these officers mumbled something and laughed.  How do you know they were talking about you?
A -    I know they were, I just don't know what they said, I couldn't hear them.

Q -    You further allege that on your first full day at SCI-Albion, as you approached the Education building door, two (2) officers stopped you and stated, "They've already heard about me and that I looked like a troublemaker, among other things".  Who were these officers?
A -    I don't know their names, the inmate who was with me said it was the same officer that did the strip search on me at Smithfield.

Q -    Did you recognize this officer?
A -    No, not really.

Q -    Did you look at the officer's nametags?
A -    No.

Q -    Who was the inmate with you at this time?
A -    I don't want to give his name; I don't want to get him in trouble.

If you have a witness to any of your allegations, I suggest you give me their names.  They will not get into any trouble as long as they are truthful.

NOTE: Kerwin was very hesitant to give the name of his witness.

Q -    Are you going to offer a witness to the alleged comment made to you by two (2) officers outside the Education building?
A -    Clark, he came up on the bus with me.

Q -    You claim these two (2) officers said you look like a troublemaker "among other things", what else did the officers allegedly say to you?
A -    Specifically, I don't remember.

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

P-29

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE: Inmate Kerwin, DZ-0246
Page 5

Q - You go on to write that you were pulled over outside of the chow hall and patted down in an inappropriate manner and verbally harassed by three (3) officers, explain?
A - I was walking out of the chow hall when I was ordered to put my hands on the wall for a pat search.

Q - You write that you were patted down in an inappropriate manner, explain?
A - The officers were rough with me, pushing me and shoving me against the wall, then one officer said to "Hook me up with a misconduct".

Q - Which officer said that?
A - I don't know.

Q - Did you look at the officers nametags?
A - No.

Q - Can you describe the officers?
A - No.

Q - Do you have any witnesses to this incident?
A - No.

Q - Did you receive a misconduct on this day?
A - No, I haven't received any misconducts.

Q - What other harassment are you claiming to have endured at Albion?
A - Just from the Unit Manager, Mr. Showers. I went to his office to discuss my grievances. That's when he told me that he used to work at Smithfield and knew about my lawsuit against them. Then he told me I better reconsider filing, or I would regret it because his officers have no problems dealing with troublemakers.

Q - Did Mr. Showers tell you who told him about your lawsuit?
A - No, he didn't say.

Q - At the conclusion of your 4-page complaint you write, "The second I finished writing this complaint, I was again singled out and punished by the block officers", explain this.
A - I was told to go outside and mow the grass.

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

**P-29**

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE: Inmate Kerwin, DZ-0246
Page 6

Q - You're in the general labor pool and will be assigned various jobs like mowing the
grass, picking up trash, or assisting in cleaning the unit. All GLP's are subject to
these details.
A - It just seems strange to me that I would be picked.

Q - Do you have anything else to add to this investigation?
A -

**08/06/03    Interview of Inmate** ████████████

I informed inmate ████████ that I was conducting an investigation into Inmate Kerwin's
Allegation of Abuse by SCI-Albion staff. I advised inmate ████████ that I expect his answers to
my questions be truthful and accurate. The following are the questions asked:

Q - Did you arrive at SCI-Albion on the bus on 07/15/03?
A - Yes.

Q - Did you witness any of the bus officers harass any of the inmates?
A - No.

Q - What were the officers behavior towards the inmates on the bus?
A - There wasn't any problems. The officers seemed pretty nice.

Q - Inmate Kerwin reports that on 07/16/03, you observed two (2) officers verbally
harass him outside of the Education building, did you?
A - No, the only thing the officer said to him was that he needed to tuck his shirt in.
They weren't messing with him.

Q - Do you have anything else to add at this time?
A - Kerwin, the white boy, has an attitude. Nobody was messing with him.

**08/06/03    Interview of Sergeant Rhoades**

I informed Sgt. Rhoades that I was conducting an investigation into inmate Kerwin's, DZ-
0246, Allegations of Abuse by an unidentified member of the Albion Bus Transport Team.
I allowed Sgt. Rhoades to read inmate Kerwin's complaint. The following are the questions
asked:

Q - Were you assigned to the transport bus on 07/15/03?
A - Yes.

