IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN KERWIN, | ) | |
| | ) | Civil Action No. 05-0093E |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Sean J. McLaughlin |
| LT. WILLIAM McCONNELL, | ) | |
| | ) | |
| Defendant. | ) | Electronically Filed. |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO AMEND
OR ALTER JUDGMENT AND MOTION FOR A NEW TRIAL**

I. MOTION TO AMEND OR ALTER JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL ON DAMAGES IF PLAINTIFF REFUSES TO ACCEPT REMITTITUR

Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment, and requires that such a motion be "filed no later than 10 days after entry of the judgment." As this Court is well aware, the jury in the above captioned matter, after finding for the Plaintiff, awarded the Plaintiff $5,000 in compensatory damages and $100,000 in punitive damages. For the reasons that follow, the defendant believes that remittitur is appropriate and thus respectfully requests that this Honorable Court reduce both the amount of compensatory damages and the amount of punitive damages awarded in this case.

    A.    Compensatory Damages

Section 803(d)(e) of the Prison Litigation Reform Act ("PLRA"), entitled "Limitation on recovery," provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for

>mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  This section serves to bar recovery of compensatory damages in §1983 cases brought by a prisoner where the prisoner does not make a showing of some actual physical injury but instead suffered only mental or emotional injury.  See Allah v. Al-Hafeez, 226 F.3d 247 (3d Cir. 2000).  It does not, however, bar recovery for nominal or punitive damages in similar cases.  Id. at 252-53.

Federal Courts can reduce an award of compensatory damages pursuant to Section 1997e(e) after trial if the evidence presented at trial does not establish that the plaintiff suffered actual physical injury.  See Henderson v. Johnson, 2007 WL 781767 at * 6 (C.D.Ill. 2007) (reducing $300 compensatory damages award to $1 in nominal damages in light of PLRA's actual injury requirement and the evidence presented at trial); see also Taifa v. Bayh, 1996 WL 441809 (N.D.Ill. 1996) (granting defendants' Rule 50 motion after bench trial; determining, *inter alia*, that evidence presented at trial did not support finding of physical injury and thus that plaintiff was not entitled to compensatory damages).  In this case, there was no evidence presented at trial that the Plaintiff suffered any physical injury.  As evidenced by the verdict form, which parenthetically states that the compensatory damages are for emotional damages, and as shown by the testimony presented at trial, the compensatory damages award in this case is solely for mental or emotional injury without a prior showing of physical injury.  This is a result prohibited by the PLRA.  Thus, this Court should reduce the award of compensatory damages to $1 of nominal damages pursuant to the PLRA.  See Allah v. Al-Hafeez, *supra*.

B.   Punitive Damages

When analyzing whether an award of punitive damages is excessive, a court must be guided by the factors announced in the seminal case of <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and reiterated in <u>State Farm Mutual Auto. Insurance Co. v. Campbell</u>, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).  In <u>State Farm Mutual</u>, the Supreme Court reiterated its earlier decisions that "[t]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive of arbitrary punishments on a tortfeasor."  <u>State Farm Mutual</u>, 123 S.Ct. at 1519-20.  The Court explained that "[t]o the extent an award is grossly excessive, it further no legitimate purpose and constitutes an arbitrary deprivation of property."  <u>Id.</u> at 1520.

The guideposts announced in Gore for reviewing punitive damages awards are as follows: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.  <u>Id.</u> (*citing* <u>Gore</u>, 517 U.S. at 575).  In light of these factors, the punitive damages award in this case was excessive.

The Supreme Court has stated that the degree of reprehensibility of the conduct is "the most important indicium of the reasonableness of a punitive damages award."  <u>State Farm Mutual</u>, 123 S.Ct. 1521 (quoting <u>Gore</u>, 517 U.S. at 575).  The factors to consider in assessing the degree of reprehensibility of conduct include:

> Whether: the harm caused was physical as opposed to economic; the tortuous conduct evinced an indifference to

3

> or reckless disregard to the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

State Farm Mutual, 123 S.Ct. at 1521. In Gore, the Supreme Court noted that "[n]onviolent crimes are less serious than crimes marked by violence or the threat of violence." Gore, 517 U.S. at 576.

