IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA


RYAN KERWIN                          :    CASE #05-93 ERIE

                                     :

        VS                           :    DISTRICT JUDGE SEAN MCLAUGHLIN:

                                     :

LT. WILLIAM MCCONNELL                :


**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND**

**OR ALTER JUDGMENT AND MOTION FOR A NEW TRIAL**


**1. Remittur Arguments;**

**A. Compensatory damages;**

FILED

JAN - 9 2008

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA


   In the defendant's first argument he cites Section 803(d)(e) of the Prison

Litigation Reform Act and requests that the court remit plaintiff's compensatory

damages from $5,000.00 to $1.00 due to the fact plaintiff has not suffered a

physical injury in this case. However, the defendant did not object to the courts

jury instruction on damages in this case which instructed the jury that they may

award plaintiff compensatory damages for any "emotional pain, suffering, inconvenience, mental anguish, and loss of the enjoyment of life that plaintiff suffered as a result of the defendant's violation of his constitutional rights." Nor did the defendant request that the jury be instructed that they must find that plaintiff has suffered a physical injury under the P.L.R.A. in order for him to be eligible for compensatory damages. Thus, any such argument regarding the impropriety of these damages or the jury instruction in relation thereto is waived.

Under Fed. R. Civ. P. 51, a party, in order to preserve an objection either to a failure to instruct the jury on an issue or to the manner in which the jury was instructed, clearly must "object thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." See, **McAdam vs. Dean Witter Reynolds**, 896 F2d 750, **759 (3rd Cir. 1990)** (Declining to consider newly developed argument concerning jury charge deficiency where party "failed to specifically and clearly object to either the charge or the entry of a judgment... based on this charge.") **See also, Simmons vs Philadelphia**, 947 F2d 1042, 1078 **(3rd Cir. 1990), cert denied, 503 U.S. 985 (1992)** (A party who does not clearly and specifically object to a charge he believes to be erroneous waives the issue on appeal.)

**See also, Alexander vs. Riga**, 208 F3d 419, 425 ; 428 (3rd Cir. 2000) (A party who has not challenged the trial court's jury instructions at an appropriate time is deemed to have waived such a challenge. ; Appellate

Court concluded that the District Court misstated the proper legal standard in a Fair Housing Act case by requiring "legal causation" beyond a showing of illegal discrimination. Nonetheless, the Appellate Court still found that the plaintiffs did not make a timely objection to the jury charge on this issue and had so waived it.)

In addition thereto, pursuant to a large abundance of caselaw, it is questionable to begin with that the P.L.R.A.'s physical injury requirement serves as a bar to an award of compensatory damages in a case involving a 1st Amendment violation where the plaintiff does not suffer a physical injury. **See, Lipton vs. County of Orange, N.Y., 315 F.Supp.2d 434, 457 (S.D.N.Y. 2004)** (There is an exception to the P.L.R.A. preclusion of compensatory damages in the absence of physical injury that is applicable to cases wherein the constitutional right that is allegedly violated arises under the 1st Amendment.) **See also, Rowe vs Shake, 196 F3d 778, 781 (7th Cir. 1999)** (Although Section 1997e(e) applies to a plaintiff's 1st Amendment retaliation claim, a 1st Amendment deprivation presents a cognizable injury standing alone and the P.L.R.A. "does not bar a seperate award of damages to compensate the plaintiff for the 1st Amendment violation in and of itself.) **See also, Makin vs. Colorado D.O.C., 183 F3d 1205, 1214-1215 (10th Cir. 1999) and Canell vs Lightner, 143 F3d 1210, 1213 (9th Cir. 1998)** (Emotional or mental distress due to violations of 1st Amendment rights is sufficient to claim compensatory damages.)

**B. Punitive damages;**

The defendant now argues that the amount of punitive damages awarded in this case was excessive and asks the court to remit the award to a lower amount. In doing so, the defendant points to the guidelines set forth by the United States Supreme Court in <u>BMW of North America inc. vs. Gore</u>, **517 U.S.559, 116 S.Ct. 1589 (1996)** and <u>State Farm Mutual Auto Insurance Co. vs. Campbell</u>, **538 U.S. 408, 123 S.Ct. 1513 (2003).** His position on this matter , however, is unavailing.