"Our mission is to protect the public by confining persons committed to our custody in safe,
secure facilities, and to provide opportunities for inmates to acquire the skills and values
necessary to become productive law-abiding citizens; while respecting the rights of crime
victims"

P-29

**ALLEGATIONS OF ABUSE**
**INVESTIGATION: SCIA-052-03**
**RE: Inmate Kerwin, DZ-0246**
**Page 7**

Q -   Do you recall Inmate Kerwin, DZ-0246?
A -   No.

Q -   Did you conduct any strip searches at Smithfield on 07/15/03?
A -   No, the officers conduct the strip searches and I put the cuffs and shackles on the
        inmates after they're searched.

Q -   Did you witness the strip search of inmate Kerwin?
A -   No.

Q -   Who were the officers assigned with you on 07/15/03?
A -   It would have been Officer Sabol and Officer Spurlock, the regular bus officers.

Q -   Which officer would have completed the strip searches at Smithfield on 07/15/03?
A -   Both Sabol and Spurlock, which is normal procedures.

Q -   While at Smithfield, did you hear Officer Spurlock tell Kerwin or any other inmate,
        "Don't say anything, I already know your number"?
A -   No, I process all the inmates prior to them getting on the bus.  I call out the
        institution they're going to, and as the inmate exits the room, I check the photo ID,
        name, and DC# of each inmate.  Even if it's an inmate I know, I still go through the
        same procedures.  I'll never tell an inmate, "I know your number", I always verify it.

Q -   Did you, Officer Spurlock, or Officer Sabol make any comment to inmate Kerwin
        while on the bus?
A -   No.

Q -   Since 07/15/03, have you had any contact with inmate Kerwin inside the institution?
A -   Like I said, I don't recall him and even after looking at his picture, I don't recall
        dealing with him.

Q -   Do you have anything else to add to this investigation?
A -   No.

**08/07/03    Interview of Officer Sabol**

I informed Officer Sabol that I was conducting an investigation into inmate Kerwin's, DZ-
0246, Allegations of Abuse by an unidentified member of the Albion Bus Transport Team.
I allowed Officer Sabol to read inmate Kerwin's complaint.  The following are the questions
asked:

"Our mission is to protect the public by confining persons committed to our custody in safe,
secure facilities, and to provide opportunities for inmates to acquire the skills and values
necessary to become productive law-abiding citizens; while respecting the rights of crime
victims"

P-29

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE: Inmate Kerwin, DZ-0246
Page 8

Q -   You were assigned to the Bus Transport Team on 07/15/03, correct?
A -   Yes.

Q -   Did you conduct the strip search on Kerwin at Smithfield?
A -   Lieutenant, there's a 50/50 chance I did, but I don't recall. Officer Spurlock and I do the strip searches. He's in one room, and I'm in another.

Q -   Did you say or hear Officer Spurlock or Sgt. Rhoades make any comment directed to Kerwin on the bus?
A -   No.

Q -   Since 07/15/03, have you had any contact with Inmate Kerwin inside the institution?
A -   I don't believe so.

Q -   Do you have anything else to add to this investigation?
A -   No.

**08/13/03      Interview of Mr. Rod Showers, Unit Manager**

I informed Mr. Showers that I was conducting an investigation into inmate Kerwin's, DZ-0246, Allegations of Abuse. I allowed Mr. Showers to read the complaint written by inmate Kerwin. The following are the questions asked:

Q -   Did you call Inmate Kerwin to your office on 07/22/03?
A -   Yes, I called him down to review his grievances.

Q -   Did you tell Kerwin that you had worked at SCI-Smithfield?
A -   No, I was explaining to inmate Kerwin that he needed to follow procedures before filing grievances. He needed to try to resolve the issues with staff (i.e. talking with the Unit Manager or his Counselor). Kerwin said that his Unit Manager (Ms. Hannal) and Counselor (Ms. Zimmerman) at SCI-Smithfield didn't want to be bothered with grievances. I told him that I knew both of the individuals and found it hard to believe they would say anything like that.

Q -   Did you tell Kerwin that you heard about his lawsuit against Smithfield?
A -   No, that's a lie. I don't know anything about a lawsuit.