In the instant case, the Plaintiff suffered neither physical nor economic harm – instead he suffered at most some limited emotional distress.[1] The only testimony regarding any harm suffered by the plaintiff was that he was sentenced to 30 days cell restriction as a result of the misconduct issued by the defendant. As it was testified to at trial, an inmate on cell restriction stays in their cell and does not have to go to a special cell or the Restricted Housing Unit, and maintains their personal property including their television and radio, if they have one. An inmate is also allowed out of their cell for certain specified reasons, such as meals, medical and medicine lines, and yard. An inmate must remain in their cell unless attending a permitted function. The limited amount of harm suffered by Plaintiff weighs against a high award of punitive damages.

Secondly, the conduct did not evince an indifference to or reckless disregard to the health or safety of others, State Farm Mutual, 123 S.Ct. at 1521, and did not involve violence or the threat of violence. Gore, 517 U.S. at 576. There was no evidence presented at trial that the Plaintiff was financially vulnerable, and it is not clear that

---

[1] There was no testimony at trial regarding any physical or economic injuries suffered by Plaintiff as a result of the cell restriction. Moreover, there was no specific testimony detailing what emotional distress or damages Plaintiff suffered. The only testimony as to damages was that Plaintiff was placed on 30 days cell restriction, along with an explanation of what cell restriction means.

4

financial vulnerability has any relevance to the analysis here. Finally, there was no testimony at trial establishing that the defendant's actions were part of a pattern on the part of Captain William McConnell, the only defendant in this matter, of issuing institutional misconducts in retaliation for filing grievances or lawsuits against Department of Corrections staff.[2] Rather, the testimony was limited to this particular alleged retaliatory misconduct issued by the defendant. Thus, all of these factors either suggest that a reduction in the level of punitive damages is be appropriate, or simply does not apply to this case.

The only factor enunciated in Gore and State Farm Mutual that may cut the other way is the consideration of whether "the harm was the result of intentional malice, trickery, or deceit, or mere accident." State Farm Mutual, 123 S.Ct. at 1521. Given the verdict, it appears the jury concluded that the harm, i.e., 30 days of "cell restriction," was not result of a "mere accident." It is not clear from the verdict, however, that the harm was necessarily the result of "intentional malice, trickery, or deceit."

In Gore, the Court noted that the harm Gore suffered was "purely economic in nature," and thus concluded that "none of the aggravating factors associated with particularly reprehensible conduct is present." Gore, at 576. In this case, given the jury's finding that the Defendant acted wantonly or maliciously, it appears that some award of punitive damages *may* be appropriate. However, in light of the above considerations, "a more modest punishment [than the award of $100,000 in punitive

---

[2] In fact, Anthony DeFranco, the witness Plaintiff intended to proffer to establish that two non-defendant witnesses had retaliated against inmates in the past, specifically stated that the defendant in the instant case, Captain William McConnell, had never retaliated against him nor did he have any knowledge of Captain McConnell retaliating against other inmates.

damages] for this reprehensible conduct could have satisfied the … legitimate objects" of punitive damages.  State Farm Mutual, 123 S.Ct. at 1521.

The second Gore factor is the relationship between the harm suffered by Mr. Kerwin and the punitive damages award.  The purpose of this consideration is to "ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and the general damages recovered."  State Farm Mutual 123 S.Ct. at 1524.  The Supreme Court has declined to "identify concrete constitutional limits on the ratio between harm, or potential harm to the plaintiff and the punitive damages award."  Id.  However, the Supreme Court has made clear that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."  Id.  In so holding, the Court made reference to earlier decisions suggesting that a punitive damages award "of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety."  Id. (*citing* Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 23-24, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), and Gore, 517 U.S. at 581).  The Court also noted that "punitive damages of higher ratios to compensatory damages *may* comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'" Id. (*quoting* Gore, 517 U.S. at 582) (emphasis added).

In the instant case, the award of punitive damages was *twenty times* the award of compensatory damages.  The fact that this award reflects a ratio that "exceeds the 'single-digit ratio between punitive and compensatory damages,' and far exceeds the four-to-one ratio that the Supreme Court has suggested 'might be close to the line of constitutional impropriety,' raises a cautionary flag."  Jones v. Sheahan, 2003 WL 22508171 (N.D.Ill.