The guidelines to which the defendant refers is as follows:

1) The degree of reprehensibility of the defendant's conduct;

2) The disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and

3) The difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

As for the first prong of these guidelines, the defendant's misconduct in this case was extremely reprehensible. Every action by the defendant from the start of this case till the end embodied the very meanings of intentional malice, trickery and deceit.

The evidence at trial proved beyond any possible doubt that the defendant fabricated an intraprison investigation against plaintiff, fabricated a misconduct report against plaintiff, retaliated against plaintiff for filing a grievance, retaliated against plaintiff for filing a lawsuit, hid vital discovery evidence from plaintiff, the

jury and the court (his workschedule and/or work timesheets), lied about why his name did not appear on any of the workschedule timesheets he provided in discovery while testifying at trial, lied about what inmate Clark told him about the retaliatory abuse plaintiff endured at their interview, had Clark fearful about what would happen to him if he took the stand and testified against the defendant, hid inmate Valentine's name as a witness when he provided discovery, and the list goes on and on. If these actions were not reprehensible and were not driven by intentional malice, trickery and deceit then nothing is.

As for the second prong of the Supreme Court's guidelines, the disparity between the actual or potential harm suffered and the punitive damages award is well within the appropriate dictates of the Due Process Clause of the 14th Amendment.

As a general rule, "In practice, few awards exceeding a single digit ratio between punitive and compensatory damages, _to a significant degree_, will satisfy due process." **Campbell, at 1524** However, the Supreme Court has also noted that "punitive damages of ratios higher than 10 to 1 may comport with due process where "a particluarly egregious act has resulted in only a small amount of economic damages"." **Campbell, at 1524**

In the instant case the jury awarded plaintiff $5,000.00 in compensatory damages and $100,000.00 in punitive damages. Therefore, the award ratio that is currently at issue is a 20 to 1 damage ratio.

While this award exceeds a 10 to 1 ratio, it is well within appropriate constitutional limits. First of all, as stated by the United States Supreme Court in

**Campbell** an appropriate exception to the normal 10 to 1 ratio standard is in a case where an egregious act has resulted in only a small amount of economic damages. In conformity with this exception, this is a case in which an egregious act has resulted in "no" economic damages and the 20 to1 ratio in question is based off of a mere $5,000.00 compensatory damage award.

Thus, this is a case in which a 10 to 1 disparity ratio may be exceeded. As a matter of fact, if the defendant has not waived his right to challenge plaintiff's compensatory damages award pursuant to section 1997e(e) of the P.L.R.A. and the court decides to remit plaintiff's compensatory damages to $1.00, then this 10 to 1 damage ratio argument is not even applicable. There is no $10.00 damage award cap on prisoner retaliation cases absent a physical injury.

Punitive damages may be assessed even where there are no compensatory or nominal damages awarded. See, **Alexander vs. Riga**, 208 F3d 419, 430 (3rd Cir. 2000) ("Beyond a doubt, punitive damages can be awarded in a civil rights case where a jury finds a constitutional violation, even when the jury has not awarded compensatory or nominal damages.) **cert. denied at 121 S.Ct. 757 (2001)** However, if you were to apply a 10 to 1 ratio to a case under these circumstances then you would multiply 10 times the amount of "no damages" and wind up with a $0.00 damage award, a legal impossibility. This logic is irrefutable proof that this 10 to 1 damage ratio standard is simply not applicable in every case.