Q -   Did you tell Kerwin "He better reconsider filing the lawsuit or he would regret it" and "My officers have no problem dealing with troublemakers".
A -   No, that too is a lie.

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

P-29

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE:  Inmate Kerwin, DZ-0246
Page 9

Q -     Do you have anything else to add at this time?
A -     No.

In reviewing Inmate Kerwin's complaint, he makes reference to an Inmate Justin Corliss, for whom Kerwin claims to have signed an Affidavit for.  In reviewing inmate Corliss' Separation History, Kerwin appears to be following Corliss' behavior (See Attachment #2).

I elected to interview one of the other inmates who were on the bus the day Inmate Kerwin (DZ-0246) was, 07/15/03.  On 08/07/03, I interviewed Inmate Valentine, EJ-0584.

08/07/03     Interview of Inmate ▮▮▮▮▮▮▮▮▮▮

I informed Inmate ▮▮▮▮▮▮ that I was conducting an investigation into allegations of staff harassment of an inmate during the bus transport on 07/15/03.  I advised ▮▮▮▮▮ that I expect his answers to my questions be truthful and accurate.

Q -     You arrived at Albion on the bus on 07/15/03, correct?
A -     Yes.

Q -     During the processing at SCI-Smithfield did you witness any inmate being harassed by staff?
A -     No sir.

Q -     During the bus trip to Albion did you witness any staff harass any of the inmates on the bus?
A -     No, they were alright dudes.

Q -     Do you have anything else to add to this investigation?
A -     No, like I said, the officers didn't give anyone problems.

08/25/03     Interview of Officer Spurlock

I advised Officer Spurlock that I was conducting an investigation into Inmate Kerwin's, DZ-0246, Allegations of Abuse by an unidentified member of the Albion Bus Transport Team.
The following are the questions asked:

Q -     Do you recall conducting a strip search of Inmate Kerwin, DZ-0246, on 07/15/03, at SCI-Smithfield?
A -     Yes, I do.  Captain Weaver asked me about that several weeks ago, before I went on vacation.

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

P-29

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE: Inmate Kerwin, DZ-0246
Page 10

Q -   Inmate Kerwin reports that you ordered him to lift his penis and testicles six (6)
      successive times, and then ordered him to spread his buttocks four (4) times. Is this
      correct?

A -   No, I was conducting the strip search on him and when I told him to lift his penis, he
      did it real quick, same with his testicles. It was obvious that he was trying to set the
      tempo of the search. I told him that he is to follow my orders. I only had him lift his
      penis and testicles two (2) times. The first time was at his speed, and the second
      time he followed my orders.

Q -   Did you use any profanity toward Inmate Kerwin?

A -   No, I did not.

Q -   Did you tell Kerwin to get use to this type of treatment, because there would be
      much more of it after he got to Albion?

A -   No.

Q -   Did you or any of the other officers on the bus direct any comments to Kerwin during
      the bus trip?

A -   No.

Q -   Since 07/15/03, have you had any contact with Inmate Kerwin inside the institution?

A -   To my knowledge, no.

Q -   Do you have anything else to add to this investigation?

A -   No.

NOTE: The delay in interviewing Officer Spurlock is due to him being on two (2) weeks
leave, and myself being on one (1) week leave.


SUMMARY:

Inmate Kerwin, DZ-0246, writes a 4-page complaint addressing numerous Allegations of
Abuse by SCI-Albion staff. He reports that on 07/15/03, he was Sexually Harassed during
a strip search at SCI-Smithfield by one of the officers assigned to the Albion Bus Detail.
Kerwin could not offer the name of the officer. However, he did give a physical description.
Kerwin reports that the officer was heavy set with dirty blonde hair, and a mustache. This
description does not match any of the officers assigned to Albion's Bus Detail. Kerwin
writes that the officer ordered him to lift his penis and testicles six (6) successive times, and
spread his buttocks four (4) times.