6

2003) (*quoting* State Farm Mutual, *supra*). Furthermore, as stated above, the Plaintiff was only entitled to $1 in nominal damages pursuant to the PLRA. Even though the Court has noted that punitive damages of ratios higher than 10:1 *may* comport with due process when "a particularly egregious act has resulted in only a small amount of economic damages," State Farm Mutual, 123 S.Ct. at 1524, the ratio here would be *100,000:1*, a ratio that clearly raises constitutional due process concerns. Thus, whether the compensatory damages are left undisturbed at $5,000 or reduced to $1 pursuant to the PLRA, the ratio in this case raises serious constitutional objections to the award of $100,000 in punitive damages.

The final guidepost for assessing punitive damages is the "disparity between the punitive damages and the 'civil penalties authorized or imposed in comparable cases.'" State Farm Mutual, 123 S.Ct. at 1526 (*quoting* Gore, 517 U.S. at 575). The Defendant submits the cases of Riley v. Kurtz, 194 F.3d 1313 (Table), 1999 WL 801560 (6th Cir. 1999), and Henderson v. Johnson, 2007 WL 781767 (C.D.Ill. 2007) as appropriate comparators for the instant case.

The case most closely on point is Henderson v. Johnson. In Henderson v. Johnson, the court first determined that the evidence did not support the jury's verdict as to three of four defendants. Henderson, 2007 WL 781767 at * 4-5. The jury had found that the remaining defendant had deliberately filed a false disciplinary report against the plaintiff in retaliation for the plaintiff's grievance against him. Id. at *4. The Court did not disturb the jury's finding of liability as to this defendant. Id. After reducing the award of compensatory damages to $1 in light of the PLRA's actual injury requirement, the court turned to the appropriateness of the award of punitive damages. After

7

discussing the Gore considerations, the court stated that in its view, the jury's award of $5,000 was excessive, and "would be a [sic] unwarranted windfall to the plaintiff and [was] not necessary to achieve the goals of punishing [the defendant] and deterring similar conduct in the future." Id. at * 7. The court further reasoned that the "modest harm suffered by the plaintiff does not support an award of $5,000 in punitive damages." Id. (*citing* Smith v. Davis, 02-CV-233 (N.D.Ill.) (jury returned guilty verdict on claim that inmate was placed in administrative segregation for over *three years* in retaliation for grievance; $1 of compensatory damages, $1,000 in punitive damages from each defendant who was primarily responsible). The court concluded as follows:

> The Court believes that the award of punitive damages should be reduced to $500.00. The court believes this amount is substantial enough to recognize the importance of the plaintiff's constitutional right to petition for redress without retaliation, to punish [the defendant], and to deter others from similar retaliation in the future.

Id. at *8. Likewise, in this case, an amount similar to that awarded in Henderson would be substantial enough to recognize the importance of the plaintiff's constitutional right to petition for redress without retaliation, to punish McConnell, and to deter others from similar retaliation in the future.

Likewise, in Riley v. Kurtz, the Sixth Circuit considered the appropriate level of punitive damages in a retaliation case brought by a prisoner. In that case, the jury found for the plaintiff on two claims relating to interference with the plaintiff's mail, and two claims relating to misconducts that were allegedly issued in retaliation for the plaintiff's exercise of his constitutional rights. Riley v. Kurtz, 1999 WL 801560 at *1, 2. The jury awarded the Plaintiff $1 in compensatory damages and $5,000 in punitive damages on each of the mail counts and on one of the retaliation claims. Id. The jury awarded the

8

Plaintiff $5,000 in compensatory damages and $5,000 in punitive damages on the other retaliation claim. Id. The defendant, a corrections officer, filed post-trial motions, including a request for remittitur, which were denied by the District Court. Id. On appeal, the Sixth Circuit first reversed the jury's determination on the retaliation claim on which the jury awarded $5,000 in compensatory damages and $5,000 in punitive damages. Id. at * 6. The Circuit then turned to the request for remittitur. After considering the Gore factors, the court concluded that $1,000 was the maximum amount of punitive damages warranted under the facts of the case. Id. at * 7-9.