Appellate court decisions that were ruled upon subsequent to the United States Supreme Court's decisions in **Campbell** and **Gore** have recognized

numerous instances in which a double and even triple digit compensatory to punitive damage ratio was appropriate.  **See, <u>Southern Union Corp. vs. Southwest Gas Corp.</u>, 281 F.Supp.2d 1090 (D. Ariz. 2003)** (153 to 1 ratio was upheld) ; **See also, <u>Williams vs. Kaufman County</u>, 352 F3d 994 (5th Cir. 2003)** ($100.00 compensatory damages per plaintiff to $15,000.00 punitive damages per plaintiff for unlawful strip search upheld / 150 to 1 damage ratio upheld) ; **See also, <u>Mathias vs. Accor Economy Lodging Inc.</u>, 347 F3d 672 (7th Cir. 2003)** ($372,000.00 punitive damages to $10,000.00 actual damages upheld / 37 to 1 damage ratio upheld) ; **See also, <u>Jones vs. Rent a Center Inc.</u>, 281 F.Supp.2d 1277 (D. Kan. 2003)** ($290,000.00 punitive damages to $10,000.00 actual damages in Title VII sexual harrasment and retaliation case upheld / 29 to 1 damage ratio upheld) : **See also, <u>Harris vs. Soley</u>, 2000 ME 150 (docket #CUM-99-543)** ($62,060.00 compensatory damages to $1,000,000.00 punitive damages upheld / 16 to 1 damage ratio upheld)

Let it also be noted that the <u>**Campbell**</u> court never overruled its prior rulings in **<u>TXO Products Corp. vs. Alliance Resource Corp.</u>, 509 U.S. 443 (1993)** where it deemed a $10 million punitive to $19,000.00 actual damage award ratio (550 to 1) to be appropriate. Thus, it is apparent that the <u>**Campbell**</u> court clearly recognizes instances in which the general 10 to 1 damage ratio is not applicable.

As for the third and final prong of the guidelines, the court is to consider the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

Let it first be known that pursuant to a legal research study that can be found

at **www.hrm.state.pa.us/oahrm/beeo/new_stuff/bkramer_retaliation :**

**(Exhibit A)** the median verdict in retaliation cases between 1991 and 1999 was in excess of $120,000.00. Thus, plaintiff's verdict is not at all extraordinary, it actually falls below the average median verdict that was appropriate as far back as 9 years ago. Nor is plaintiff's verdict dissimiliar from many other "prisoner" retaliation verdicts.

See, <u>Siggers-El vs. Barlow</u>, 433 F.Supp.2d 811 (E.D. Mich. 2006) (Jury awarded $200,000.00 punitive damages, $15,000.00 mental and emotional damages and $4,000.00 economic damages in prisoner retaliation case. / $219,000.00 in damages.) ; **See also, <u>Smith vs. Charles Rowe</u>, 761 F2d 360 (1985)** (Appellate court upheld $100,700.00 verdict in a case where a jailhouse lawyer was wrongfully placed in segregation in retaliation for her legal work.) ; **See also, <u>Atkinson vs. Way</u>, USDC D DE, case #99-562JJF** (Jury awarded $85,000.00 in compensatory damages and $15,000.00 in punitive damages ($100,000.00 in damages) in prisoner retaliation case.)

During the court's final instructions to the jury the court specifically stated:

"You may award punitive damages even if plaintiff suffered no actual damages and so receives nominal rather than compensatory damages."

"You should consider whether actual damages standing alone are insufficient to deter or prevent the defendant from again performing any wrongful act he may have performed."

"In deciding the amount of punitive damages, you should consider the degree to which the defendant should be punished for his wrongful conduct toward the plaintiff, and the degree to whether an award of one sum or another will deter the defendant or "others" from committing similiar acts in the future."

"The extent to which a particular amount of money will adequately deter or punish a defendant, and the extent to which a particular amount will adequately deter or prevent future misconduct, may depend upon the defendant's financial resources. Therefore, if you find that punitive damages should be awarded against the defendant, you may consider the financial resources of the defendant in fixing the amountof such damages."

All of these factors were properly considered by the jury during its deliberations and it is not appropriate for the factfinder to be second guessed absent extraordinary circumstances. This is clearly not one of those circumstances.

In defense counsel's closing argument she emphatically stated to the jury "Do you really think they (the defendant and the other D.O.C. witnesses) care if they get sued? They don't care!"