"Our mission is to protect the public by confining persons committed to our custody in safe,
secure facilities, and to provide opportunities for inmates to acquire the skills and values
necessary to become productive law-abiding citizens; while respecting the rights of crime
victims"

P-29

ALLEGATIONS OF ABUSE
INVESTIGATION: SCIA-052-03
RE: Inmate Kerwin, DZ-0246
Page 11

This investigation found that the strip search was conducted by Officer Spurlock, who reports that during the first attempt to strip search Kerwin, he (Kerwin) tried to set the tempo of the search by quickly lifting his penis and testicles. Officer Spurlock then advised Kerwin to follow his orders and the strip search was completed on the second attempt. Inmate Kerwin writes that this officer also used "repeated profanities" toward him. However, during my interview with Kerwin, he reports that he "cannot remember" what profanities the officer used. Officer Spurlock denies using any profanity toward Kerwin. Kerwin goes on to write that on his first full day at Albion, he was approached by two (2) officers outside of the Education building, and told "They've already heard about me, and that I looked like a troublemaker". Again, inmate Kerwin could not identify the officers by name.

Kerwin reluctantly offered Inmate Clark, DD-5461, as a witness to this incident. When interviewed, Inmate Clark did not support inmate Kerwin's version. Inmate Kerwin goes on to allege that he was patted down in an inappropriate manner after leaving the chow hall after breakfast. Again, Kerwin could not identify the officers, and offered no witnesses.

Inmate Kerwin continues by claiming that Mr. Showers called him to his office on 07/22/03, to discuss his grievances. Kerwin reports that, "Mr. Showers told him that he already heard about his lawsuit. He (Kerwin) was preparing to file against SCI-Smithfield and stated that he better reconsider filing, or he would regret it, and my Officers have no problem dealing with troublemakers". Mr. Showers denies making this comment to Kerwin. Inmate Kerwin ends his complaint by writing that the second he finished writing this complaint, he was again singled out and punished by staff because he was sent outside to mow the grass.

This writer also interviewed Inmate Valentine, EJ-0584, who was on the bus trip with Kersin on 07/15/03. Valentine reports that he did not witness any officer harass any inmate on the bus.

Sergeant Rhoades, Officer Sabol, and Officer Spurlock deny harassing Inmate Kerwin at any time.

NOTE: In his complaint, Inmate Kerwin makes reference to an Inmate Justin Corliss, DU-3428. In reviewing Corliss' separations, it appears that Inmate Kerwin is following in his footsteps.

*Corliss's separations*
*redacted*

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

P-29

**ALLEGATIONS OF ABUSE**
**INVESTIGATION: SCIA-052-03**
**RE: Inmate Kerwin, DZ-0246**
**Page 12**

**FINDINGS:**

Inmate Kerwin provided no evidence or witnesses to support his Allegations of Abuse by Staff. This investigation found that it is more likely than not that Inmate Kerwin fabricated the allegations for personal reasons. This writer issued Kerwin a misconduct for "Lying to an employee".

Attached is a copy of Inmate Kerwin's DC-14, that indicates his poor attitude toward staff.

WM:tmf

Attachments:    #1 -- Inmate Kerwin's Complaint.
                #2 -- Inmate Corliss' (DU-3428) Separation Sheet.
                #3 -- Inmate Kerwin's DC-14.

cc:    File

"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims"

Case 1:05-cv-00093  JM-SPB     Document 41     Filed 01/  .2006     Page 1 of 2

P-30 A

In The United States District Court

For The Western District of Pennsylvania

Bryan Kerwin                          : Case # 05-93 ERiE
                                      :
    vs.                               : Magistrate Judge Susan Baxter
                                      :
Lt. William McConnell                 : District Judge Sean McLaughlin

DEFENDANT'S RESPONSE TO

Plaintiff's First Request

For Production of Documents

Plaintiff requests, pursuant to Rule 34 of the Federal Rules of Civil Procedure, that defendant produce for inspection and copying the following documents:

1. The complete file pertaining to defendant's investigation of plaintiff's harassment claims in this case.
   (file # S(I-A-052-03)

   SEE ATTACHED SHEET FOR RESPONSES.

2. A copy of defendant's, Officer Spurlocks, Officer Sobols, and Sargeant D Roades work schedule on and between the dates of August 5, 2003 and August 26, 2003.