The reduced punitive damages awards in these two cases were found to comply with the dictates of with due process, and an award in this case in line with the awards in those cases would be appropriate. The cases are similar, in that they involve jury determination that the defendant issued a misconduct to the plaintiff in retaliation for the plaintiff exercising his constitutional rights. See also Maurer v. Patterson, 197 F.R.D. 224 (S.D.N.Y. 2000) (reducing punitive damages award of $75,000 to $20,000 in case involving retaliatory misconduct);

One other case warrants discussion. In Tate v. Dragovich, 2003 WL 21978141 (E.D.Pa. 2003) the District Court for the Eastern District of Pennsylvania upheld a punitive damages award of $10,000 in a retaliation case. That case involved a pattern of harassment in retaliation for the plaintiff filing grievances, including: 1) the defendant issued the plaintiff with false retaliatory misconduct*s*; 2) the defendant instructed another inmate to wash plaintiff's clothing in toilet cleanser, after which the plaintiff developed a rash and his clothes were ruined; 3) the defendant intentionally celled him, a nonsmoker, with a smoker; 4) the defendant removed his name from the list for vocational training; 5)

9

he was denied haircuts; 6) the defendant denied him his toilet paper request, while mocking him and telling him to "go file another lawsuit"; 7) the defendant searched his cell for retaliatory purposes; and 8) the defendant referred to him in a racially derogatory manner and otherwise expressed his personal disdain for him. Id. at * 1. In consideration of the Gore factors, the extensive pattern of retaliation in Tate warrants a higher award of punitive damages than the conduct at issue in the instant case.

Based on the considerations announced in Gore and discussed above, the punitive damages awarded in this case are excessive, shock the conscience, and violate due process.[3] Thus, the defendant requests that this court reduce the punitive damages award in this case to an amount closer to the awards in the similar cases Henderson v. Johnson and Riley v. Kurtz, but less than the amount awarded in Tate, where the pattern of retaliation was much more egregious. An award in this range would be "substantial enough to recognize the importance of the plaintiff's constitutional right to petition for

---

[3] The Defendant notes that Federal Courts have exercised their power to order remittitur even in excessive force and failure to protect cases involving significant injuries. In Jones v. Sheehan, 2003 WL 22508171 (N.D.Ill. 2003), the jury had found that two corrections officers failed to protect an inmate from an attack in which he had sustained significant injuries. The jury awarded the plaintiff in that case $25,000, and the court upheld this award, noting that the plaintiff suffered a broken wrist and dislocated shoulder, among other injuries, in the attack. Id. at * 12. The court, however, found that the punitive damages awards of $250,000 and $500,000 against the two officers violated due process. Id. at * 13. The Court reduced the award of punitive damages against the two defendants to $50,000 and $100,000 – two and four times the award of compensatory damages, respectively. Id. at *21. Similarly, the court in Ibanez v. Velasco, 2002 WL 731778 ordered remittitur of the punitive damages award in an excessive force case brought by a visitor to a facility of the Cook County, Illinois, Sheriff's office who was beaten and kicked by corrections officers. Pursuant to the Gore factors, these cases should involve a substantially higher punitive damages award per defendant than the instant case.

redress without retaliation, to punish [the defendant], and to deter others from similar retaliation in the future." Henderson, at *8.

## II. MOTION FOR A NEW TRIAL

A.    Evidentiary Rulings

The defendant also moves for a new trial based on the effect of the use at trial of the declaration of Michael Malmeister ("declaration") and the admission and use of Plaintiff's Cumulative Adjustment Record ("CAR"). During his cross-examination of the defendant, Plaintiff sought to introduce the declaration into evidence. Ruling that the declaration was hearsay, this Honorable Court did not permit the Plaintiff to introduce the actual declaration into evidence. However, the Court, over the defendant's objection, permitted the Plaintiff to use the declaration to "impeach" the defendant. This impeachment of the defendant with another person's statement was improper:

> As a general rule, an "[impeaching] statement must be that of the witness to be impeached and not of some other person." Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, 262 F.Supp.2d 251, 262 (S.D.N.Y.2003); see also, United States v. Schoenborn, 4 F.3d 1424, 1429 n. 3 (7th Cir.1993) (statement of another person not adopted by the witness could not be used to impeach witness as a prior inconsistent statement under Fed. R. Ev. 613); United States v. Almonte, 956 F.2d 27, 29 (2d Cir.1992) ("'third party's characterization' of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization"); United States v. Chavez, 979 F.2d 1350, 1355 (9th Cir.1992) (third party statement not adopted by witness may not be used for impeachment purposes). As one court has observed, "[i]t is an entirely different matter to offer one declarant's statement to impeach the credibility of another witness. Merely offering a contradictory account offered by one witness does not go to another witness's credibility...." United States v. Bao, 189 F.3d 860, 866 (9th Cir.1999).