Perhaps thats true. Looking at the paltry verdicts in some of the prisoner cases cited in the defendant's brief why would they? Prison officials repeatedly violate whatever constitutional rights they want with rare financial consequences

to the extraordinarily huge financial resources upon which they operate. Even $100,000.00 is an insignificant punitive award when you consider the financial resources of the Pennsylvania Department of Corrections and it is entirely proper to consider these resources when determining what amount of punitive damages is appropriate.

Perhaps this verdict is one small step in making the defendant and other prison officials care about whether or not they get sued for violating peoples' constitutional rights. This court should muster enough fortitude to sustain this verdict and hope that it does.

## 2. Motion for New trial Arguments;

## A. Use of Michael Mahlmeister's affidavit at trial;

In the defendant's first argument requesting the court to grant him a new trial, he claims that the court's decision to allow plaintiff to use the affidavit of Michael Mahlmeister during cross-examination was improper because the declaration itself was hearsay and that it was used to "impeach' the defendant at trial. This argument has no merit.

Let it first be noted that the affidavit in question was a document provided to plaintiff by the defendant himself as a response to a discovery request. Also, it was never admitted into evidence, it was merely permitted to be used during the plaintiff's cross-examination of the defendant. The defendant now claims that

plaintiff used this declaration to "impeach" him and provides the court with numerous caselaws that state:

"Impeaching statement _must be that of the witness_ to be impeached and not of some other person." **Penguin Books U.S.A. Inc. vs. New Christian Church of Full Endeavor**, 262 F.Supp.2d 251, 262 (S.D.N.Y. 2003)

"Statement of another person _not adopted by the witness_ could not be used to impeach witness as a prior inconsistent statement." **United States vs. Schoenborn**, 4 F3d 1424, 1429 n.3 (7th Cir. 1993)

"Third party's characterization of a witness's statement does not constitute a prior statement of that witness _unless the witness has subscribed to that characterization_." **Untied States vs. Almonte**, 956 F2d 27, 29 (2nd Cir. 1992)

"Third party statement _not adopted by witness_ may not be used for impeachment purposes." **United States vs. Chavez**, 979 F2d 1350, 1355 (9th Cir. 1992)

The above holdings that were cited in the defendant's brief have one common operate fact that makes them entirely inapplicable to the case at hand. They deal with third party statements that were not "_adopted by the witness_" or where the witness "_did not subscribe to the characterization of the statement_." The

defendant in this case never contested the facts contained in Michael Mahlmeister's affidavit, as a matter of fact, when asked if the statements made in Mahlmeister's affidavit were true the defendant immediately stated that they were.

Any impeachment that ensued thereafter was premised on the defendant's own statement, it was not premised on any hearsay statements or statements made by a third party witness. Michael Mahlmeister's affidavit was not used to impeach or challenge the credibility of the defendant, the defendant's own statement was used to do this. The legal authority provided by the defendant on this issue simply has no applicability to this case. No legal error occurred here and the defendant is not entitled to a new trial on these grounds.

However, even if we were to assume the admission of such evidence was error, it had absolutely no effect on the outcome of the trial and the jury would have reached the same conclusion even without the admission of the evidence, thus the error would be harmless and would not warrant the granting of a new trial in this matter. **See, <u>Goodman vs. Pennsylvania Turnpike Commission</u>, 293 F3d 655, 667 (3rd Cir. 2002)** (Evidentiary admission error is harmless, and not grounds for reversal, if it is "highly probable" that the jury would have reached the same result otherwise.)

**B. Use of Plaintiff's Cumulative Adjustment Report at trial;**

The defendant now argues that the court's decision to allow the introduction

of the Cumulative Adjustment Report at trial was error because it created the impression the entries were relevant to show the defendant's retaliatory animus and because it could not be linked to the defendant himself. This argument is meritless as well.

The Cumulative Adjustment Report was a document that was attached to the defendant's Investigative Report when he provided it to plaintiff in discovery. This Investigative Report is a document that the defendant himself submitted as evidence in this case to support his claim that the investigation he conducted, which was contained in his report, led him to believe plaintiff had lied in the grievance that is at issue in this case.