11

Tucci v. Dixon, 2005 WL 2335333, *5 (M.D.Pa. 2005). This improper impeachment by means of the inadmissible declaration damaged the credibility of the defendant in a case where credibility was the determinative consideration. Thus, the use of the declaration was not harmless error and it warrants a new trial.

The introduction of the CAR was improper because it is irrelevant to the instant matter, as it cannot be linked to the only defendant in this case. The admission of the CAR, over the defendant's objection, created the impression for the jury that the July 23, 2003, entries were somehow relevant to show retaliatory animus. However, Plaintiff did not and cannot establish any link between the CAR and the defendant. There was no testimony that the defendant had any dealings with the two officers who made the entries in the CAR on July 23, 2003, or that those officers had any knowledge of Kerwin's grievance dated that same day. Without a link to the defendant, the CAR is clearly irrelevant, and its admission was improper.

      B.     Verdict Slip

A proper retaliation claim must contain a showing of three factors by the plaintiff: (1) that he was engaged in a constitutionally protected activity; (2) that he was subjected to adverse actions; and (3) that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse actions. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001) (adopting Mt. Healthy City Board of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). In addition, even if "a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for

reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334; see also Goff v. Burton, 7 F.3d 734 (8th Cir. 1993) (the fact that a misconduct was imposed for an actual violation of prisoner rules or regulations shows a legitimate penological interest defeating retaliation claim).

Thus, even if an inmate has established a constitutionally protected activity, and even if disciplinary action is taken against him that is "motivated by hostility to this protected activity," the inmate still cannot prevail on a retaliation claim if there is sufficient evidence supporting his guilt of the underlying disciplinary charge. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) ("give the quantum of evidence of [plaintiff's] misconduct, we cannot say that prison officials' decision to discipline [him] for his violations of prison policy was not within the 'broad discretion' that we must afford [prison administrators]"); See also Goff, *supra*. Plaintiff was found guilty of the misconduct and this finding was not disturbed on appeal.

The Defendant argues that the jury was improperly denied the ability to determine that the misconduct was reasonably related to a legitimate penological interest in accordance with the burden shift of Rauser, 241 F.3d at 334. In the verdict slip, this Honorable Court gave the defendant the benefit of the burden shift only if the jury found that the lawsuit filed against SCI-Smithfield was a substantial or motivating factor in the issuance of the misconduct but that the grievance was not. In the case of the jury finding that the filing of the grievance was a motivating factor, the defendant did not get the benefit of the burden shift.[4] Failure to provide the defendant with the benefit of the

---

[4] Counsel for the Defendant objected to the verdict slip for this very reason. Defendant acknowledges that if the jury were first required to find that the misconduct was false then such a verdict slip would not have been erroneous.

13

burden shift in accordance with Rauser necessitates a new trial with a verdict slip that fully encapsulates applicable law, including the applicability of the Rauser burden shift to the instant retaliation claim regardless of whether the jury finds that the lawsuit, the grievance, or both was a motivating factor behind the misconduct.

WHEREFORE, it is respectfully requested that Defendant's Motion to Amend or Alter Judgment and Motion for a New Trial be granted, and that the award of damages be reduced and/or that a new trial be granted.

Respectfully submitted,

**Thomas W. Corbett, Jr.**,
Attorney General

By:  /s/ Douglas B. Barbour
Douglas B. Barbour
Deputy Attorney General
Attorney I.D. No. 94105

Tracey Wilson
Senior Deputy Attorney General
Attorney I.D. No. 64350

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
564 Forbes Avenue, Manor Complex
Pittsburgh, PA 15219

Date: December 7, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within **Brief in Support of Defendant's Motion to Amend or Alter Judgment and Motion for a New Trial** was electronically filed with the Court and served upon the following via first-class mail:

Ryan Kerwin
Kintoch Erie Community Correctional Facility
301 Erie Aveneue
Philadelphia, PA  19124

>                                    /s/ Douglas B. Barbour
>                                    Douglas B. Barbour
>                                    Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

Date: December 7, 2007