Because it was relevant to show that the evidence made available to the defendant during his investigation led him to the conclusion that plaintiff was in fact telling the truth about the retaliation contained in his grievance, it was entirely proper to introduce the Cumulative adjustment Report to support this fact. This document was used by the defendant during his investigation and the retaliatory conclusions that can be drawn therefrom are relevant to the defendant's state of mind when he allegedly concluded that plaintiff was lying about the retaliatory abuse. If the jury in fact concluded that a retaliatory animus could be derived from the content of the Cumulative Adjustment Report then why were they not free to consider whether or not the defendant could have derived this same retaliatory animus during his consideration of this evidence when conducting his investigation.

Whether or not the defendant deliberately ignored each peice of evidence that

proved the claims contained in plaintiff;'s grievance were true, is directly relevant to whether or not the defendant's motivation in issuing the misconduct was retaliatory. The Cumulative Adjustment Report is in fact one of these peices of evidence that was available to him which he chose to ignore. There was absolutely nothing improper about the introduction of this evidence and it certainly does not warrant a new trial. In the uncanny event the introduction of this evidence was deemed to be error it was certainly harmless.

**C. The Court's decision to preclude the jury from considering whether the defendant would have made the decision to issue plaintiff a misconduct in the absence of grievance when he issued plaintiff a misconduct for filing the grievance;**

In a normal prisoner retaliation case, if a plaintiff proves that his exercise of a constitutional right was a substantial or motivating factor in the prison official retaliating and taking adverse action against him, the prison official may still prevail if he can prove he "would have made the same decision to take that adverse action *absent the protected conduct*" for reasons reasonably related to a legitimate penological interest. <u>Rauser vs. Horn</u>, 241 F3d 330, 334 (3rd Cir. 2001)

In the case at hand, the court gave this very burden shifting defense to the defendant in the verdict slip submitted to the jury when considering whether or not the defendant was liable for retaliating against plaintiff for filing his lawsuit.

However, the court did not give this burden shifting defense to the defendant in the verdict slip submitted to the jury when considering whether or not the defendant was liable for retaliating against plaintiff for filing his grievance.

The defendant now contends that he is entitled to a new trial because the court precluded the jury from considering whether or not he would have made the decision to issue plaintiff a misconduct absent plaintiff filing the grievance in this case for reasons reasonably related to a legitimate penological interest. While this is a standard appropriate defense to be submitted to a jury in a normal prisoner retaliation case it cannot be applied to the unique facts of the case at hand when it is applied to the grievance that was filed in this case.

First and most importantly, the gravaman of this defense is whether a defendant "would have made the same decision to take the adverse action *absent the protected conduct.*"  How then is this defense applicable to whether or not the defendant in this case is liable for retaliating against plaintiff for filing a grievance? It is an uncontestable fact that the defendant in this case took adverse action against plaintiff as a "direct" result for filing the grievance. This is not a case where a defendant could have taken the same adverse action "absent" the filing of the grievance. Simply put, the adverse action was taken for filing the grievance.

The grievance is the protected conduct in question and "absent" this protected conduct there is no adverse action. How then could the defendant have "taken the same adverse action against plaintiff in the absence of the protected conduct?" If there was no grievance filed then there is no misconduct for filing it.

Again, this is not a case where the defendant can base his decision to take adverse action against a prisoner on an entirely independant reason other than the protected conduct at issue, the adverse act was unquestionably taken for engaging in the protected conduct of filing a grievance.

In trying to apply the applicability of this defense to this case the defendant argues that his specific independant reason for taking adverse action against plaintiff in this case was because he believed that the facts contained in the grievance were lies and that based on that assumption he had an appropriate penological interest in issuing plaintiff a misconduct notwithstanding the fact the grievance was constitutionally protected conduct. While taking adverse action against a prisoner for lying in a grievance would be a reasonable penological interest this rationale still falls short in one aspect, this adverse action could not have been taken "*absent the protected conduct*" in question and this is a necessary and vital element to the defense that is currently at issue.

Thus, once the jury concluded that the defendant "deliberately" retaliated against plaintiff for filing the grievance there was no other independant alternative reason the defendant could have taken the adverse action for. If the jury accepted that the defendant merely issued the misconduct in this case because plaintiff lied in the grievance then they could not have reasonably concluded that the defendant's motivation in issuing the misconduct was retaliatory in the first place.

In any event, any supposed error in precluding this defense from the verdict slip that was submitted to the jury when it came to the issue of the grievance is

clearly harmless. Appellate courts must act in accordance with the salutary policy embodied in Fed. R. Civ. P. 61, **General Motors Corp. vs. New A.C. Chevrolet, Inc.**, 263 f3d 296, 329 n.18 (3rd Cir. 2001) and Fed. R. civ. P. 61 dictates that non-constitutional legal errors are harmless if it is "highly probable that the error did not affect the judgment." **Id, at 329**

The jury in this case assessed punitive damages against the defendant in this case because it found the defendant's conduct in issuing the misconduct to be malicious and wanton. The final instructions to the jury in this case specifically instructed them that:

"You may only award punitive damages if you find the defendant acted maliciously or wantonly in violating plaintiff's federally protected rights. A violation is malicious if it was prompted by ill will or spite towards the plaintiff. A defendant is malicious when he consciously "desires" to violate federal rights of which he is aware. A violation is wanton if the person committing the violation recklessly or callously disregarded the plaintiff's rights."

The defendant's burden shifting defense is clearly based on a supposed good faith belief on the part of the defendant that plaintiff had lied in his grievance. This defense was clearly disbelieved and disregarded by the jury when they assessed punitive damages against the defendant and deemed his conduct to be malicious and wanton. The jury found the defendant's actions to be so malicious and wanton that it not only assessed punitive damages against him but assessed

$100,000.00 worth of punitive damages against him. This fact completely negates any possibility that the jury accepted the defendant's contention that he honestly or mistakenly believed plaintiff had lied in his grievance and the exclusion of this defense had absolutely no effect on the jury's decision to enter judgment in favor of the plaintiff in this case.

If the jury believed the defendant's burden shifting defense to be true, "a sincere belief that plaintiff had lied in his grievance," then they would not have assessed any punitive damages in this case let alone $100,000.00 worth. Thus, in the event the court's decision to preclude the defendant the benefit of the burden shifting defense in relation to whether or not he retaliated against plaintiff for filing a grievance was error, such error was unquestionably harmless.

WHEREFORE,  plaintiff respectfully requests that this honorable court sustain the damages awarded by the jury in this case and deny the defendant's request for a new trial.

Respectfully submitted,

Date: ___1 / 5 / 08___

_Ryan Kerwin_

Ryan Kerwin
DZ0246
Kintoch
301 East Erie Ave.
Philadelphia, PA 19134

EXHIBIT
A

# The Fine Print

- ## Consult with agency counsel on specific cases
- ## bakramer@state.pa.us

# Retaliation
# The Hidden Liability Factor

Studies of federal discrimination and **retaliation** verdicts from ████-████ reflect that the **median verdict** in **retaliation** claims (in excess of $ 120,000) far exceeds the **median** of claims of discrimination alone. According to the latest report from the PHRC, **retaliation** is a claim in 86 of 162 complaints filed against Commonwealth agencies.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RYAN KERWIN, | ) CIVIL ACTION # 05-93 ERIE |
|      Plaintiff | ) |
| | ) |
|      VS. | ) DISTRICT JUDGE SEAN MCLAUGHLIN |
| | ) |
| LT. WILLIAM MCCONNELL, | ) |
|      Defendant | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached Brief in opposition to the

Defendant's Motion to Amend or Alter Judgment and Motion for a New Trial was served upon

the following party via the U.S. Postal service.


Douglas Barbour & Tracy Wilson
Office of the Attorney General
564 Forbes Ave.
Pittsburgh, PA. 15219



Respectfully submitted,


Date: __1 / 5 / 08__


_Ryan Kerwin_

Ryan Kerwin
DZ0246
Kintoch
301 East Erie Avenue
Philadelphia, PA. 19134